## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ABINGTON TOWNSHIP**<br>1176 Old York Road<br>Abington, PA 19001<br>      Plaintiff,<br><br>v.<br><br>**CROWN CASTLE NG EAST LLC**<br>131-05 14TH Avenue<br>College Point, NY 11356<br>      Defendant. | Civil Action – Equity<br><br><br><br>No. 2:16-CV-05357 |

## ORDER

**AND NOW**, this _____ day of _____ 2016, upon consideration of Movant Abington Township's Motion for Remand of the Township's Complaint and Petition for Preliminary Injunction that had been filed and docketed with the Montgomery County Court of Common Pleas as 2016-23932, it is hereby **ORDERED** that the above action now pending in the United States Eastern District of Pennsylvania shall be remanded to the Montgomery County Court of Common Pleas.

                                                                                                 BY THE COURT:

                                                                                                 _____<br>
                                                                                                                                     J.

{00537471;v1}

RUDOLPH CLARKE, LLC
BY:  Michael P. Clarke, Esquire
Attorney I.D. No. 63378
BY:  Noah Marlier, Esquire
Attorney I.D. No. 308985
Seven Neshaminy Interplex
Suite 200
Trevose, PA  19053          **ATTORNEYS FOR ABINGTON TOWNSHIP**
(215) 633-1890

---

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ABINGTON TOWNSHIP<br>1176 Old York Road<br>Abington, PA 19001<br>　　　　Plaintiff,<br><br>v.<br><br>CROWN CASTLE NG EAST LLC<br>131-05 14TH Avenue<br>College Point, NY 11356<br>　　　　Defendant. | Civil Action – Equity<br><br><br><br><br><br>No. 2:16-CV-05357 |

---

## MOTION TO REMAND

Abington Township ("Township"), by and through its counsel, Rudolph Clarke, LLC, hereby submits the instant Motion for Remand and in support thereof alleges as follows:

1. On October 5, 2016, the Township commenced the instant litigation by filing a Complaint and Petition for Preliminary Injunction against the Defendant Crown Castle NG East LLC ("Defendant") with the Montgomery County Court of Common Pleas. A true and correct copy of both the Complaint and Petition for Preliminary are attached hereto, incorporated herein, and collectively labeled Exhibit "A."

{00537471;v1}

2. The Township served the above-referenced pleadings on October 5, 2016. A true and correct copy of the Affidavit of Service is attached hereto, incorporated herein, and labeled Exhibit "B."

3. The Complaint and Petition for Injunction set forth averments that justified the granting of an injunction that would, specifically, enjoin the Defendant "from installing cellular nodes or telephone poles or installing polls for the purpose of installing the above-referenced polls, antennas, and/or nodes in the Township without first complying with any and all applicable Township code relative to the same." See Exhibit "A."

4. On October 5, 2016, the Honorable Joseph A. Smyth issued an Order that, among other things, ordered the Defendant to "cease and desist any and all constructing, installing, operating, maintaining and/or locating in the Township of cellular poles, antennas, and/or 'node' as defined in the Township's complaint[.]"A true and correct copy of the October 5, 2016 Order is attached hereto, incorporated herein, and labeled Exhibit "C."

5. On October 7, 2016, after a hearing in which the Defendant presented no evidence whatsoever, Judge Smyth issued an Order that, among other things, extended indefinitely the October 5, 2016 cease and desist Order above-referenced. A true and correct copy of the October 7, 2016 Order is attached hereto, incorporated herein, and labeled Exhibit "D."

6. On or about October 14, the Defendant filed a Notice of Removal. For the sake of brevity, this Notice is not attached hereto but is available upon request.

7. On or about October 20, 2016, the undersigned and counsel for the Defendant conferenced the instant litigation with this Honorable Court.

8. Subsequently, on or about October 24, 2016, the Defendant filed an Amended Notice of Removal, in which the Defendant amended its argument regarding diversity jurisdiction and

added an argument regarding federal question. A true and correct copy of the Defendant's Amended Notice of Removal without exhibits is attached hereto, incorporated herein, and labeled Exhibit "E."

**This Honorable Court Does Not Have Subject Matter Jurisdiction Over the Instant Matter Due to Diversity of Citizenship**

9. This Honorable Court does not have subject matter jurisdiction over the instant matter pursuant to 28 U.S.C. § 1332(a)(1), as the amount in controversy does not exceed the sum or value of $75,000."

10. The law is clear regarding determining the amount in controversy pursuant to diversity citizenship relative to a petition for injunction filed by a township in order to enforce its zoning authority.

11. An Eastern District of Pennsylvania case, Schuylkill Township v. CitySwitch, LLC, has almost identical facts as the instant matter. Schuylkill Township v. CitySwitch, LLC, 2009 U.S. Dist. LEXIS 59460 (2009)(Schuylkill).

12. CitySwitch was seeking to construct and manage wireless communication towers in Schuylkill Township. See Schuylkill at *3.

13. Schuylkill Township denied CitySwitch's permit application stating that CitySwitch's application was incomplete and CitySwitch needed to go through zoning. Id.

14. Additionally while Schuylkill Township contended that the proposed towers were a danger to its residents, CitySwitch took steps to erect the tower. Id. at *5.

15. Schuylkill Township sought to enjoin CitySwitch from installing or maintaining the towers in question, Id., and CitySwitch removed the case from state court to the Eastern District of Pennsylvania. Id. at *6.

16. The above-referenced facts in CitySwitch are almost identical to the instant matter, in which the Defendant has stated unequivocally that they are allowed to place antennas, nodes, polls, towers and/or other telecommunication facilities without obtaining Township permits and/or zoning relief, let alone even informing the Township of the Defendant's actions. See Exhibit "A" paragraphs 51 and 55.

17. Furthermore, the Township, just like Schuylkill Township in CitySwitch, seeks to enjoin a telecommunications provider, here the Defendant, from ignoring the Township's zoning authority. See Exhibit "A" generally.

18. The CitySwitch Court addressed the question of diversity jurisdiction and specifically whether the amount in controversy had been met. Id.

19. The Court stated, "The burden of demonstrating the existence of federal jurisdiction rests with the party asserting jurisdiction." Id. (citing Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990)).

20. The Court further stated, "***The object of the litigation in this particular matter is [Schuylkill Township's] right to have its zoning ordinances enforced***." Id. at *11 (emphasis added).

21. The Court further stated, "[A] fair reading of [Schuylkill Township's] Complaint reveals that from its perspective, the object of the litigation is not the usage of the land, but rather enforcement of the local ordinances." Id.

22. The Court emphasized, "The value of enforcing the law evades easy quantification and the Court does not agree with Defendant's contention that it must top $75,000. If that were the case, every complaint filed in state courts seeking an injunction under state law and involving diverse parties could find its way into federal court." Id.

{00537471;v1}

23. The Court concluded, "Indeed, a victory for the Township will not result in any monetary gain, merely the enforcement of its ordinances." Id. at *15.

24. Here, just as in CitySwitch, the Township is simply seeking to enforce its zoning code. The Township seeks no monetary damages that can be quantified. Indeed, just as the CitySwitch Court held, a victory by the Township would merely be the enforcement of its ordinances. See Exhibit "A" "Wherefore" clause and Exhibit "A" generally.

25. The Defendant would have this Honorable Court believe that the amount in controversy is above $75,000, as the Township's codes require telecommunications providers to pay fees in relation to the installation of telecommunication facilities in the Township. See Defendant's Amended Notice of Removal paragraphs 16-20.

26. A fair reading of the Township's Complaint makes it clear that the Township's goal is the enforcement of its ordinances and the protection of the health, safety, and welfare of its residents. See Exhibit "A" generally.

27. The Township does not seek any monetary gain, and, indeed, the Township's Complaint is devoid of any request for the same. See Exhibit "A" generally.

28. Furthermore, the Defendant has plucked certain language from the Township's codes out of context in attempt to bolster its meritless argument that the Defendant's removal is lawful pursuant to diversity jurisdiction. In the section of the Township's Telecommunications code immediately prior to the section containing the language the Defendant quotes in its Amended Notice of Removal, the Township states the purpose of all fees and compensation: "It is the purpose of this article to ***provide for the payment and recovery of all direct and indirect costs and expenses of the Township related to enforcement and administration of Part 2*** [Standards,

Registration, Licensing and Franchise Regulations of the Telecommunication code]." See Exhibit B of Exhibit "A" (emphasis added).

29. Thus, while the Defendant would have this Honorable Court believe that the Township is seeking monetary damages, it is clearly not. Any fees or compensation the Township would receive from the Defendant would cover the direct and indirect costs of the Defendant's own actions (i.e. installing telecommunication facilities within the Township).

30. Furthermore, the Defendant has claimed that it already has entered into a licensing agreement with the Township that would negate most, if not all, the fees referenced in the Township's Telecommunications code. See Exhibit "C" of Exhibit "A."

31. The Township references a "fee" three times in its Complaint without any mention of the exact amount of the fee; it is clear from the reading of the Complaint as a whole that the Township's main objective is to have the Defendant comply with the Township's ordinances in order to protect the health, safety, and welfare of the Township residents. Paying a fees is simply part of the permitting process that allows the Township to enforce its police power. See Exhibit "A" generally.

32. When the Defendant's argument on this point is drawn to its logical extreme, even if the Township charged a $1 permit fee, the Defendant would be able to argue that the object of the litigation is above $75,000. The Defendant seeks to install telecommunication facilities at unlimited sites, and according to the Defendant, the Township, if successful in the instant litigation, could charge all other telecommunications providers a $1 permit fee. In both of these scenarios, even if the Township wanted to enforce a $1 permit in state court - which it is not – any defendant could remove said case to federal court, as there theoretically would always be over 75,000 $1 permits at issue.

33. This is exactly the scenario that the CitySwitch Court was seeking to avoid. See CitySwitch generally. The CitySwitch Court stated explicitly, that it would "not turn a local zoning dispute into a federal case simply because [CitySwitch] has spent considerable sums of money." CitySwitch at *13.

34. It is clear that the Defendant believes this case has monetary value, because it will be losing out on its windfall of installing the above-referenced telecommunication facilities. The Defendant's monetary concern is of no moment.

35. On the other hand, the Township's interest is to enforce its zoning ordinances in an attempt to maintain the health, safety, and welfare of its residents. This concern cannot be quantified and it clearly does not rise above $75,000.

**This Honorable Court Does Not Have Subject Matter Jurisdiction Over the Instant Matter as there is No Federal Question at Issue**

36. The issue in question, whether the Township has satisfied the elements for a court to order an injunction to preserve the Township's zoning authority, is a distinctly local issue, and this Honorable Court does not have federal question jurisdiction.

37. The Eastern District has stated, "There is no question that zoning and land use issues are traditionally significant to states. Thus, it is often appropriate for federal courts to abstain from deciding land use issues." National Parks Conservation Association v. Lower Providence Township, 608 F. Supp. 2d 637, 650 (E. Dist. of Pa. 2009) (citing Addiction Specialist, Inc. v. Township of Hampton, 411 F.3d 399 (3d Cir. 2005) (National Parks)).

38. The Court further stated, "As Justice Alito said when sitting on the Third Circuit, '[l]and-use decision are matters of local concern' and a federal court should not act as a 'zoning board of appeals.'" Id. (quoting United Artists Theatre Circuit, Inc. v. Township of Warrington, 316 F.3d 392, 402 (3d Cir. 2003)(United Artist)).

{00537471;v1}

39. The National Parks Court noted that a federal act was part of the analysis in that case. Id. at 651. However, in remanding the case to the Montgomery County Court of Common Pleas, the court found that "Pennsylvania's interest in land use outweighs the federal interest expressed in [the relevant federal act]." Id. The court found it significant that the federal government was not a party to the case. Id. The court also found significant that Congress did not legislate regarding the specific issue in National Parks. Id.

40. Federal district courts have federal question jurisdiction over appeals from zoning board decisions. Cellular Telephone Wireless v. Board of Adjustment, 142 Fed. Appx. 111, 113 (3d Cir. 2005) (citing 47 U.S.C. § 332(c)(7)(B)(iii)).

41. However, the ***"Telecommunications Act expressly preserves local authority over the placement, construction, and modification of personal wireless service facilities."*** Id. (citing 47 U.S.C. § 332(c)(7)(A) (emphasis added)).

42. Furthermore, in the context of the Telecommunications Act, the "decision process [referenced in 47 U.S.C. § 332(c)(7)(A)] is governed by applicable state and local zoning laws." Id. (quoting Cellular Tel. Co. v. Zoning Bd. of Adjustment (Ho-Ho-Kus), 197 F.3d 64, 71 (3d Cir. 1999).

43. As stated in Verizon Maryland, Inc. v. Public Service Comm'n of Maryland – a case the Defendant quotes in its Amended Notice of Removal without any context – if provisions of an act "evince any intent to preclude federal review" then federal question jurisdiction does not apply. Verizon Maryland, Inc. v. Public Service Comm'n of Maryland, 535 U.S. 635, 644 (2002) (Verizon Maryland).

44. As stated in Grable & Sons Metal Products v. Darue Engineering & Manufacturing – another case the Defendant cites in its Amended Notice of Removal without any context - even

{00537471;v1}

when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto[,] [f]or the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of [the law regarding federal question jurisdiction]." Grable & Sons Metal Products v. Darue Engineering & Manufacturing, 545 U.S. 308, 314-15 (2005).

45. The Defendant also quotes in its Amended Notice of Removal out of context Merrell Dow Pharm. Inc. v. Thompson, as the Defendant fails to bring to this Honorable Court's attention that the language immediately following the language quoted by the Defendant runs counter to Defendant's argument: "Our actual holding […] demonstrates that this statement must be read with caution; the central issue presented in [the quoted] case turned on the meaning of the [federal act at issue], but we nevertheless concluded that federal jurisdiction was lacking." Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 808 (1986). The Merrell Dow Court held that the federal question jurisdiction is not as simple as the Defendant claims it to be: "Determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." Id. at 810.

46. In the instant matter, the issue in question is a distinctly local issue: the Township simply seeks to enforce its own codes regarding zoning. This is exactly the kind of local issue that now Justice Alito stated in United Artist is a matter of "local concern."

47. This distinctly local concern is the crux of the matter, and, as the National Parks Court held, even if a federal act, here arguably the Telecommunications Act, is part of the analysis of the case, the state's interest in land use outweighs any potential federal interest. Again,

{00537471;v1}

analogous to National Parks, the federal government has taken no position and is not a party in the instant litigation, facts that bolster the argument that the instant issue is one of local concern.

48. While the Telecommunications Act does allow for federal jurisdiction of zoning appeals, the instant matter is not a zoning appeal. Rather, the instant matter revolves solely around whether the Township has zoning authority in the first place, and the law is clear that the Township's decision process regarding the placement of telecommunication facilities is governed by applicable state and local zoning laws.

49. Verizon Maryland is significant not for the out-of-context language the Defendant quotes but for the actual nuanced analysis of the Court: If the applicable federal act indicates *any* intent to preclude federal review, federal question jurisdiction does not apply. In the instant matter, the Telecommunications Act specifically states "that ***nothing in this Act shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.***" 47 U.S.C. § 332(7)(A) (emphasis added).

50. While the Defendant states in its Notice of Removal that this matter also involves the Spectrum Act, 47 U.S.C. § 1455(a)(1), see Exhibit "E" paragraph 23, and, specifically, the "modification" of existing towers or base stations in the Township, the Defendant's own correspondence belies this notion: The Defendant explicitly stated to the Township that the Defendant was authorized to install and operate "equipment and network in, under, and over the public ways of the Township on standard-design prefabricated steel poles, wooden distribution poles, ***newly installed*** poles and other available structures throughout the Township." Exhibit "C" to Exhibit "A" (emphasis added).


51. Furthermore, the Defendant made it clear that it intended to install at least twenty-one telecommunication facilities in the Township. Id.

52. The Defendant expressed verbally to the undersigned that it would not agree to give the Township notice before it installed *any* telecommunication facilities.

53. Thus, based on the Defendant's threats that it would place at least twenty-one new poles and potentially unlimited poles in the Township, the Township simply seeks to maintain its zoning authority.

54. The law is clear that the decision regarding the placement, construction, and modification of personal wireless service facilities is a distinctly local issue, and the instant matter should be remanded to the Montgomery County Court of Common Pleas.

**WHEREFORE**, Movant respectfully requests that this Honorable Court remand the removed civil action to the Court of Common Pleas of Montgomery County, Pennsylvania.

Respectfully submitted,

Date: October 27, 2016

By: *N-M-*

Noah Marlier, Esquire (Pa. I.D. No. 308985)
**RUDOLPH CLARKE, LLC**
7 Neshaminy Interplex Suite 200
Trevose, PA 19053
(215) 633-1890
Attorney for Plaintiff Abington Township

{00537471;v1}