# EXHIBIT "A"

## PART 1 of 2

# Supreme Court of Pennsylvania
## Court of Common Pleas
### Civil Cover Sheet

_MONTGOMERY_ County

| For Prothonotary Use Only: | TIME STAMP |
|---|---|
| Docket No: 16-23932 | |

_The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court._

## SECTION A

**Commencement of Action:**
- ☒ Complaint
- ☐ Writ of Summons
- ☐ Petition
- ☐ Transfer from Another Jurisdiction
- ☐ Declaration of Taking

| Lead Plaintiff's Name: _ABINGTON TOWNSHIP_ | Lead Defendant's Name: _CROWN CASTLE NG EAST LLC_ |
|---|---|

| Are money damages requested? ☐ Yes ☒ No | Dollar Amount Requested: (check one) ☐ within arbitration limits ☐ outside arbitration limits |
|---|---|

| Is this a _Class Action Suit?_ ☐ Yes ☒ No | Is this an _MDJ Appeal?_ ☐ Yes ☒ No |
|---|---|

Name of Plaintiff/Appellant's Attorney: _MICHAEL CLARKE, ESQ. / NOAH MARLIER, ESQ._

☐ Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)

## SECTION B

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.** If you are making more than one type of claim, check the one that you consider most important.

**TORT** (do not include Mass Tort)
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability (does not include mass tort)
- ☐ Slander/Libel/ Defamation
- ☐ Other: _____

**CONTRACT** (do not include Judgments)
- ☐ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other
- _____
- ☐ Employment Dispute: Discrimination

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other

2016-23932-0000  10 5 2016 2:13 PM  = 10986636
Complaint Civil Action
Rcpt=2016-8-03185  Fee:$270.00
Mark Levy - MontCo Prothonotary

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☐ Other: _____

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☐ Quiet Title
- ☐ Other:

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☐ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☒ Other: _PRELIMINARY INJUNCTION_

**PROFESSIONAL LIABLITY**
- ☐ Dental
- ☐ Legal
- ☐ Medical
- ☐ Other Professional

Updated 1/1/2011

**RUDOLPH CLARKE, LLC**
**BY:  Michael P. Clarke, Esquire**
**Attorney I.D. No. 63378**
**BY:  Noah Marlier, Esquire**
**Attorney I.D. No. 308985**
**Seven Neshaminy Interplex**
**Suite 200**
**Trevose, PA  19053**                      **ATTORNEYS FOR ABINGTON TOWNSHIP**
**(215) 633-1890**

---

| | | |
|---|---|---|
| **ABINGTON  TOWNSHIP** | : | |
| | : | **COURT OF COMMON PLEAS** |
| **Plaintiff,** | : | |
| | : | **MONTGOMERY COUNTY, PA** |
| **v.** | : | |
| | : | **CIVIL ACTION IN EQUITY** |
| **CROWN CASTLE NG EAST LLC** | : | |
| | : | **NO. *16-23932*** |
| **Defendant.** | : | |

---

### NOTICE

        You have been sued in Court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so, the case may proceed without you and judgment may be entered against you be the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you.

### AMERICANS WITH DISABILITIES ACT OF 1990

        The Court of Common Pleas of Montgomery County is required, by law, to comply with the Americans with Disabilities Act of 1990.  For information about accessible facilities and reasonable accommodations available to disabled individuals having business before the Court, please contact our office.  All arrangements must be made at least 72 hours prior to any hearing or business before the Court.  You must attend the scheduled conference or hearing.

        YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

{00507154;v1}

MONTGOMERY COUNTY BAR ASSOCIATION
100 West Airy Street
Norristown, Pennsylvania 19401
(610) 279-9660

{00507154;v1}

**RUDOLPH CLARKE, LLC**
BY:  Michael P. Clarke, Esquire
Attorney I.D. No. 63378
BY:  Noah Marlier, Esquire
Attorney I.D. No. 308985
Seven Neshaminy Interplex
Suite 200
Trevose, PA 19053                          **ATTORNEYS FOR ABINGTON TOWNSHIP**
(215) 633-1890

---

| | |
|---|---|
| **ABINGTON  TOWNSHIP** : | |
| : | **COURT OF COMMON PLEAS** |
| **Plaintiff,** : | |
| : | **MONTGOMERY COUNTY, PA** |
| **v.** : | |
| : | **CIVIL ACTION IN EQUITY** |
| **CROWN CASTLE NG EAST LLC** : | |
| : | NO. 16 -23932 |
| **Defendant.** : | |

---

## COMPLAINT IN EQUITY

Plaintiff, by and through its attorneys Michael P. Clarke, Esquire and Noah Marlier,
Esquire of Rudolph Clarke, LLC, hereby avers as follows:

1.  Plaintiff is the Township of Abington, Montgomery County, Pennsylvania ("Township"),
a duly organized township of the first class, with principal offices located at 1176 Old York
Road, Abington, PA 19001.

2.  Crown Castle NG East LLC ("Defendant") is, upon information and belief, a commercial
entity licensed in and doing business in Pennsylvania.

3.  Upon information and belief, the Defendant's principal place of business is 131-05 14th
Avenue, College Point, NY 11356.

{00507154;v1}

4.   Upon information and belief, the Defendant has plans to imminently construct, install, operate, maintain, and/or locate cellular poles, cellular antennas, and/or cellular "nodes"[1] in the Township.

### The Township's Zoning Code on Telecommunication Facilities/Antennas

5.   The Federal Telecommunications Act of 1996 states, in part, that local zoning ordinances are preserved, stating, "Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless services facilities." 47 U.S. Code § 332(7)(A).

6.   The constructing, installing, operating, maintaining, and/or locating of the above-referenced poles, antennas, and/or "nodes" would be in violation of the Township's Zoning Code ("Zoning Code").

7.   Specifically, the Zoning Code Ordinance 1800 Section 4(c) states that prior to the constructing, installing, operating, maintaining, and/or locating of these types of poles, antennas, and/or "nodes," the relevant commercial entity must apply to the Township for the same and provide an inventory of existing sites. A true and correct copy of the Zoning Code Ordinance 1800 is attached hereto, incorporated herein, and marked Exhibit "A."

8.   Specifically, the Zoning Code Ordinance 1800 Section 4(d) states that any towers or antennas shall meet certain aesthetic requirements. Exhibit "A."

9.   Specifically, the Zoning Code Ordinance 1800 Section 4(e) states that any towers or antennas shall meet certain lighting requirements. Exhibit "A."

---

[1] In correspondence referenced and attached below as Exhibit "C", the Defendant defines "nodes" as "fiber optic cable and associated equipment, including optical converters and antennas."

{00507154;v1}

10. Specifically, the Zoning Code Ordinance 1800 Section 4(f) states, among other things, that any towers or antennas shall "meet or exceed current standards and regulations of the FAA, the FCC, and any other agency of the state or federal government with authority to regulate towers and antennas." Exhibit "A."

11. Specifically, the Zoning Code Ordinance 1800 Section 4(g) states, among other things, "To ensure the structural integrity of towers, the owner of a tower shall ensure that it is maintained in compliance with standards contained in applicable state or local building codes[.]" Exhibit "A."

12. Specifically, the Zoning Code Ordinance 1800 Section 4(j) states, "Owners and/or operators of towers or antennas shall certify that all franchises required by law for the construction and/or operation of a wireless communication system in the Township have been obtained[.]" Exhibit "A."

13. Specifically, the Zoning Code Ordinance 1800 Section 5(a)(i-iii) sets forth height requirements as well as requirements to comply with FCC, FAA, and building code requirements. Exhibit "A."

14. Specifically, the Zoning Code Ordinance 1800 Section 7(b) sets forth guidelines of antennas mounted on utility poles or light poles. Exhibit "A."

15. Specifically, the Zoning Code Ordinance 1800 Section 7(b) sets forth requirements regarding the location of these types of antennas. Exhibit "A."

16. Specifically, the Zoning Code § 706 states that the telecommunication poles to which the "nodes" in question would be attached are an Accessory Use that would not be permitted in the R-2 Residential Zoning District.

{00507154;v1}

17. Also, the specific zoning districts to which the Defendant, upon information and belief, seeks to erect poles to which the "nodes" in question would be attached each have their own "height limitations" for said poles.

### The Township's Code of Ordinances on Telecommunication Facilities/Antennas

18. The constructing, installing, operating, maintaining, and/or locating of the above-referenced poles, antennas, and "nodes" would be in violation of the Township's Code Chapter 154 Telecommunications ("Telecommunications Code"). A true and correct copy of the Telecommunications Code is attached hereto, incorporated herein, and labeled Exhibit "B."

19. The Telecommunications Code § 154.21 states its purpose to be, among other things, to "[a]ssure that the Township can continue to fairly and responsibly protect the health, safety, and welfare" of its residents. Exhibit "B."

20. Specifically, the Telecommunications Code § 154.23 requires, in part, the following: "[A]ll telecommunications carriers and providers engaged in the business of transmitting, supplying, or furnishing of telecommunications originating or terminating in the Township shall register with the Township [...]"Exhibit "B."

21. Specifically, the Telecommunications Code § 154.31 requires, in part, the following: "All telecommunications carriers and providers that offer or provide any telecommunications service for a fee, directly to the public, either within the Township or outside the corporate limits from telecommunications facilities within the Township, shall register with the Township pursuant to this article on forms to be provided by the Township [.]"Exhibit "B."

22. Specifically, the Telecommunications Code §154-33 and §154-34 states that the Township may collect a registration fee from the telecommunications carrier and do so to, among other things, "[a]ssist the Township in enforcement of this Part 2 [of the

{00507154;v1}

Telecommunications Code]" and "[a]ssist the Township in monitoring compliance with local, state and federal laws." Exhibit "B."

23. Specifically, the Telecommunications Code § 154-35 states, "Any person who desires a telecommunications license pursuant to this article shall file an application with the Township [...]" Exhibit "B."

24. Specifically, the Telecommunications Code § 154-36 states that the Township, subsequent to receiving the above-referenced application, "shall issue a written determination" based, in part, on the "effect, if any, on public health, safety, and welfare if the license is granted." Exhibit "B."

25. Specifically, the Telecommunications Code § 154-42 sets forth Township guidelines for the location of telecommunication facilities. Exhibit "B."

26. Telecommunications Code § 154-42 makes clear that when a wireless telecommunications antenna system "does not meet zoning criteria [...] a license and construction permit shall only be issued following a grant of variance or special exception approval from the Township Zoning Hearing Board." Exhibit "B."

27. Specifically, Telecommunications Code § 154-109 sets forth guidelines for obtaining a construction permit to construct, install, operate, maintain, and/or locate a telecommunication facility.

## The Defendant's Failure to Follow the Township Codes

28. On or about July 22, 2016, the Defendant sent correspondence to the Township regarding its desire to "install, operate, and maintain fiber optic cable and associated equipment, including optical converters and antennas (each equipment location is referred to by the industry as a 'node'), on, over and under the public way in the Township in connection with the provision of

{00507154;v1}

telecommunications provided by [the Defendant] as a 'carrier's carrier' for its wireless carrier customers." A true and correct copy of the above-referenced correspondence is attached hereto, incorporated herein, and marked as Exhibit "C."

29. The Defendant attached a "Franchise Agreement" it claimed the Township and the Defendant's predecessor in interest had entered into on September 11, 2008. Exhibit "C."

30. The Franchise Agreement states, "Permits Required: Franchisee shall not construct, reconstruct, or relocate the telecommunication system (or parts thereof) within the public ways or on public property unless permits have been obtained in accordance with the Telecommunication Ordinance." Exhibit "C."

31. The Franchise Agreement also states that construction of telecommunication systems shall not commence unless maps and engineering details are provided. Exhibit "C."

32. The Franchise Agreement also states that the construction standards as stipulated in the "Telecommunication Ordinance" must be followed. Exhibit "C."

33. The Franchise Agreement also states that the Township shall perform inspections of telecommunication construction or installation. Exhibit "C."

34. The Franchise Agreement also states that *"the Franchisee shall at all times comply with all lawful applicable laws and regulations of the federal, state, county, and Township governments[.]"* (emphasis added). Exhibit "C."

35. The Franchise Agreement also states that "this Agreement shall not be assigned by Franchisee without the express written consent of the Issuing Authority." Exhibit "C."

36. In the above-referenced correspondence, the Defendant claimed that a new franchise agreement between the Defendant and the Township was not required, but the Defendant, nonetheless, offered to sign a new franchise agreement with the Township. Exhibit "C."

{00507154;v1}

37. The Franchise Agreement attached to the above-referenced correspondence is clearly not applicable, as the plain language of the Franchise Agreement itself makes it clear that the Township did not enter into the Franchise Agreement with the Defendant but rather another commercial entity.

38. The Franchise Agreement attached to the above-referenced correspondence is further not applicable, as the plain language of the Franchise Agreement itself makes it clear that the Franchise Agreement could not be assigned without the Township's approval, and, thus, the Defendant is not a party to the Franchise Agreement. See Exhibit "C."

39. The Defendant confirms as much by the fact that it requested in the above-referenced correspondence that the Township enter into a new franchise agreement. See Exhibit "C."

40. Even if the Franchise Agreement has full force and effect, the Franchise Agreement makes it clear that the Defendant, prior to constructing, installing, operating, maintaining and/or locating of telecommunication poles, antennas, or "nodes" must follow the procedure set forth in the Franchise Agreement.

41. If it is found that the Franchise Agreement does apply to the Defendant, the Defendant has failed to perform, among other things, the following as required in the Franchise Agreement:

    a.  The Defendant has not obtained applicable permits from the Township;

    b.  The Defendant has failed to filed engineering details or maps with the Township;

    c.  The Defendant has failed to file any evidence of its compliance with applicable engineering standards with the Township;

    d.  The Defendant has failed to schedule any inspections of the relevant constructing, installing, operating, maintaining and/or locating of telecommunication poles, antennas, and/or "nodes," and;

    e.  Significantly, the Defendant has utterly failed to comply with the Zoning Code and/or Telecommunication Code.

42. Furthermore, the Defendant has failed to perform, among other things, the following as required by the Zoning Code:

    a.  The Defendant has failed to make proper application for the relevant constructing, installing, operating, maintaining and/or locating of telecommunication towers or antennas;

    b.  The Defendant has failed to demonstrate how the relevant towers or antennas shall meet certain aesthetic requirements;

    c.  The Defendant has failed to demonstrate how the relevant towers or antennas shall meet certain lighting requirements;

    d.  The Defendant has failed to demonstrate how the relevant towers or antennas shall meet current standards of the FAA, FCC, and any other agency of the state or federal government with authority;

    e.  The Defendant has failed to demonstrate how the relevant towers or antennas shall meet building code standards;

    f.  The Defendant has failed to obtain appropriate franchises required;

    g.  The Defendant has failed to demonstrate that the relevant antennas comply with appropriate height requirements;

    h.  The Defendant has failed to demonstrate that the relevant antennas are located lawfully in relation to other structures, including homes;

    i.  The Defendant has failed to demonstrate that the relevant antennas are located lawfully in relation to the zoning district to which they would be located;

43. Furthermore, the Defendant has failed to perform, among other things, the following as required by the Telecommunication Code:

    a.  The Defendant has failed to demonstrate that the constructing, installing, operating, maintaining and/or locating of cellular poles, antennas, and/or "nodes" in the Township would not endanger the health, safety, and welfare of the residents of the Township;

    b.  The Defendant has failed to appropriately register with the Township;

    c.  The Defendant has failed to pay a registration fee to the Township;

    d.  The Defendant has failed to obtain a license from the Township;

    e.  The Defendant has failed to perform the above-referenced requirements, and, therefore, the Township has not been able to issue a written determination relative to the Defendant's constructing, installing, operating, maintaining and/or locating of cellular poles, antennas, and/or "nodes" in the Township, and ;

    f.  The Defendant has failed to obtain proper zoning relief.

**The Township Provided Notice to the Defendant**

44. The Defendant failed to follow the above Zoning Code and/or Telecommunication Code despite the Township putting the Defendant on notice of said failure.

45. On or about August 8, 2016, Township Planning & Zoning Officer Mark A. Penecale ("Mr. Penecale") wrote the Defendant regarding the relevant matter. A true and correct copy of this August 8, 2016 correspondence is attached hereto, incorporated herein, and marked as Exhibit "D."

46. Mr. Penecale stated that the Defendant must enter into an agreement with the Township to perform the relevant work. Exhibit "D."

{00507154;v1}

47. Furthermore, Mr. Penecale also put the Defendant on notice that the Defendant's constructing, installing, operating, maintaining and/or locating of cellular poles, antennas, and/or "nodes" in the Township must comply with the Zoning Code. Exhibit "D."

48. Specifically, Mr. Penecale reminded the Defendant that the utility poles the Defendant proposes constitute an Antenna System, an accessory use that is not permitted in the residential district to which the Defendant has indicated they were installing said poles. Exhibit "D."

49. Specifically, Mr. Penecale reminded the Defendant that the utility poles with antennas the Defendant proposes must conform to the height limitations within the specific residential zoning district to which the poles with antennas would be erected. Exhibit "D."

50. On or about August 9, 2016, Mr. Penecale met with two of the Defendant's representatives, Peter Broy and John Shive, and Mr. Penecale reiterated what was required of the Defendant before they began the constructing, installing, operating, maintaining and/or locating of cellular poles, antennas, and/or "nodes" in the Township.

51. At the above referenced meeting, despite once again being put on notice of the above-referenced requirements, the Defendant confirmed that they would be commencing constructing, installing, operating, maintaining and/or locating of cellular poles, antennas, and/or "nodes" in the Township on Friday, August 12, 2016.

52. On or about August 10, 2016, Lauren A. Gallagher of the undersigned attorney's law firm, Rudolph Clarke, LLC, the solicitor for the Township, wrote the Defendant again reiterating the requirements of the Defendant before the Defendant could commence constructing, installing, operating, maintaining and/or locating of cellular poles, antennas, and/or "nodes" in the Township. A true and accurate copy of this email correspondence is attached hereto, incorporated herein, and marked as Exhibit "E."

53. Subsequent to Ms. Gallagher sending this correspondence and throughout August and September 2016, Ms. Gallagher and the undersigned had discussions with counsel for the Defendant regarding the instant issue.

54. During the discussion described above, Counsel for the Defendant agreed that it would provide the Township at least five days' notice before it would perform any constructing, installing, operating, maintaining and/or locating of cellular poles, antennas, and/or "nodes" in the Township.

55. However, on October 4, 2016, counsel for the Defendant stated unequivocally that the Defendant would no longer provide this notice to the Township.

56. Thus, the Defendant is once again taking the position that it can construct, install, operate, maintain and/or locate cellular poles, antennas, and/or "nodes" in the Township without any notice to the Township and without allowing any oversight whatsoever by the Township.

**The Defendant is Endangering the Health, Safety, and Welfare of the Township Residents**

57. The Defendant has made it clear that they are commencing the constructing, installing, operating, maintaining and/or locating of cellular poles, antennas, and/or "nodes" in the Township at an unknown time and date despite the clear directives by the Township not to do so.

58. The Township has no ability to oversee the constructing, installing, operating, maintaining and/or locating of cellular poles, antennas, and/or "nodes" in the Township.

59. The Defendant has not complied with any of the applicable Township codes.

60. Since the Defendant has not followed the proper procedural process, the Township residents have absolutely no notice of the Defendant entering their property for the purpose of constructing, installing, operating, maintaining and/or locating of cellular poles, antennas, and/or "nodes" in the Township.

{00507154;v1}

61. Township residents will have no knowledge as to who is entering their property.

62. Township residents will have no knowledge as to why the Defendant is entering their property.

63. Township residents will have no knowledge as to whether the Defendant is entering their property lawfully, and, indeed, the Defendant would not be entering lawfully.

64. Since the Defendants have not followed the proper procedures, there is absolutely no way of knowing if the Defendant is the constructing, installing, operating, maintaining and/or locating of cellular polls, antennas, and/or "nodes" in a safe manner.

65. The poles being constructed, installed, operated, maintained and/or located pose a danger to residents if those poles fall due to improper construction, installation, operating, maintenance and/or location.

66. The antennas and/or nodes being constructed, installed, operated, maintained and/or located pose a danger to residents if those antennas fall due to improper construction, installation, operating, maintenance and/or location.

67. The poles, antennas, and/or "nodes" being constructed, installed, operated, maintained and/or located pose a danger to residents if said poles, antennas, and/or "nodes" cause sight obstruction at intersections or along vehicular thoroughfares in the Township.

68. The above-referenced site obstruction could lead to vehicular accidents within the Township.

69. The poles, antennas, and/or "nodes" above-referenced pose a danger to Township law enforcement and emergency personnel who would have to be dispatched to any emergency caused by the improper construction, installation, operating, maintenance and/or location of the same.

{00507154;v1}

70. Any emergency caused by the above-referenced poles, antennas, and/or "nodes" would draw Township law enforcement emergency personnel away from other emergencies to which they would have attended.

**The Township has Met the Requirements of Obtaining an Injunction**

71. In relation to the forgoing, immediate and irreparable injury will be sustained by the Township before a hearing can be held on the Township's Petition for Preliminary Injunction as the construction, installation, operation, maintenance, and/or location of unlawful poles, antennas, and/or "nodes" in the Township will put the safety and health of the residents of the Township and the Township's law enforcement emergency personnel in jeopardy for the reasons listed above.

72. Violation of an ordinance is per se irreparable harm. Township of Little Britain v. Lancaster County Turf Products, Inc., 604 A.2d 1225 (Pa. Commw. Ct. 1992); Gateway Metals, Inc. v. Municipality of Monroeville, 525 A.2d 478 (Pa. Commw. Ct. 1987) (en banc).

73. A greater injury will occur from refusing the injunction than from granting it because if the injunction is not granted, the safety and health of the residents of the Township and the Township's law enforcement and emergency personnel would be in jeopardy for the reasons listed above.

74. The injunction will restore the parties to the status quo as the Defendant will be required to act in compliance with the applicable Township codes.

75. The wrong committed by the Defendant is manifest as the Defendant has willfully and purposely continued to ignore the Township's notices that the Defendant must first comply with all applicable Township codes before constructing, installing, operating, maintaining, and/or locating poles, antennas, and/or "nodes" in the Township.

76. The Township's right to relief is clear as the Township has an affirmative duty to protect the health and safety of its residents and emergency personnel and to ensure that all commercial entities seeking to do business in the Township comply with all applicable Township codes, and the Township is likely to win on the merits at a permanent injunction hearing.

**WHEREFORE**, for the foregoing reasons, the Township respectfully requests that this Honorable Court grant its Complaint for a Preliminary Injunction requiring the Defendant to cease and desist from installing cellular nodes on telephone poles or installing telephone polls for the purpose of installing the above-referenced polls, antennas, and/or nodes in the Township without first complying with any and all applicable Township code relative to the same.

RUDOLPH CLARKE, LLC

By: _____
Michael P. Clarke, Esquire
Noah Marlier, Esquire
Attorneys for Abington Township

Date: October 5, 2016

## **VERIFICATION**

Michael LeFevre hereby states that he is the Township Manager for the Township of Abington, that he is authorized to make this Verification on behalf of the Township and that the facts set forth in the foregoing Complaint are true and correct to the best of his knowledge, information and belief.

I make this statement understanding that it is subject to the penalties of 18 C.S.A. Section 4904 relating to unsworn falsification to authorities.

_____
Michael LeFevre

Date: _8-11-16_____

{00507154;v1}



2016-23932-0000   10.5.2016 2:13 PM   ~ 10986638
Complaint Civil Action
Rept=2016-8-03185  Fee:$270.00  Exhibit A
Mark Levy - MontCo Prothonotary

# EXHIBIT "A"

{00445486;v1}

ORDINANCE 1800
TABLE OF CONTENTS

Section 1   Purpose                                              Page 1

Section 2   Definitions                                          Page 2

Section 3   Applicability                                        Page 3

Section 4   General Standards and Requirements                   Page 3

Section 5   Standards and Procedures for                         Page 6
            Approval of Antennas

Section 6   Standards Regarding Conditional Use                  Page 7
            Approval for Towers

            (a)   General                                        Page 7

            (b)   Specific Standards and                         Page 8
                  Requirements Regarding Towers

                  (1)   Information Required                     Page 8

                  (2)   Factors Considered                      Page 10

                  (3)   Availability of Existing                 Page 11
                        Towers

                  (4)   Setbacks                                 Page 12

                  (5)   Separation                               Page 12

                  (6)   Security Fencing                         Page 14

                  (7)   Landscaping                              Page 14

Section 7   Buildings or Other Equipment Storage                 Page 15

Section 8   Removal of Abandoned Antennas and Towers             Page 16

Section 9   Nonconforming Uses                                   Page 17

Section 9   Severability                                         Page 18

Section 10  Repealer                                             Page 18

Section 11  Effective Date                                       Page 18

Section 2:     Definitions.  As used in this ordinance, the following terms shall have the meanings set forth below:

(a)   "Alternative tower structure" means man-made trees, clock towers, bell steeples, light poles and similar alternative-design mounting structures that camouflage or conceal the presence of antennas or towers.

(b)   "Antenna" means any exterior transmitting or receiving device mounted on a tower, building or structure and used in communications that radiate or capture electromagnetic waves, digital signals, analog signals, radio frequencies (excluding radar signals), wireless telecommunications signals or other communication signals, and pertains to Use A-5B as set forth in this Ordinance.

(c)   "Backhaul network" means the lines that connect a provider's towers/cell sites to one or more cellular telephone switching offices, and/or long distance providers, or the public switched telephone network.

(d)   "FAA" means the Federal Aviation Administration.

(e)   "FCC" means the Federal Communications Commission.

(f)   "Height" means, when referring to a tower or other structure, the distance measured from the finished grade of the parcel to the highest point on the tower or other structure, including the base pad and any antenna.

(g)   "Preexisting towers and preexisting antennas" means any tower or antenna for which a building permit or conditional use permit has been properly issued prior to the effective date of this ordinance, including permitted towers or antennas that have not yet been constructed so long as such approval is current and not expired.

(h)   "Tower" means any structure that is designed and constructed primarily for the purpose of supporting one or more antennas for telephone, radio and similar communication purposes, including self-supporting lattice towers, guyed towers, or monopole towers.  The term includes radio and television transmission towers, microwave towers, common-carrier towers, cellular telephone towers, alternative tower structures, and the like.  The term includes the structure and

any support thereto.  This term pertains to Use A-5A as set forth in this ordinance.

Section 3:      Applicability.

(a)  New Towers and Antennas.    All new towers or antennas in Township shall be subject to these regulations, except as provided in Sections 3(b) through (d), inclusive.

(b)  Amateur Radio Station Operators/Receive Only Antennas.  This ordinance shall not govern any tower, or the installation of any antenna, that is under seventy (70) feet in height and is owned and operated by a federally-licensed amateur radio station operator or is used exclusively for receive only antennas.

(c)  Preexisting Towers or Antennas.   Preexisting towers and preexisting antennas shall not be required to meet the requirements of this ordinance, other than the requirements of Sections 4(f) and 4(g).

(d)  AM Array.   For purposes of implementing this ordinance, an AM array, consisting of one or more tower units and supporting ground system which functions as one AM broadcasting antenna, shall be considered one tower.  Measurements for setbacks and separation distances shall be measured from the outer perimeter of the towers included in the AM array.   Additional tower units may be added within the perimeter of the AM array by right.


Section 4.      General Standards and Requirements.

(a)  Principal or Accessory Use.  Antennas and towers may be considered either principal or accessory uses.   A different existing use of an existing structure on the same lot shall not preclude the installation of an antenna or tower on such lot.

(b)  Lot Size.  For purposes of determining whether the installation of a tower or antenna complies with district development regulations, including but not limited to setback requirements, lot-coverage requirements, and other such requirements, the dimensions of the entire lot shall control, even though the antennas or towers may be located on leased parcels within such lot.

(c) <u>Inventory of Existing Sites.</u>  Each applicant for an antenna and/or tower shall provide to the Township Code Enforcement Department an inventory of its existing towers, antennas, or sites approved for towers or antennas, that are either within the jurisdiction of Township or within one mile of the border thereof, including specific information about the location, height, and design of each tower.  The Township may share such information with other applicants applying for administrative approvals or conditional use permits under this ordinance or other organizations seeking to locate antennas within the jurisdiction of Township, provided, however that the Township is not, by sharing such information, in any way representing or warranting that such sites are available or suitable.

(d) <u>Aesthetics.</u>  Towers and antennas shall meet the following requirements:

(1) Towers shall either maintain a galvanized steel finish or, subject to any applicable standards of the FAA, be painted a neutral color so as to reduce visual obtrusiveness.

(2) At a tower site, the design of the buildings and related structures shall, to the extent possible, use materials, colors, textures, screening, and landscaping that will blend them into the natural setting and surrounding buildings.

(3) If an antenna is installed on a structure other than a tower, the antenna and supporting electrical and mechanical equipment must be of a neutral color that is identical to, or closely compatible with, the color of the supporting structure so as to make the antenna and related equipment as visually unobtrusive as possible.

(e) <u>Lighting.</u>  Towers shall not be artificially lighted, unless required by the FAA or other applicable authority.  If lighting is required, the lighting alternatives and design chosen must cause the least disturbance to the surrounding views.

(f) <u>State or Federal Requirements.</u>  All towers must meet or exceed current standards and regulations of the FAA, the FCC, and any other agency of the

state or federal government with the authority to regulate towers and antennas. If such standards and regulations are changed, then the owners of the towers and antennas governed by this ordinance shall bring such towers and antennas into compliance with such revised standards and regulations within six (6) months of the effective date of such standards and regulations, unless a different compliance schedule is mandated by the controlling state or federal agency. Failure to bring towers and antennas into compliance with such revised standards and regulations shall constitute grounds for the removal of the tower or antenna at the owner's expense.

(g) Building Codes; Safety Standards. To ensure the structural integrity of towers, the owner of a tower shall ensure that it is maintained in compliance with standards contained in applicable state or local building codes and the applicable standards for towers that are published by the Electronic Industries Association, as amended from time to time. If, upon inspection, the Township concludes that a tower fails to comply with such codes and standards and constitutes a danger to persons or property, then upon notice being provided to the owner of the tower, the owner shall have thirty (30) days to bring such tower into compliance with such standards. Failure to bring such tower into compliance within said thirty (30) days shall constitute grounds for the removal of the tower or antenna at the owner's expense.

(h) Measurement. For purposes of measurement, tower setbacks and separation distances shall be calculated and applied to facilities located in the Township irrespective of municipal and county jurisdictional boundaries.

(i) Not Essential Services. Towers and antennas shall be regulated and permitted pursuant to this ordinance and shall not be regulated or permitted as essential services, public utilities, or private utilities.

(j) Franchises. Owners and/or operators of towers or antennas shall certify that all franchises required by law for the construction and/or operation of a wireless communication system in Township have been obtained and shall file a copy of all required franchises with the Code

Enforcement Department.

(k)   **Public Notice.**  For purposes of this ordinance, any conditional use request, variance request, or appeal of an administratively approved use or conditional use shall require public notice to all abutting property owners and all property owners of properties that are located within the corresponding separation distance listed in Section 7(b)(5)(ii), Table 2, in addition to any notice otherwise required by the Zoning Ordinance and/or the Pennsylvania Municipalities Planning Code.

(l)   **Signs.**  No signs shall be allowed on an antenna or tower.

(m)   **Buildings and Support Equipment.**  Buildings and support equipment associated with antennas or towers shall comply with the requirements of Section 8.

(n)   **Multiple Antenna/Tower Plan.**  The Township encourages the users of towers and antennas to submit a single application for approval of multiple towers and/or antenna sites. Applications for approval of multiple sites shall be given priority in the review process.

Section 5.      Standards and Procedures for Approval of Antennas.

(a)   The Township may administratively approve an application for the placement of an antenna on an existing structure, including existing towers, and including the placement of additional buildings or other supporting equipment used in connection with said antenna, in any zoning district in which antennas are permitted as a use by right, subject to the following:

(i)   The antenna does not extend more than eight (8) feet above the highest point of the structure;

(ii)  The antenna complies with all applicable FCC and FAA regualtions; and

(iii) The antenna complies with all applicable building codes.

(b)   Special conditions for antennas to be placed on existing towers:

(i)   A tower which is modified or reconstructed to accomodate the collocating of an additional antenna shall be of the same tower type as the existing tower.

(ii)  An existing tower may be modified or rebuilt to a taller height, not to exceed thirty (30) feet over the tower's existing height, to accomodate the collocation of an addditioanl antenna.

(iii) The tower's premodification height shall be used to calculate distance separations.

(c)  All applications for approval pursuant to this section shall be submitted to the Township Code Enforcement Department, and shall be accompanied by nonrefundable fee as established by resolution of the Board of Commissioners to reimburse the Township for the costs of reviewing the application.

(d)  All applications for approval pusuant to this section shall be reviewed by the Township to ensure that the proposed use complies with sections 4(d)(3), 4(j), 4(l), 4(m) and 4(n), and with section 5(b) of this ordinance.

(e)  The Township shall respond to each such application within ninety (90) days after receiving it by either approving or denying the application. If the Township fails to respond to the applicant within said ninety (90) days, the applications shall be deemed to be approved.

Section 6.        Standards Regarding Conditional Use Approval of Towers

(a)  General.  The following provisions shall govern the issuance of conditional use permits for towers:

(1)  A conditional use permit shall be required for the construction of a tower.

(2)  Applications for conditional use permits under this Section shall be subject to the procedures and requirements of Article XI, Section 1108 of the Zoning Ordinance, (pertaining to Conditional Uses) except as modified in this Section.

(3)  In granting a conditional use permit, the Board of Commissioners may impose conditions to the extent the Board of Commissioners

concludes such conditions are necessary to minimize any adverse effect of the proposed tower on adjoining properties.

(4) Any information of an engineering nature that the applicant submits, whether civil, mechanical, or electrical, shall be certified by a licensed professional engineer.

(5) An applicant for a conditional use permit shall submit the information described in this Section and a non-refundable fee as established by resolution of the Board of Commissioners to reimburse Township for the costs of reviewing the application.

(b) Specific Standards and Requirements Regarding Towers

(1) Information required.  In addition to any information required for applications for conditional use permits pursuant to Article XI, Section 1108 of the Zoning Ordinance, applicants for a conditional use permit for a tower shall submit the following information:

(i) A scaled site plan clearly indicating the location, type and height of the proposed tower, on-site land uses and zoning, adjacent land uses and zoning (including when adjacent to other municipalities), Master Plan classification of the site and all properties within the applicable separation distances set forth in Section 7(b)(5), adjacent roadways, proposed means of access, setbacks from property lines, elevation drawings of the proposed tower and any other structures, topography, parking, and other information deemed by the Code Enforcement Department to be necessary to assess compliance with this ordinance.

(ii) Legal description of the parent tract and leased parcel (if applicable).

(iii) The setback distance between the

proposed tower and the nearest residential unit, platted residentially zoned properties, and unplatted residentially zoned properties.

(iv)    The separation distance from other towers described in the inventory of existing sites submitted pursuant to Section 4(c) shall be shown on an updated site plan or map. The applicant shall also identify the type of construction of the existing tower(s) and the owner/operator of the existing tower(s), if known.

(v)     A landscape plan showing specific landscape materials.

(vi)    Method of fencing, and finished color and, if applicable, the method of camouflage and illumination.

(vii)   A description of compliance with Sections 4(c), (d), (e), (f), (g), (j), (l), and (m), 5(b)(4) and 5(b)(5), and all applicable federal, state and local laws.

(viii)  A notarized statement by the applicant as to whether construction of the tower will accommodate collocation of additional antennas for future users.

(ix)    Identification of the entities providing the backhaul network for the tower(s) described in the application and other cellular sites owned or operated by the applicant in the municipality.

(x)     A description of the suitability of the use of existing towers, other structures or alternative technology not requiring the use of towers or structures to provide the services to be provided through the use of the proposed new tower.

9

(xi)     A description of the feasible location(s) of future towers or antennas within the Township based upon existing physical, engineering, technological or geographical limitations in the event the proposed tower is erected.

(2)  Factors Considered in Granting Conditional use Permits for Towers.  In addition to any standards for consideration of conditional use permit applications pursuant to Article XI, Section 1108 of the Zoning Ordinance, the following factors shall be considered in determining whether to issue a conditional use permit, although the Township may waive or reduce the burden on the applicant of one or more of these criteria if the Township concludes that the goals of this ordinance are better served thereby:

(i)   Height of the proposed tower;

(ii)  Proximity of the tower to residential structures and residential district boundaries;

(iii)  Nature of uses on adjacent and nearby properties;

(iv)  Surrounding topography;

(v)  Surrounding tree coverage and foliage;

(vi)  Design of the tower, with particular reference to design characteristics that have the effect of reducing or eliminating visual obtrusiveness;

(vii)  Proposed ingress and egress; and

(viii)  Availability of suitable existing towers, other structures, or alternative technologies not requiring the use of towers or structures, as discussed in Section 7(b)(3) of this ordinance.

(3)  Availability of Suitable Existing Towers, Other Structures, or Alternative Technology. No new tower shall be permitted unless the

applicant demonstrates to the reasonable satisfaction of the Board of Commissioners that no existing tower, structure or alternative technology that does not require the use of towers or structures can accommodate the applicant's proposed antenna. An applicant shall submit information requested by the Board of Commissioners related to the availability of suitable existing towers, other structures or alternative technology. Evidence submitted to demonstrate that no existing tower, structure or alternative technology can accommodate the applicant's proposed antenna may consist of any of the following:

(i) No existing towers or structures are located within the geographic area which meet applicant's engineering requirements.

(ii) Existing towers or structures are not of sufficient height to meet applicant's engineering requirements.

(iii) Existing towers or structures do not have sufficient structural strength to support applicant's proposed antenna and related equipment.

(iv) The applicant's proposed antenna would cause electromagnetic interference with the antenna on the existing towers or structures, or the antenna on the existing towers or structures would cause interference with the applicant's proposed antenna.

(v) The fees, costs, or contractual provisions required by the owner in order to share an existing tower or structure or to adapt an existing tower or structure for sharing are unreasonable. Costs exceeding new tower development are presumed to be unreasonable.

(vi) The applicant demonstrates that there are other limiting factors that render existing towers and structures unsuitable.

(vii)   The applicant demonstrates that an alternative technology that does not require the use of towers or structures, such as a cable microcell network using multiple low-powered transmitters/receivers attached to a wireline system, is unsuitable. Costs of alternative technology that exceed new tower or antenna development shall not be presumed to render the technology unsuitable.

(4)   Setbacks. The following setback requirements shall apply to all towers; provided, however, that the Board of Commissioners may reduce the standard setback requirements if the goals of this ordinance would be better served thereby:

(i)   Towers must be set back a distance equal to at least seventy-five percent (75%) of the height of the tower from any adjoining lot line.

(ii)   Guys and accessory buildings must satisfy the minimum zoning district setback requirements.

(5)   Separation. The following separation requirements shall apply to all towers and antennas for which a conditional use permit is required; provided, however, that the Board of Commissioners may reduce the standard separation requirements if the goals of this ordinance would be better served thereby.

(i)   Separation from off-site uses/designated areas.

(a)   Tower separation shall be measured from the base of the tower to the lot line of the off-site uses and/or designated areas as specified in Table 1, except as otherwise provided in Table 1.

(b)   Separation requirements for towers shall comply with the minimum standards established in Table 1.

Table 1:

| Off-site Use/Designated Area | Separation Distance |
|---|---|
| Single-family or duplex residential units[1] | 200 feet or 300% height of tower whichever is greater |
| Vacant single-family or duplex residentially zoned land which is either platted or has preliminary subdivision plan approval which is not expired | 200 feet or 300% height of tower[2] whichever is greater |
| Vacant unplatted residentially zoned lands[3] | 100 feet or 100% height of tower whichever is greater |
| Existing multi-family residential units greater than duplex units | 100 feet or 100% height of tower whichever is greater |
| Non-residentially zoned lands or non-residential uses | None; only setbacks apply |

[1] Includes modular homes and mobile homes used for living purposes.
[2] Separation measured from base of tower to closest building setback line.
[3] Includes any unplatted residential use properties without a valid preliminary subdivision plan or valid development plan approval and any multi-family residentially zoned land greater than duplex.

(ii) Separation distances between towers.

    (a)    Separation distances between towers shall be applicable for and measured between the proposed tower and preexisting towers. The separation distances shall be measured by drawing or following a straight line between the base of the existing tower and the proposed base, pursuant to a site plan, of

13

base, pursuant to a site plan, of
the proposed tower. The separation
distances (listed in linear feet)
shall be as shown in Table 2.

(2)   Table 2:

Existing Towers - Types

|  | Lattice | Guyed | Monopole 75 Ft in Height or Greater | Monopole Less Than 75 Ft in Height |
|---|---|---|---|---|
| Lattice | 5,000 | 5,000 | 1,500 | 750 |
| Guyed | 5,000 | 5,000 | 1,500 | 750 |
| Monopole 75 Ft in Height or Greater | 1,500 | 1,500 | 1,500 | 750 |
| Monopole Less Than 75 Ft in Height | 750 | 750 | 750 | 750 |

(6)   Security fencing.  Towers shall be enclosed
by security fencing not less than six feet in
height and shall also be equipped with an
appropriate anti-climbing device;   provided
however, that the Board of Commissioners may
waive   such   requirements,   as   it   deems
appropriate.

(7)   Landscaping.   The following requirements
shall   govern   the   landscaping   surrounding
towers for which a conditional use permit is
required;   provided, however, that the Board
of Commissioners may waive such requirements
if  the  goals  of  this  ordinance  would  be
better served thereby.

(i)  Tower facilities shall be landscaped
with a buffer of plant materials that
effectively   screens   the   view   of   the

tower compound from property used for residences. The standard buffer shall consist of a landscaped strip at least four (4) feet wide outside the perimeter of the compound.

(ii) In locations where the visual impact of the tower would be minimal, the landscaping requirement may be reduced or waived.

(iii) Existing mature tree growth and natural land forms on the site shall be preserved to the maximum extent possible. In some cases, such as towers sited on large, wooded lots, natural growth around the property perimeter may be sufficient buffer.

Section 7.        Buildings or Other Equipment Storage.

(a) Antennas Mounted on Structures or Rooftops. The equipment cabinet or structure used in association with antennas shall comply with the following:

(1) The cabinet or structure shall not contain more than 144 square feet of gross floor area or be more than 8 feet in height. In addition, for buildings and structures which are less than sixty-five (65) feet in height, the related unmanned equipment structure, if over 100 square feet of gross floor area or 8 feet in height, shall be located on the ground and shall not be located on the roof of the structure.

(2) If the equipment structure is located on the roof of a building, the area of the equipment structure and other equipment and structures shall not occupy more than 10 percent of the roof area.

(3) Equipment storage buildings or cabinets shall comply with all applicable building codes.

(b) Antennas Mounted on Utility Poles or Light Poles. The equipment cabinet or structure used in association with antennas shall be located in accordance with the following:

(1) In residential districts, the equipment cabinet or structure may be located:

TELECOM8.ORD 11/31/97                    15

(i)    In a front or side yard provided the cabinet or structure is no greater than 8 feet in height or 144 square feet of gross floor area and the cabinet/structure is located a minimum of 15 feet from all lot lines. The cabinet/structure shall be screened by an evergreen hedge with an ultimate height of at least 42-48 inches and a planted height of at least 36 inches.

(ii)    In a rear yard, provided the cabinet or structure is no greater than 8 feet in height or 144 square feet in gross floor area. The cabinet/structure shall be screened by an evergreen hedge with an ultimate height of eight (8) feet and a planted height of at least 36 inches.

(2)    In commercial or industrial districts the equipment cabinet or structure shall be no greater than 8 feet in height or 144 square feet in gross floor area. The structure or cabinet shall be screened by an evergreen hedge with an ultimate height of eight (8) feet and a planted height of at least 36 inches. In all other instances, structures or cabinets shall be screened from view of all residential properties which abut or are directly across the street from the structure or cabinet by a solid fence 6 feet in height or an evergreen hedge with an ultimate height of 8 feet and a planted height of at least 36 inches.

(c)    Antennas Located on Towers. The related unmanned equipment structure shall not contain more than 144 square feet of gross floor area or be more than 8 feet in height, and shall be located in accordance with the minimum yard requirements of the zoning district in which located.

(d)    Modification of Building Size Requirements. The requirements of Sections 8(a) through (c) may be modified by the Board of Commissioners to encourage collocation.

Section 7.        Removal of Abandoned Antennas and Towers.

(a)    Any antenna or tower that is not operated for a continuous period of twelve (12) months shall be considered

abandoned, and the owner of such antenna or tower shall remove the same within ninety (90) days of receipt of notice from the Township notifying the owner of such abandonment. Failure to remove an abandoned antenna or tower within said ninety (90) day shall be grounds to remove the tower or antenna at the owner's expense. If there are two or more users of a single tower, then this provision shall not become effective until all users cease using the tower.

(b)   In order to ensure the removal of an abandoned tower pursuant to the provisions of paragraph (a), above, the owner of a proposed tower must provide the Township with a bond or other financial security acceptable to the Township in the amount of FIVE THOUSAND DOLLARS ($5,000.00), or in such greater amount as deemed necessary by the Township given the characteristics of the proposed tower.

Section 9.      Nonconforming Uses.

(a)   Not Expansion of Nonconforming Use.   Towers that are constructed, and antennas that are installed, in accordance with the provisions of this ordinance shall not be deemed to constitute the expansion of a nonconforming use or structure.

(b)   Preexisting towers.   Preexisting towers shall be allowed to continue their usage as they presently exist. Routine maintenance (including replacement with a new tower of like construction and height) shall be permitted on such preexisting towers. New construction other than routine maintenance on a preexisting tower shall comply with the requirements of this ordinance.

(c)   Rebuilding Damaged or Destroyed Nonconforming Towers or Antennas.   Notwithstanding Section 9, bona fide nonconforming towers or antennas that are damaged or destroyed may be rebuilt without having to first obtain administrative approval or a conditional use permit and without having to meet the separation requirements specified in Sections 7(b)(4) and 7(b)(5). The type, height, and location of the tower onsite shall be of the same type and intensity as the original facility approval. Building permits to rebuild the facility shall comply with the then applicable building codes and shall be obtained within 180 days from the date the facility is damaged or destroyed. If no permit is obtained or if said permit expires, the tower or antenna shall be deemed abandoned as specified in Section 9.

Section 10.    Severability. The various parts, sections and clauses of this Ordinance are hereby declared to be severable.   If any part, sentence, paragraph, section or clause is adjudged unconstitutional or invalid by a court of competent jurisdiction, the remainder of the Ordinance shall not be affected thereby.

Section 11.    Repealer.

(a)  Any ordinances or parts thereof in conflict with the provisions of this Ordinance are hereby repealed to the extent of such conflict.

(b)  Article 10 of Ordinance No. 1771 is hereby repealed in its entirety.

(c)  The addendum to Ordinance No. 1771, which addendum is titled "Wireless Antenna Sites," is hereby repealed.

Section 12.    Effective Date.   This Ordinance shall take effect _Dec. 11, 1997_.

Attest:

BOARD OF COMMISSIONERS OF
THE TOWNSHIP OF ABINGTON

Secretary

By: _____
Barbara C. Ferrara, President

Date: _12-11-97_



2016-23932-0000   10.5 2016 2:13 PM   10986649
Complaint Civil Action
Rcpt=2016-8-03185 Fee:$270.00 Exhibit B
Mark Levy - MontCo Prothonotary

# EXHIBIT "B"

{00445486;v1}

*Township of Abington, PA*
*Monday, August 8, 2016*

# Chapter 154. Telecommunications

[HISTORY: Adopted by the Board of Commissioners of the Township of Abington as indicated in part histories. Amendments noted where applicable.]

**GENERAL REFERENCES**
Excavations, poles and driveways — See Ch. **143**, Art. I.

## Part 1. Rights-of-Way

[Adopted 10-12-2006 by Ord. No. 1941]

# Article I. Regulations

## § 154-1. Purpose.

The purpose of this Right-of-Way Part (hereinafter referred to as "this Part 1") is to:

A.  Assist Abington Township (hereinafter "the Township") in managing its public rights-of-way with respect to telecommunications services providers in accordance with applicable law; and

B.  Regulate the erection, construction, reconstruction, installation, operation, maintenance, repair and removal of a telecommunications system in, upon, along, across, above, over, under or in any manner connected with the public rights-of-way, of the Township, as now or in the future may exist; and

C.  Provide the Township with appropriate compensation for occupation and use of the Township's rights-of-way for a telecommunications system and for the cost of regulating providers of telecommunications services on a competitively neutral and nondiscriminatory basis consistent with this Part 1 and applicable law.

## § 154-2. Point of contact.

A.  The Township Manager, or the Township Manager's designated representative, shall serve as the single point of contact within the Township for all persons regulated under this Part 1.

B.  The Township Manager shall coordinate all contacts with other Township departments as necessary to facilitate issuance of any and all permits required by Abington ordinances and regulations.

C.  The Township Manager shall coordinate the preparation of all policies and forms as necessary for the implementation of this Part 1 with the approval of the Board of Commissioners.

## § 154-3. Definitions.

Unless the context specifically indicates otherwise, the meaning of the terms used in this Part 1 shall be as follows:

**APPLICANT**
The person who has applied for a right-of-way permit or a construction permit.

**APPLICATION**
The form prescribed by the Township, which the applicant must complete in order to obtain a right-of-way or construction permit.

**CONSTRUCTION**
The building, erection, or installation in, on, over or under a right-of-way. It does not include, as part of the ordinary course of business, maintenance or repair of existing aerial cables or equipment in a right-of-way or single line extension from equipment in the right-of-way.

**CONSTRUCTION PERMIT**
The written authorization granted by the Township to an applicant in order to perform construction in a right-of-way.

**EMERGENCY**
A condition that poses a clear and immediate danger to life or health, or significant loss of property.

**EQUIPMENT**
Any tangible property located or proposed to be located in a right-of-way, including, but not limited to, wires, lines, cables, conduits, pipes, supporting structures or other facilities.

**MAINTENANCE**
Work of a minor nature that will keep an existing condition from failure or decline.

**PERMIT HOLDER**
The person who has obtained a right-of-way permit.

**PERSON**
Any individual, firm, partnership, association, corporation, company or other business entity.

**RESTORE or RESTORATION**
The process by which a right-of-way is returned to a state that is as good or better than its condition before construction.

**RIGHT-OF-WAY or PUBLIC RIGHT-OF-WAY**
The surface and space in, on and above any real property in which the Township has an interest in law or in equity, including, but not limited to, any public street, boulevard, avenue, road, highway, easement, freeway, alley, court or any other place, other than real property owned in fee by the Township.

**RIGHT-OF-WAY PERMIT or PERMIT**
A written authorization granted by the Township to an applicant for use of the rights-of-way in the Township for wires, lines, cables, conduits, pipes, supporting structures and other facilities.

**TELECOMMUNICATIONS**
The transmission, between or among points specified by the user, of information of the user's choosing, without change in form or content of the information being sent and received.

**TELECOMMUNICATIONS SERVICES**
The offering of telecommunications for a fee directly to the public, or to such classes of users as to be effectively available directly to the public, regardless of the facilities used.

**TELECOMMUNICATIONS SYSTEM**
A system that offers telecommunications services.

**UNDERGROUND EQUIPMENT**
All equipment that is located wholly or partially under a right-of-way.

## § 154-4. Permit required.

A.  No person shall enter upon or occupy any right-of-way for the purpose of installing, constructing, maintaining or operating a telecommunications system without first having obtained a right-of-way permit. Any person maintaining or operating a telecommunications system as of the effective dale of this Part 1 shall also obtain a right-of-way permit.

B.  Before a right-of-way permit is issued, the holder of or applicant for a right-of-way permit shall have applied for any and all regulatory approvals, permits or authorizations from the appropriate federal and state authorities, if required. Upon the request of the Township, the applicant shall submit written evidence of its application for or receipt of all such approvals, permits or authorizations.

C.  Nothing in this Part 1 shall be construed as a waiver of any other ordinances or regulations of the Township or the Township's right to require prospective or current right-of-way permit holders to secure and remit payment for any and all other required permits or authorizations.

## § 154-5. Permit application.

A.  A right-of-way permit shall only be granted after an applicant has competed an application in the form that has been prescribed by the Township, which form may be revised from time to time. Upon request, an applicant shall be provided with a copy of the then-current application for right-of-way permit. The application shall request information regarding the applicant's proposed or actual physical use and occupation of the rights-of-way. The applicant shall provide specific information regarding the equipment it proposes to place or currently maintains in the rights-of-way. If the completed application does not fully provide such requested information, the Township may request such additional information as is necessary to enable it to make a determination regarding the physical use and occupation of the rights-of-way by the applicant. The application may request less information from a permit holder applying for a renewal of a right-of-way permit.

B.  Upon submission of a fully completed application to the Township and the accompanying fee, the Township shall review the application as follows. The Township shall grant or deny any such applications within 60 days. If the Township denies the application, it will provide a written response to the applicant explaining the basis for denial. If the Township fails to grant or reject such application within the time period specified above, the application shall be deemed approved. In each case, the Township shall review the application to determine whether such use would have a detrimental effect on public safety as it relates to the rights-of-way or would place an undue physical burden on the rights-of-way.

C.  In considering an application, the Township may use such outside experts as it deems necessary to assist in determining whether the use proposed by the applicant would have a detrimental effect on the right-of-way or the health, safety and/or welfare of the residents of the Township. In the event the Township deems it necessary to employ an outside expert or experts to advise the Township with respect to a particular application, the reasonable costs of such expert or experts shall be borne by the applicant.

## § 154-6. Duration and suspension of permit.

A.  The right-of-way permit shall be issued for a period of one year. Permit holders shall apply for a renewal of a right-of-way permit at least 60 days prior to its expiration. The Township may suspend such right-of-way permit in the event any one or more of the following has occurred:

   (1)  The permit holder shall have caused damage to Township property or the right-of-way without the prior consent of the Township (except in the case of an emergency).

   (2)  The permit holder or the permit holder's equipment in the right-of-way has had a detrimental effect on public safety as it relates to the permit holder's use of the rights-of-way.

   (3)   The permit holder failed to pay any of the fees required under this Part 1.

   (4)   The permit holder failed to comply with construction standards in accordance with the provisions contained in § **154-11** below.

   (5)   The permit holder failed to indemnify, hold harmless and insure the Township in accordance with the provisions contained in § **154-12** below.

   (6)   The permit holder failed to procure and/or maintain a performance or construction bond for the benefit of the Township in accordance with the provisions contained in § **154-15** below.

   (7)   The permit holder provided false, incomplete or missing information on the rights-of-way or construction permit application.

B.   If the Township has reason to believe that one or more of the above events has occurred, its shall notify the permit holder in writing. The permit holder shall have 30 days to cure the violation, unless the Township reasonably determines that the event is an emergency, in which case the Township may impose a shorter time period to cure the violation.

## § 154-7. Construction permit required.

A.   Except in the case of an emergency, before commencing any construction in the rights-of-way, a person shall apply for and obtain a construction permit. A construction permit shall only be granted after an applicant has completed an application in the form that has been prescribed by the Township, which form may be revised from time to time. Upon request, an applicant shall be provided with a copy of the current application for a construction permit. Such application shall request detailed plans of the proposed construction activity. Such plans shall describe:

   (1)   The type of construction activity;

   (2)   The equipment proposed to be installed or erected;

   (3)   The specific locations of the construction activity; and

   (4)   The scheduled beginning and ending dates of all planned construction.

B.   Upon submission of all such information required in Subsection A above, the Township shall review such information and either grant or deny a construction permit within 60 days. If the Township denies the construction permit application, the Township will provide a written response to the applicant explaining the basis of the denial. If the Township fails to grant or deny the construction permit within the time period specified above, the application shall be deemed granted. In each case, the Township shall review the application to determine whether such construction would have a detrimental impact on public safety as it relates to the rights-of-way, and to ensure compliance with all applicable federal, state and local laws and regulations. The Township may impose conditions on the construction permit regulating the times, locations, and manner of construction to preserve effective traffic flow, prevent hazardous road conditions and/or minimize noise impacts.

## § 154-8. Requirement for notification.

Except in cases of an emergency, before commencing any activity in the rights-of-way that is expected to last more than 45 hours in duration, a person must notify the Township of the activity and the general nature of the project. The "activity" referred to in this section pertains to any activity, including but not limited to construction or maintenance activity.

## § 154-9. Fees and expenses.

A.  Each new and renewing applicant for a right-of-way permit shall include with its application a right-of-way permit fee which shall be established by the Board of Commissioners by separate resolution and which may be adjusted from time to time. This fee shall be directly related to the Township's costs in reviewing the application (excluding expert costs) and managing the rights-of-way with respect to each permit holder. Such costs in managing the rights-of-way include, but are not limited to: costs of maintaining the rights-of-way; costs of degradation of streets and rights-of-way property; administrative costs related to the rights-of-way; traffic control costs pertaining to work in the rights-of-way; and inspection costs. This fee will not be refunded in the event the application is denied. If the application is granted, the application fee will apply to the full term of the right-of-way permit of one year.

B.  Each applicant for a construction permit shall include with its application a construction permit fee which shall be established by the Board of Commissioners by separate resolution and which may be adjusted from time to time. This fee shall be directly related to the Township's costs in reviewing the application and determining time, place and manner restrictions on the construction activity. If the application for a construction permit is denied, this fee shall not be refunded. If the application is granted, then the applicant shall also pay, within 30 days of the presentation of a statement, the Township's actual costs directly related to the applicant's construction project based on the hourly rate established by resolution of the Board of Commissioners. Such actual costs include, but are not limited to, costs of disruption and rerouting of traffic, inspection costs and administrative costs. A construction permit shall apply to a specific construction project in the Township, and each succeeding construction project shall require the issuance of a separate construction permit.

C.  Extraordinary expenses. In addition to the fees set forth above, a permit holder shall pay, within 30 days of the presentation of a statement, any extraordinary or unusual expenses reasonably incurred by the Township as a result of the permit holder's use of the rights-of-way, provided that the Township notifies the permit holder of the expected expenses prior to them being incurred and provides the permit holder with an opportunity to mitigate such expenses. Examples of extraordinary or unusual costs include, but are not limited to, the cost of obtaining and operating a backhoe, dump truck or other heavy equipment used to repair the right-of-way, overtime or special pay for public safety personnel and/or the cost of hazardous waste cleanup or other emergency services. The statement of such expenses presented to the permit holder shall be directly related to the Township's actual costs.

D.  In the event that payment of any of the fees identified above is not made upon submission of the application or by the date due, the applicant or permit holder shall pay a late payment penalty of simple interest at 10% annual percentage rate of the total amount past due. Such penalty shall be in lieu of any other monetary penalty. Acceptance of payment under this section shall not in any way limit or waive the Township's right to suspend or terminate the permit according to the terms of this Part 1.

# § 154-10. Management of rights-of-way.

A.  The Township shall have the right to limit the placement of new or additional equipment in the right-of-way if, in the judgment of the Township Engineer, there is insufficient space to reasonably accommodate all requests to occupy and use the rights-of-way. The Township shall consider requests for occupying and using the rights-of-way in the order of receipt of fully completed applications for right-of-way permits. The Township shall strive, to the extent possible, to accommodate all requests but shall be guided by the physical condition of the right-of-way and whether such use would have a detrimental effect on public safety as it relates to the right-of-way.

B.  The Township shall have the right to monitor the telecommunications systems and the equipment related thereto located in the rights-of-way in order to prevent interference between and among such systems and equipment.

C.  A permit holder shall allow the Township to make inspections of any part of the permit holder's telecommunications system located in the rights-of-way at any time upon three days notice or, in case of an emergency, upon demand.

## § 154-11. Construction standards.

A.   Whenever a permit holder or any of its subcontractors shall disturb any pavement, sidewalk or other public property in order to perform any underground activities, the permit holder shall register with the Pennsylvania One Call System pursuant to 73 P.S. § 176 et seq. Such permit holder shall provide the Township with information showing planned locations and reference points for equipment to be installed. Each permit holder shall perform construction activity in a manner consistent and in compliance with the detailed plans it submitted to the Township pursuant to § 154-7A above and all applicable federal, state and local laws and regulations.

B.   Whenever a permit holder or any of its subcontractors shall cause damage to the right-of-way or to Township property in the right-of-way, the permit holder shall restore such right-of-way or property within 30 days, weather permitting. In the event that the permit holder fails to restore the right-of-way or Township property to its former condition, the Township may repair such damage and assess all such costs to the permit holder.

C.   The telecommunications system shall not endanger or interfere with the safety of persons or property within the Township. All operating, maintenance, construction and repair personnel shall be thoroughly trained in the safe use of all equipment and in the safe operation of vehicles. Such personnel shall follow all safety procedures required by applicable federal, state and local laws and regulations. The permit holder shall routinely inspect and maintain all areas of the telecommunications system so that conditions that could develop into safety hazards shall be corrected before they become a hazard.

D.   Except in the case of an emergency, at least three days prior to the commencement of any construction activity, a permit holder shall notify nearby residents of such construction activity in a manner that is satisfactory to the Township. The name of the permit holder shall be clearly disclosed to such residents.

E.   All construction activity shall be performed in an orderly and workmanlike manner and in close coordination with public utilities serving the Township, following accepted industry construction procedures and practices.

F.   Any vehicle used for construction activity in the Township by the permit holder, including vehicles of any contractor or subcontractor of the permit holder, shall prominently display a company logo. Any employee or agent of the permit holder, including any contractor or subcontractor, who personally visits any residential dwelling in the Township, shall display a photo identification badge.

G.   All wires, cables, and other equipment shall be installed, where possible, parallel with electric and telephone lines, and multiple cable configurations shall be arranged in parallel and bundles with due respect for engineering considerations.

H.   All wires, cables and other equipment shall be installed underground where required by municipal ordinance or regulation consistent with the same requirement being imposed on all other similarly situated companies, including public utilities.

## § 154-12. Indemnification and insurance.

A.   A permit holder shall, at its sole cost and expense, indemnify, defend and hold harmless the Township, its elected and appointed officials, employees and agents, at all times against any and all claims for personal injury, including death, and property damage arising out of the permit holder's use or occupancy of the rights-of-way. A permit holder shall defend any actions or proceedings against the Township in which it is claimed that personal injury, including death, or property damage was caused by the permit holder's use or occupancy of the rights-of-way. The obligation to indemnify, hold harmless and defend shall include, but not be limited to, the obligation to pay judgments, injuries, liabilities, damages, reasonable attorneys' fees, reasonable expert fees, court costs and all other costs of indemnification. A permit holder shall not be required to indemnify and hold the Township harmless for claims caused by the Township's negligence, gross negligence or willful misconduct.

B.  A permit holder shall, at all times during the life of a permit, carry and require its subcontractors to carry liability, property damage, worker's disability, and vehicle insurance issued to the permit holder by an insurance company licensed to do business in the Commonwealth of Pennsylvania in an amount and form acceptable to the Township as set forth in the permit. A permit holder shall name the Township as an additional insured on its liability insurance policies for whom defense will be provided as to all such coverages. All required insurance coverage shall provide for 30 days' notice to the Township in the event of material alteration or cancellation of such coverage prior to the effective date of such material alteration or cancellation. A permit holder shall provide appropriate insurance certificates to the Township within 30 days after the execution of a permit and annually with an application for a renewal permit. Any certificate of insurance presented to the Township shall verify that the applicant is insured against claims for personal injury, including death, as well as claims for properly damage arising out of the applicant's use and occupancy of the rights-of-way.

C.  In lieu of the certificate of insurance required under Subsection B, proof of self-insuring status that demonstrates adequate financial resources to defend and cover any and all potential claims will be acceptable to the Township.

## § 154-13. Reporting requirements.

A.  A permit holder shall annually provide the Township, upon application for renewal of the permit, or upon request, a current map of the locations of its existing equipment and facilities and a summary of all additions and deletions of equipment and facilities in the rights-of-way, unless no changes have occurred in the previous year. If no changes have occurred in the previous year, the permit holder shall so inform the Township in writing.

B.  A permit holder shall submit to the Township such reasonable information directly related to the permit holder's use and occupation of the rights-of-way as the Township may request. All information provided to the Township shall be maintained by the Township as proprietary and confidential if such information is designated in good faith as such prior to the time it is provided to the Township.

## § 154-14. Sale or Transfer of rights of permit holder.

A right-of-way permit may be transferred or assigned, upon 30 days' written notice to the Township, provided that the transferee/assignee agrees in writing, prior to the transfer or assignment, to comply with all of the obligations and requirements contained in this Part 1.

## § 154-15. Performance bond.

A.  All persons submitting a request for a permit to construct or maintain a telecommunications system in accordance herewith shall file with their request a bond solely for the protection of the Township with a surety company or trust company as surety in the amount of $25,000 to protect the Township from any and all damages or costs suffered or incurred by the Township as a result thereof, including, but not limited to, attorney's fees and costs of any action or proceeding, the full amount of compensation, indemnification, cost of removal or abandonment of any property, or other costs resulting from a default. The bond shall be a continuing obligation during the entire term of any right-of-way permit or construction permit issued in accordance herewith.

B.  None of the provisions of this § 154-15, nor any bond accepted by the Township pursuant hereto, nor any damages recovered by the Township thereunder shall be construed to excuse the faithful performance by or limit the liability of the permit holder under this Part 1 or any permit issued in accordance herewith or for damages ether to the full amount of the bond or otherwise.

## § 154-16. Termination of permit; notice; hearing.

A. In addition to all other rights and powers reserved by the Township, the Township reserves the right to terminate a permit and all rights and privileges of a permit holder for any of the following reasons:

    (1) A permit holder fails, after 30 days' prior written notice, to comply with any of the material provisions of the permit or this Part 1.

    (2) A permit holder attempts to or does practice any fraud or deceit in its conduct or relations with the Township under the permit.

    (3) The Township condemns all of the property of a permit holder within the Township by the lawful exercise of eminent domain.

    (4) The permit holder abandons the telecommunications system.

B. A termination shall be declared only by a written decision of the Board of Commissioners after an appropriate public hearing that shall afford the permit holder due process and a full opportunity to be heard and to respond to any notice of grounds to terminate in accordance with applicable law. All notice requirements shall be met by providing the permit holder at least 60 days' prior written notice of a public hearing concerning the proposed termination. Such notice shall state grounds for termination. The Board of Commissioners, after public hearing and upon finding the existence of grounds for termination, may either declare the permit terminated or excuse such grounds upon a showing by the permit holder of mitigating circumstances or good cause for the existence of such grounds.

## § 154-17. Removal of equipment; abandonment.

A. Upon expiration or termination of the permit, if the permit is not renewed, the permit holder shall, upon 60 days' prior written notice to the permit holder, commence to remove its equipment from the rights-of-way and shall restore said areas. If such removal is not completed within six months of such notice, the Township may deem any property not removed as abandoned and the Township may remove it at the former permit holder's expense. In the event that the permit holder installed and/or operated any underground conduit or pipe which is six inches or more in diameter, the permit holder shall fill said conduit or pipe with material in a manner satisfactory to the Township.

B. During the term of the permit, if the permit holder decides to abandon or no longer use all or part of its telecommunications system, it shall provide the Township with written notice of its abandonment at least 30 days prior to such decision, which notice shall describe the equipment and its location.

C. The Township may request a permit holder to declare the permit holder's intention as to abandonment of all or part of the telecommunications system during the term of the permit. The permit holder shall respond to such request within 90 days, or such portion of the telecommunications system shall be deemed abandoned.

D. The Township shall have the right to require the permit holder to commence to remove the abandoned telecommunications system in part or in total upon 60 days' prior written notice to the permit holder. If such removal is not competed within six months of such notice, the Township may remove it at the permit holder's expense.

## § 154-18. Enforcement.

Any person who has violated any of the terms of this Part 1 shall, upon being found liable in a civil enforcement proceeding commenced by the Township, pay a judgment of not more than $500 plus all court costs, including reasonable attorneys' fees incurred by the Township as a result thereof. The District Justice shall have initial jurisdiction over proceedings brought pursuant to this Part 1. No judgment shall commence or be imposed,

levied or payable until the date of the determination of a violation by the District Justice. If the defendant neither pays nor timely appeals the judgment, the Township may enforce the judgment pursuant to the appropriate rules of civil procedure. Each day that a violation continues shall constitute a separate violation, unless the District Justice, determining that there has been a violation further determines that there was a good-faith basis for the person violating this Part 1 to have believed that there was no such violation, in which event there shall be deemed to have been only one such violation until the fifth day following the date of the determination of a violation by the District Justice, and thereafter each day that a violation continues shall constitute a separate violation. All judgments, costs and reasonable attorneys' fees collected for a violation of this Part 1 shall be paid over to the Township of Abington.

## § 154-19. Police powers.

The Township, by granting any permit under this Part 1, does not waive, lessen, impair or surrender the lawful police powers vested in the Township under applicable federal, state and local laws pertaining to the regulation or use of the rights-of-way.

## § 154-20. Equal applicability.

The provisions of this Part 1 shall be imposed upon and enforced against all persons requiring a permit for the provision of telecommunications services or construction of a telecommunications system within the Township.

# Part 2. Standards, Registration, Licensing and Franchise Regulations

[Adopted 12-12-1996 by Ord. No. 1771]

# Article II. General

## § 154-21. Purpose.

The purpose and intent of this Part 2 is to:

A.   Establish a local policy concerning telecommunications providers and services;

B.   Establish clear local guidelines, standards, and time frames for the exercise of local authority with respect to the regulation of telecommunications providers and services;

C.   Promote competition in telecommunications;

D.   Minimize unnecessary local regulation of telecommunications providers and services;

E.   Encourage the provision of advanced and competitive telecommunications services on the widest possible basis to the businesses, institutions, and residents of the Township;

F.   Permit and manage reasonable access to the public ways of the Township for telecommunications purposes on a competitively neutral basis;

G.   Conserve the limited physical capacity of the public ways held in public trust by the Township;

H.   Assure that the Township's current and ongoing costs of granting and regulating private access to and use of the public ways are fully paid by the persons seeking such access and causing such costs;

I.   Secure fair and reasonable compensation to the Township and its residents for permitting private use of the public ways;

J.   Assure that all telecommunications carriers providing facilities or services within the Township comply with the ordinances, rules, and regulations of the Township;

K.   Assure that the Township can continue to fairly and responsibly protect the public health, safety, and welfare;

L.   Enable the Township to discharge its public trust consistent with rapidly evolving federal and state regulatory policies, industry competition, and technological development.

# § 154-22. Definitions.

For the purpose of this Part 2 and the interpretation and enforcement thereof, the following words and phrases shall have the following meanings, unless the context of the sentence in which they are used shall indicate otherwise:

**AFFILIATE**
A person who (directly or indirectly) owns or controls, is owned or controlled by, or is under common ownership or control with another person.

**ANNUAL GROSS REVENUE**
All revenues derived directly or indirectly by a franchisee, or any person in whom the franchisee has a financial interest, from or in connection with the ownership or operation of a telecommunications system or open video system under the terms of a franchise granted pursuant to this Part 2. Annual gross revenue includes, but is not limited to, revenue derived from the provision of private switched or nonswitched telephone service, local telephone exchange service, long distance service, the sale or lease of customer premises equipment, installation charges, telecommunications access charges of any kind paid to the franchisee by customers or other carriers, regulatory fees and occupation taxes surcharged to customers, and the lease or resale of lines or circuit paths to third parties. Gross revenue does not include bad debt, taxes, or other charges imposed on a franchisee in addition to its franchise obligations collected for direct pass-through to federal or state government.

**CABLE ACT**
The Cable Communications Policy Act of 1984, 47 U.S.C. § 521 et seq., as now and hereafter amended.

**CABLE OPERATOR**
A telecommunications carrier providing or offering to provide "cable service" within the Township, as that term is defined in the Cable Act.

**CABLE SERVICE**
For the purpose of this Part 2, shall have the same meaning provided by the Cable Act.

**CORPORATE AUTHORITIES**
The President and Board of Commissioners of the Township.

**EXCESS CAPACITY**
The volume or capacity in any existing or future duct, conduit, manhole, handhole or other utility facility within the public way that is or will be available for use for additional telecommunications facilities.

**FCC or FEDERAL COMMUNICATIONS COMMISSION**
The federal administrative agency, or lawful successor, authorized to regulate and oversee telecommunications carriers, services, and providers, on a national level.

**OTHER WAYS**
The highways, streets, alleys, utility easements or other rights-of-way within the Township, but under the jurisdiction and control of a governmental entity other than the Township.

**OVERHEAD FACILITIES**

Utility poles, utility facilities, and telecommunications facilities located above the surface of the ground, including the underground supports and foundations for such facilities.

**PCD or PENNSYLVANIA COMMERCE DEPARTMENT**

The state administrative agency, or lawful successor, authorized to regulate and oversee telecommunications carriers, services, and providers in the State of Pennsylvania.

**PERSON**

Includes corporations, companies, associations, joint stock companies or associations, firms, partnerships, limited liability companies, and individuals and includes their lessors, trustees, and receivers.

**PUBLIC LAND**

Any property owned by Abington Township or the Abington School District.

**PUBLIC STREET**

Any highway, street, alley, or other public right-of-way for motor vehicle travel under the jurisdiction and control of the Township which has been acquired, established, dedicated, or devoted to highway purposes not inconsistent with telecommunications facilities.

**PUBLIC WAY**

Includes all public streets and utility easements, as those terms are defined herein, now or hereafter owned by the Township, but only to the extent of the Township's right, title, interest, or authority to grant a license or franchise to occupy and use such streets and easements for telecommunications facilities.

**STATE**

The State of Pennsylvania.

**SURPLUS SPACE**

That portion of the usable space on a utility pole which has the necessary clearance from other pole users, as required by the orders and regulations of the Pennsylvania Commerce Commission, to allow its use by a telecommunications carrier for a pole attachment.

**TELECOMMUNICATIONS CARRIER**

Includes every person that directly or indirectly owns, controls, operates, or manages a plant, equipment, or property within the Township, used or to be used for the purpose of offering telecommunications service.

**TELECOMMUNICATIONS FACILITY/SYSTEM**

The plant, equipment, and property, including but not limited to cables, wires, conduits, ducts, pedestals, antennae, electronics, and other appurtenances used or to be used to transmit, receive, distribute, provide or offer telecommunications services.

**TELECOMMUNICATIONS PROVIDER**

Includes every person who provides telecommunications service over telecommunications facilities without any ownership or management control of the facilities.

**TELECOMMUNICATIONS SERVICE**

The providing or offering for rent, sale, or lease, or in exchange for other value received, the transmittal of voice, data, image, graphic and video programming information between or among points by wire, cable, fiber optics, laser, microwave, radio, satellite, or similar facilities, with or without benefit of any closed transmission medium.

**TOWNSHIP**

The Township of Abington.

**TOWNSHIP PROPERTY**

Includes all real property owned by the Township, other than public streets and utility easements as those terms are defined herein, and all property held in a proprietary capacity by the Township which is not subject to right-of-way licensing and franchising as provided in this Part 2.

**UNDERGROUND FACILITIES**

Utility and telecommunications facilities located under the surface of the ground, excluding the underground foundations or supports for overhead facilities.

**USABLE SPACE**

The total distance between the top of a utility pole and the lowest possible attachment point that provides the minimum allowable vertical clearance as specified in the orders and regulations of the Pennsylvania Commerce Commission.

**UTILITY EASEMENT**

Any easement owned by the Township and acquired, established, dedicated, or devoted for public utility purposes not inconsistent with telecommunications facilities.

**UTILITY FACILITIES**

The plant, equipment, and property, including but not limited to the poles, pipes, mains, conduits, ducts, cables, wires, plant and equipment located under, on, or above the surface of the ground within the public ways of the Township, and used or to be used for the purpose of providing utility or telecommunications services.

## § 154-23. Registration.

Except as otherwise provided herein, all telecommunications carriers and providers engaged in the business of transmitting, supplying, or furnishing of telecommunications originating or terminating in the Township shall register with the Township pursuant to Article II of this Part 2.

## § 154-24. Telecommunications license.

Except as otherwise provided herein, any telecommunications carriers who desire to construct, install, operate, maintain, or otherwise locate telecommunications facilities in, under, over, or across any public way of the Township, for the sole purpose of providing telecommunications service to persons and areas outside the Township, shall first obtain a license granting the use of such public ways from the Township pursuant to Article III of this Part 2.

## § 154-25. Telecommunications franchise.

Except as otherwise provided herein, any telecommunications carriers who desire to construct, install, operate, maintain or otherwise locate telecommunications facilities in, under, or over any public way of the Township, and to also provide telecommunications service to persons or areas in the Township, shall first obtain a franchise granting the use of such public ways from the Township pursuant to Article V of this Part 2.

## § 154-26. Cable television franchise.

Except as otherwise provided herein, any telecommunications carrier who desires to construct, install, operate, or locate telecommunications facilities in any public way of the Township for the purpose of providing cable service to persons in the Township shall first obtain a cable franchise from the Township as provided in Article VI of this Part 2.

## § 154-27. Application to existing franchise ordinances and agreements.

This Part 2 shall have no effect on any existing franchise ordinance or franchise agreement until:

A.   The expiration of said franchise ordinance or agreement;

B.   An amendment to an unexpired franchise ordinance or franchise agreement, unless both parties agree to defer full compliance to a specific date not later than the present expiration date.

## § 154-28. Penalties.

Any person found guilty of violating, disobeying, omitting, neglecting, or refusing to comply with any of the provisions of this Part 2 shall be fined not less than $100 nor more than $500 for each offense. A separate and distinct offense shall be deemed committed each day on which a violation occurs or continues.

## § 154-29. Other remedies.

Nothing in this Part 2 shall be construed as limiting any judicial remedies that the Township may have, at law or in equity, for enforcement of this Part 2.

## § 154-30. Severability.

If any section, subsection, sentence, clause, phrase, or other portion of this Part 2 or its application to any person is, for any reason, declared invalid in whole or in part by any court or agency of competent jurisdiction, said decision shall not affect the validity of the remaining portions hereof.

# Article III. Registration of Telecommunications Carriers and Providers

## § 154-31. Registration required.

All telecommunications carriers and providers that offer or provide any telecommunications service for a fee, directly to the public, either within the Township or outside the corporate limits from telecommunications facilities within the Township, shall register with the Township pursuant to this article on forms to be provided by the Township, which shall include the following:

A.   The identity and legal status of the registrant, including any affiliates;

B.   The name, address, and telephone number of the officer, agent, or employee responsible for the accuracy of the registration statement;

C.   A description of the registrant's existing or proposed telecommunications facilities within the Township;

D.   A description of the telecommunications service that the registrant intends to offer or provide, or is currently offering or providing, to persons, firms, businesses, or institutions within the Township;

E.   Information sufficient to determine whether the registrant is subject to public way licensing or franchising under this Part 2;

F.   Information sufficient to determine whether the transmission, origination, or receipt of the telecommunications services provided or to be provided by the registrant constitutes an occupation or privilege subject to any municipal telecommunications tax, utility message tax, or other occupation tax imposed by the Township;

G.   Information sufficient to determine that the applicant has applied for and received any certificate of authority required by the Pennsylvania Commerce Department or the Pennsylvania State Interactive

Case 2:16-cv-05357-JP   Document 10-1   Filed 10/27/16   Page 53 of 66

Telecommunications Development Commission to provide telecommunications services or facilities within the Township;

H.  Information sufficient to determine that the applicant has applied for and received any construction permit, operating license, or other approvals required by the Federal Communications Commission to provide telecommunications services or facilities within the Township;

I.  Such other information as the Township Clerk may reasonably require.

## § 154-32. Registration fee.

Registration fees for a telecommunications carrier or provider may be established and revised annually by resolution of the Board of Commissioners.

## § 154-33. Purpose of registration.

The purpose of registration under this article is to:

A.  Provide the Township with accurate and current information concerning the telecommunications carriers and providers who offer or provide telecommunications services within the Township, or that own or operate telecommunications facilities within the Township;

B.  Assist the Township in enforcement of this Part 2;

C.  Assist the Township in the collection and enforcement of any municipal taxes, franchise fees, license fees, or charges that may be due the Township;

D.  Assist the Township in monitoring compliance with local, state and federal laws.

# Article IV. Telecommunications License

## § 154-34. Telecommunications license.

A telecommunications license shall be required of any telecommunications carrier who desires to occupy specific public ways of the Township for the sole purpose of providing telecommunications services to persons or areas outside the Township.

## § 154-35. License application.

Any person who desires a telecommunications license pursuant to this article shall file an application with the Township which shall include the following:

A.  The identity of the license applicant, including all affiliates of the applicant;

B.  A description of the telecommunications services that are or will be offered or provided by the licensee over its telecommunications facilities;

C.  A description of the transmission medium that will be used by the licensee to offer or provide such telecommunications services;

D.  Preliminary engineering plans, specifications, and a network map of the facilities to be located within the Township, all in sufficient detail to identify:

(1)  The location and route requested for the applicant's proposed telecommunications facilities;

(2) The location of all overhead and underground public utility, telecommunication, cable, water, sewer, drainage, and other facilities in the public way along the proposed route;

(3) The locations, if any, for interconnection with the telecommunications facilities of other telecommunications carriers;

(4) The specific trees, structures, improvements, facilities and obstructions, if any, that the applicant proposes to temporarily or permanently remove or relocate.

E. If the applicant is proposing to install overhead facilities, evidence that surplus space is available for locating its telecommunications facilities on existing utility poles along the proposed route.

F. If the applicant is proposing an underground installation in existing ducts or conduits within the public ways, information in sufficient detail to identify:

(1) The excess capacity currently available in such ducts or conduits before installation of the applicant's telecommunications facilities;

(2) The excess capacity, if any, that will exist in such ducts or conduits after installation of the applicant's telecommunications facilities.

G. If the applicant is proposing an underground installation within new ducts or conduits to be constructed within the public ways:

(1) The location proposed for the new ducts or conduits;

(2) The excess capacity that will exist in such ducts or conduits after installation of the applicant's telecommunications facilities.

H. If the applicant is proposing wireless antenna installation on public property:

(1) The location proposed for the antenna;

(2) A plan showing compliance with all applicable zoning provisions or a decision from the Township Zoning Hearing Board for grant of variance or special exception, as may be required.

I. If the applicant is proposing wireless antenna installation on private property:

(1) Evidence that public property sites identified as appropriate for wireless antenna systems do not meet the criteria or requirements for the proposed system.

(2) If the site proposed already contains wireless communication antennas by prior approval and permits, evidence that surplus capacity exists and that the proposal does not exceed existing height limitations, zoning restrictions, or previous ZHB decisions.

(3) If the site proposed is a new wireless communication antenna facility, a plan showing compliance with all applicable zoning provisions or a decision from the Township Zoning Hearing Board for grant of variance or special exception, as may be required.

J. A preliminary construction schedule and completion date.

K. A preliminary traffic control plan in accordance with the PennDOT Manual on Uniform Traffic Control Devices.

L. Financial statements prepared in accordance with generally accepted accounting principles demonstrating the applicant's financial ability to construct, operate, maintain, relocate, and remove the facilities.

M. Information in sufficient detail to establish the applicant's technical qualifications, experience, and expertise regarding the telecommunications facilities and services described in the application.

N. Information to establish that the applicant has obtained all other governmental approvals and permits to construct and operate the facilities and to offer or provide the telecommunications services.

O.   All fees, deposits, or charges required pursuant to Article VII of this Part 2.

P.   Such other and further information as may be required by the Township Manager.

## § 154-36. Determination by Township.

Within 90 days after receiving a complete application under § 154-35 hereof, the Township shall issue a written determination granting or denying the application in whole or in part, applying the following standards. If the application is denied, the written determination shall include the reasons for denial.

A.   The financial and technical ability of the applicant.

B.   The legal ability of the applicant.

C.   The capacity of the public ways to accommodate the applicant's proposed facilities.

D.   The capacity of the public ways to accommodate additional utility and telecommunications facilities if the license is granted.

E.   The damage or disruption, if any, of public or private facilities, improvements, service, and/or traveler landscaping, if the license is granted.

F.   The public interest in minimizing the cost and disruption of construction within the public ways.

G.   The service that the applicant will provide to the community and region.

H.   The effect, if any, on public health, safety, and welfare if the license is granted.

I.   The availability of alternate routes and/or locations for the proposed facilities.

J.   Applicable federal and state telecommunications laws, regulations, and policies.

K.   Such other factors as may demonstrate that the grant to use the public ways will serve the community interest.

## § 154-37. Agreement.

No license granted hereunder shall be effective until the applicant and the Township have executed a written agreement setting forth the particular terms and provisions under which the license to occupy and use public ways of the Township will be granted.

## § 154-38. Nonexclusive grant.

No license granted under this article shall confer any exclusive right, privilege, license, or franchise to occupy or use the public ways of the Township for delivery of telecommunications services or any other purposes.

## § 154-39. Rights granted.

No license granted under this article shall convey any right, title or interest in the public ways, but shall be deemed a license only to use and occupy the public ways for the limited purposes and terms stated in the grant. Further, no license shall be construed as any warranty of title.

## § 154-40. Term of grant.

Unless otherwise specified in a license agreement, a telecommunications license granted hereunder shall be in effect for a term of five years.

## § 154-41. License route.

A telecommunications license granted under this article shall be limited to a grant of specific public ways and defined portions thereof.

## § 154-42. Location of facilities.

Unless otherwise specified in a license agreement, all facilities shall be constructed, installed, and located in accordance with the following terms and conditions:

A. Telecommunications facilities shall be installed within an existing underground duct or conduit whenever excess capacity exists within such utility facility.

B. A licensee with permission to install overhead facilities shall install its telecommunications facilities on pole attachments to existing utility poles only, and then only if surplus space is available.

C. Whenever any existing electric utilities, cable facilities, or telecommunications facilities are located underground within a public way of the Township, a licensee with permission to occupy the same public way must also locate its telecommunications facilities underground.

D. New utility poles shall be permitted only when underground conduit cannot be installed.

E. Whenever new telecommunications facilities will exhaust the capacity of a public street or utility easement to reasonably accommodate future telecommunications carriers or facilities, the grantee shall provide additional ducts, conduits, manholes and other facilities for nondiscriminatory access to future telecommunications carriers.

F. Whenever wireless telecommunications antenna systems are to be installed, the following land parcel priorities are to be followed by the applicant in determining the location site:

   (1) The applicant shall first consider public land parcels identified on the Township Wireless Telecommunications Site Location List (an appendix to this Part 2)[1] for system suitability.
   [1]   Editor's Note: Said list is on file in the Township offices.

   (2) If identified public land parcels are not suitable, the applicant shall next consider existing wireless antenna site locations which may be suitable and contain excess capacity.

   (3) If existing wireless sites are not suitable, the applicant shall next consider existing utility sites, such as water tanks or towers, which may be suitable.

   (4) If existing utility sites are not suitable, the applicant shall then consider private property sites listed on the Township Wireless Telecommunications Site Location List (an appendix to this Part 2).

   (5) If none of the above location priorities are suitable, the applicant shall then consider other private property sites.

G. When the applicant or telecommunications carrier determines that a higher priority location is not suitable and that a lower priority location is necessary, the carrier shall provide the Township with all technical and supporting data necessary to prove that determination.

H. When a wireless telecommunications antenna system does not meet the zoning criteria established for this use, a license and construction permit shall only be issued following a grant of variance or special exception approval from the Township Zoning Hearing Board. All other terms and conditions of this Part 2 shall remain in effect.

I.    The Board of Commissioners may, from time to time, add site locations to the list by Township resolution for use by telecommunications facilities and systems.

J.    All freestanding wireless telecommunications antennas which are higher than the permitted zoning district regulations, or 50 feet from ground elevation when ground mounted, shall be designed as an artificial tree, or otherwise camoflaged, to the satisfaction of the Township Engineer.

## § 154-43. Construction permits.

All licensees are required to obtain construction permits for telecommunications facilities as required in Article **VIII** of this Part 2; provided, however, that nothing in this article shall prohibit the Township and a licensee from agreeing to alternative plan review, permit and construction procedures in a license agreement, provided such alternative procedures provide substantially equivalent safeguards for responsible construction practices.

## § 154-44. Compensation to Township.

Each license granted under this article is subject to the Township's right, which is expressly reserved, to annually fix a fair and reasonable compensation to be paid annually for the property rights granted to the licensee; provided, nothing in this article shall prohibit the Township and a licensee from agreeing to the compensation to be paid.

## § 154-45. Service to Township users.

A licensee may be permitted to offer or provide telecommunications services to persons or areas within the Township upon submitting an application for approval pursuant to Article V hereof.

## § 154-46. Amendment of grant.

A.    A new license application and grant shall be required of any telecommunications carrier that desires to extend or locate its telecommunications facilities in public ways of the Township which are not included in a license previously granted under this Part 2.

B.    If ordered by the Township to locate or relocate its telecommunications facilities in public ways not included in a previously granted license, the Township shall grant a license amendment without further application.

## § 154-47. Renewal applications.

A grantee that desires to renew its license under this article shall, not more than 180 days, nor less than 90 days, before expiration of the current license, file an application with the Township for renewal of its license which shall include the following information:

A.    The information required pursuant to § **154-35** of this article.

B.    Any information required pursuant to the license agreement between the Township and the grantee.

## § 154-48. Renewal determinations.

Within 90 days after receiving a complete application under § **154-47** hereof, the Township shall issue a written determination granting or denying the renewal application, in whole or in part, applying the following standards. If the renewal application is denied, the written determination shall include the reasons for nonrenewal.

A.   The financial and technical ability of the applicant.

B.   The legal ability of the applicant.

C.   The continuing capacity of the public ways to accommodate the applicant's existing facilities.

D.   The applicant's compliance with the requirements of this Part 2 and the license agreement.

E.   Applicable federal, state, and local telecommunications laws, rules, and policies.

F.   Such other factors as may demonstrate that the continued grant to use the public ways will serve the community interest.

## § 154-49. Obligation to cure as condition of renewal.

No license shall be renewed until any ongoing violations or defaults in the licensee's performance of the license agreement, or of the requirements of this Part 2, have been cured, or until a plan detailing the corrective action to be taken by the grantee has been approved by the Township.

# Article V. Telecommunications Franchise

## § 154-50. Telecommunications franchise.

A telecommunications franchise shall be required of any telecommunications carrier who desires to occupy public ways or public lands of the Township and to provide telecommunications services to any person or area in the Township.

## § 154-51. Franchise application.

Any person that desires a telecommunications franchise pursuant to this Article V shall file an application with the Township which shall include the following information:

A.   The identity of the franchise applicant, including all affiliates of the applicant.

B.   A description of the telecommunications services that are or will be offered or provided by the franchise applicant over its existing or proposed facilities.

C.   A description of the transmission medium that will be used by the franchisee to offer or provide such telecommunications services.

D.   Preliminary engineering plans, specifications, and a network map of the facilities to be located within the Township, all in sufficient detail to identify:

   (1)   The location and route requested for the applicant's proposed telecommunications facilities.

   (2)   The location of all overhead and underground public utility, telecommunication, cable, water, sewer drainage, and other facilities in the public way along the proposed route.

   (3)   The locations, if any, for interconnection with the telecommunications facilities of other telecommunications carriers.

   (4)   The specific trees, structures, improvements, facilities, and obstructions, if any, that the applicant proposes to temporarily or permanently remove or relocate.

E.   If the applicant is proposing to install overhead facilities, evidence that surplus space is available for locating its telecommunications facilities on existing utility poles along the proposed route.

F.   If the applicant is proposing an underground installation in existing ducts or conduits within the public ways, information in sufficient detail to identify:

  (1)   The excess capacity currently available in such ducts or conduits before installation of the applicant's telecommunications facilities;

  (2)   The excess capacity, if any, that will exist in such ducts or conduits after installation of the applicant's telecommunications facilities.

G.   If the applicant is proposing an underground installation within new ducts or conduits to be constructed within the public ways:

  (1)   The location proposed for the new ducts or conduits;

  (2)   The excess capacity that will exist in such ducts or conduits after installation of the applicant's telecommunications facilities.

H.   If the applicant is proposing wireless antenna installation on public property:

  (1)   The location proposed for the antenna;

  (2)   A plan showing compliance with all applicable zoning provisions, or a decision from the Township Zoning Hearing Board for grant of variance or special exception, as may be required.

I.   If the applicant is proposing wireless antenna installation on private property:

  (1)   Evidence that public property sites identified as appropriate for wireless antenna systems do not meet the criteria or requirements for the proposed system.

  (2)   If the site proposed already contains wireless communication antennas by prior approval and permits, evidence that surplus capacity exists and that the proposal does not exceed existing height limitations, zoning restrictions, or previous ZHB decisions.

  (3)   If the site proposed is a new wireless communication antenna facility, a plan showing compliance with all applicable zoning provisions, or a decision from the Township Zoning Hearing Board for grant of variance or special exception, as may be required.

J.   A preliminary construction schedule and completion dates.

K.   A preliminary traffic control plan in accordance with the PennDOT Manual on Uniform Traffic Control Devices.

L.   Financial statements prepared in accordance with generally accepted accounting principles demonstrating the applicant's financial ability to construct, operate, maintain, relocate, and remove the facilities.

M.   Information in sufficient detail to establish the applicant's technical qualifications, experience, and expertise regarding the telecommunications facilities and services described in the application.

N.   Information to establish that the applicant has obtained all other governmental approvals and permits to construct and operate the facilities and to offer or provide the telecommunications services.

O.   Whether the applicant intends to provide cable service, video dial-tone service, or other video programming service, and sufficient information to determine whether such service is subject to cable franchising.

P.   An accurate map showing the location of any existing telecommunications facilities in the Township that the applicant intends to use or lease.

Q.   A description of the services or facilities that the applicant will offer or make available to the Township and other public, educational, and governmental institutions.

R.   A description of the applicant's access and line extension policies.

S.  The area or areas of the Township the applicant desires to serve, and a schedule for build-out to the entire franchise area.

T.  All fees, deposits, or charges required pursuant to Article **VII** of this Part **2**.

U.  Such other and further information as may be requested by the Township Manager.

## § 154-52. Determination by Township.

Within 90 days after receiving a complete application under § **154-51** hereof, the Township shall issue a written determination granting or denying the application in whole or in part, applying the following standards. If the application is denied, the written determination shall include the reasons for denial.

A.  The financial and technical ability of the applicant.

B.  The legal ability of the applicant.

C.  The capacity of the public ways to accommodate the applicant's proposed facilities.

D.  The capacity of the public ways to accommodate additional utility and telecommunications facilities if the franchise is granted.

E.  The damage or disruption, if any, of public or private facilities, improvements, service, traveler landscaping, if the franchise is granted.

F.  The public interest in minimizing the cost and disruption of construction within the public ways.

G.  The service that applicant will provide to the community and region.

H.  The effect, if any, on public health, safety, and welfare if the franchise requested is granted.

I.  The availability of alternate routes and/or locations for the proposed facilities.

J.  Applicable federal and state telecommunications laws, regulations and policies.

K.  Such other factors as may demonstrate that the grant to use the public ways will serve the community interest.

## § 154-53. Agreement.

No franchise shall be granted hereunder unless the applicant and the Township have executed a written agreement setting forth the particular terms and provisions under which the franchise to occupy and use public ways of the Township will be granted.

## § 154-54. Nonexclusive grant.

No franchise granted under this article shall confer any exclusive right, privilege, license, or franchise to occupy or use the public ways of the Township for delivery of telecommunications services or any other purposes.

## § 154-55. Term of grant.

Unless otherwise specified in a franchise agreement, a telecommunications franchise granted hereunder shall be valid for a term of five years.

## § 154-56. Rights granted.

No franchise granted under this article shall convey any right, title, or interest in the public ways, but shall be deemed a franchise only to use and occupy the public ways for the limited purposes and term stated in the grant. Further, no franchise shall be construed as any warranty of title.

## § 154-57. Franchise territory.

A telecommunications franchise granted under this article shall be limited to the specific geographic area of the Township to be served by the franchise grantee, and the specific public ways necessary to serve such areas.

## § 154-58. Location of facilities.

Unless otherwise specified in a franchise agreement, all facilities shall be constructed, installed, and located in accordance with the following terms and conditions:

A.   Telecommunications facilities shall be installed within an existing underground duct or conduit whenever excess capacity exists within such utility facility.

B.   A franchisee with permission to install overhead facilities shall install its telecommunications facilities on pole attachments to existing utility poles only, and then only if surplus space is available.

C.   Whenever any existing electric utilities, cable facilities, or telecommunications facilities are located underground within a public way of the Township, a franchisee with permission to occupy the same public way must also locate its telecommunications facilities underground.

D.   New utility poles shall be permitted only when underground conduit cannot be installed.

E.   Whenever new telecommunications facilities will exhaust the capacity of a public street or utility easement to reasonably accommodate future telecommunications carriers or facilities, the grantee shall provide additional ducts, conduits, manholes and other facilities for nondiscriminatory access to future carriers.

F.   Whenever wireless telecommunications antenna systems are to be installed, the following land parcel priorities are to be followed by the applicant in determining the location site:

   (1)   The applicant shall first consider public land parcels identified on the Township Wireless Telecommunications Site Location List (an appendix to this Part 2)[1] for system suitability.
      [1]   *Editor's Note: Said list is on file in the Township offices.*

   (2)   If identified public land parcels are not suitable, the applicant shall next consider existing wireless antenna site locations which may be suitable and contain excess capacity.

   (3)   If existing wireless sites are not suitable, the applicant shall next consider existing utility sites, such as water tanks or towers, which may be suitable.

   (4)   If existing utility sites are not suitable, the applicant shall then consider private property sites listed on the Township Wireless Telecommunications Site Location List (an appendix to this Part 2).

   (5)   If none of the above location priorities are suitable, the applicant shall then consider other private property sites.

G.   When the applicant or telecommunications carrier determines that a higher priority location is not suitable and that a lower priority location is necessary, the carrier shall provide the Township with all technical and supporting data necessary to prove that determination.

H.

When a wireless telecommunications antenna system does not meet the zoning criteria established for this use, a license and construction permit shall only be issued following a grant of variance or special exception approval from the Township Zoning Hearing Board. All other terms and conditions of this Part 2 shall remain in effect.

I.    The Board of Commissioners may, from time to time, add site locations to the list by Township resolution, for use by telecommunications facilities and systems.

J.    All freestanding wireless telecommunications antennas which are higher than the permitted zoning district regulations, or 50 feet from ground elevation when ground mounted, shall be designed as an artificial tree, or otherwise camoflaged, to the satisfaction of the Township Engineer.

## § 154-59. Construction permits.

All franchisees are required to obtain construction permits for telecommunications facilities as required in Article VIII of this Part 2; provided, however, that nothing in this article shall prohibit the Township and a franchisee from agreeing to alternative plan review, permit, and construction procedures in a franchise agreement, provided such alternative procedures provide substantially equivalent safeguards for responsible construction practices.

## § 154-60. Compensation to Township.

Each franchise granted under this article is subject to the Township's right, which is expressly reserved, to annually fix a fair and reasonable compensation to be paid for the property rights granted to the franchisee, provided nothing in this article shall prohibit the Township and a franchisee from agreeing to the compensation to be paid.

## § 154-61. Nondiscrimination.

A franchisee shall make its telecommunications services available to any customer within its franchise area who shall request such service, without discrimination as to the terms, conditions, rates or charges for the grantee's services; provided, however, that nothing in this article shall prohibit a franchisee from making any reasonable classifications among differently situated customers.

## § 154-62. Service to Township.

A franchisee shall make its telecommunications services available to the Township at its most favorable rate for similarly situated users, unless otherwise provided in a license or franchise agreement.

## § 154-63. Amendment of grant.

A.    A new franchise application and grant shall be required of any telecommunications carrier that desires to extend its franchise territory or to locate its telecommunications facilities in public ways of the Township which are not included in a franchise previously granted under this Part 2.

B.    If ordered by the Township to locate or relocate its telecommunications facilities in public ways not included in a previously granted franchise, the Township shall grant a franchise amendment without further application.

## § 154-64. Renewal applications.

A grantee that desires to renew its franchise under this article shall, not more than 240 days nor less than 150 days before expiration of the current franchise, file an application with the Township for renewal of its franchise which shall include the following information:

A.    The information required pursuant to § 154-51 of this article.

B.    Any information required pursuant to the franchise agreement between the Township and the grantee.

## § 154-65. Renewal determinations.

Within 150 days after receiving a complete application under § 154-64 hereof, the Township shall issue a written determination granting or denying the renewal application in whole or in part, applying the following standards. If the renewal application is denied, the written determination shall include the reasons for nonrenewal.

A.    The financial and technical ability of the applicant.

B.    The legal ability of the applicant.

C.    The continuing capacity of the public ways to accommodate the applicant's existing facilities.

D.    The applicant's compliance with the requirements of this Part 2 and the franchise agreement.

E.    Applicable federal, state, and local telecommunications laws, rules and policies.

F.    Such other factors as may demonstrate that the continued grant to use the public ways will serve the community interest.

## § 154-66. Obligation to cure as condition of renewal.

No franchise shall be renewed until any ongoing violations or defaults in the grantee's performance of the franchise agreement, or of the requirements of this Part 2, have been cured, or until a plan detailing the corrective action to be taken by the grantee has been approved by the Township.

# Article VI. Cable Franchise

## § 154-67. Previously adopted by the Board of Commissioners.

[1]    *Editor's Note: Further information is available in the Township offices.*

# Article VII. Fees and Compensation

## § 154-68. Purpose.

It is the purpose of this article to provide for the payment and recovery of all direct and indirect costs and expenses of the Township related to the enforcement and administration of this Part 2. Fees in this article shall be established upon the adoption of this Part 2 and may be revised by resolution of the Board of Commissioners.

## § 154-69. Fees.

A.  Registration fee. Each application for registration as a telecommunications carrier or provider shall be accompanied by a fee of $100 annually.

B.  License fee. Each application for a license pursuant to Article IV or V of this Part 2 shall pay an application fee of $500, or 2% of the estimated cost of the applicant's proposed telecommunications facilities, as certified by the applicant's professional engineer; whichever is greater. In addition, from and after the effective date of the license agreement and throughout the full term of the license, the licensee shall pay to Abington Township, in quarterly installments, an annual fee for all facilities constructed, calculated as follows:

(1)  For facilities requiring excavation of public right-of-way, an annual fee of $1.50 per lineal foot;

(2)  For facilities being installed in existing conduit, without disturbing the right-of-way, an annual fee of $0.50 per lineal foot;

(3)  For overhead facilities installed requiring new poles in public right-of-way, an annual fee of $0.75 per lineal foot;

(4)  For overhead facilities installed on existing poles in public right-of-way, an annual fee of $0.25 per lineal foot.

(5)  For wireless telecommunications antennas installed on public property on existing structures or buildings, an annual fee of $12,000.

(6)  For wireless telecommunications antennas installed on public property utilizing new base structures or tower mounts, an annual fee of $24,000.

C.  Franchise fees. Each application for a franchise agreement pursuant to Article IV or V of this Part 2 shall pay an application fee of $1,000, or 2% of the estimated cost of the applicant's proposed telecommunications facilities as certified by the applicant's professional engineer; whichever is greater. In addition, from and after the effective date of the franchise agreement, the franchisee shall pay to Abington Township, in quarterly installments, a fee for facility construction, calculated as follows:

(1)  For facilities requiring excavation of public right-of-way, a one-time fee of $1.50 per lineal foot;

(2)  For facilities being installed in existing conduit, without disturbing the right-of-way, a one-time fee of $0.50 per lineal foot;

(3)  For overhead facilities installed requiring new poles in public right-of-way, a one-time fee of $0.75 per lineal foot;

(4)  For overhead facilities installed on existing poles in public right-of-way, a one-time fee of $0.25 per lineal foot.

(5)  For wireless telecommunications antennas installed on public property on existing structures or buildings, an annual fee of $12,000.

(6)  For wireless telecommunications antennas installed on public property utilizing new base structures or tower mounts, an annual fee of $24,000.

(7)  An annual franchise fee equal to 5% of the gross revenue derived by the franchisee.

D.  Application and license fees shall be deposited with the Township as part of the application filed, pursuant to Article IV or Article V of this Part 2, and may be used in highway and right-of-way repair or revitalization.

E.  An applicant whose license or franchise application has been withdrawn, abandoned, or denied shall, within 60 days of submission of application and review fees, submit a written request for refund of the balance of its deposit under this section, less 10% and all ascertainable costs and expenses incurred by the Township in connection with the application.

## § 154-70. Other Township costs.

All license or franchise grantees shall, within 30 days after written demand therefor, reimburse the Township for all direct and indirect costs and expenses incurred by the Township in connection with any modification, amendment, renewal or transfer of the license or franchise or any license or franchise agreement.

## § 154-71. Reserved compensation for public rights-of-way.

The Township reserves its right to annually fix a fair and reasonable compensation to be paid annually for the property rights granted to a telecommunications license or franchise grantee. Nothing in this article shall prohibit the Township and a grantee from agreeing to the compensation to be paid for the granted property rights.

## § 154-72. Compensation for Township and public property.

If the right is granted by lease, license, franchise, or other manner to use and occupy Township property for the installation of telecommunications facilities, the compensation to be paid shall be fixed annually by the Township. The Township, at its sole discretion, herein reserves the right to lottery the use of public property sites identified on the site location list herein, provided excess capacity is permitted by the grantee, and to lottery any radio frequency rights owned by Abington Township at the following rates:

A.  Public property sites owned by Abington Township: $150,000.

B.  Public property sites leased or operated by Abington Township: $100,000.

C.  Township radio frequency: $250,000.

## § 154-73. Construction permit fee.

Prior to issuance of a construction permit, the permittee shall pay a permit fee as established in the Township permit fee schedule for constructing the telecommunications facilities, as certified by the applicant's engineer and approved by the Township Engineer.

## § 154-74. Annual fees.

Unless otherwise agreed in a license or franchise grant agreement, each license or franchise grantee shall pay an annual license fee to the Township equal to $1,000 as reimbursement for the Township's costs in connection with reviewing, inspecting, and supervising the use and occupancy of the public ways in behalf of the public and existing or future users.

## § 154-75. Cable fees.

Cable television franchisees shall be subject to the franchise fees, payments, and costs provided in Article VI of this Part 2.

## § 154-76. Regulatory fees and compensation not tax.

The regulatory fees and costs provided for in this article, and any compensation charged and paid for the public ways provided for in §§ 154-70, 154-71, 154-72 and 154-73 of this article, are separate from, and additional to,

any and all federal, state, local, and Township taxes as may be levied, imposed, or due from a telecommunications carrier or provider, its customers or subscribers, or on account of the lease, sale, delivery, or transmission of telecommunications services.

## § 154-77. Video programming tax.

Nothing contained in this Part 2 shall prohibit Abington Township from imposing a tax on persons who sell video programming to subscribers in Abington Township by means of transmission, or who provide such subscribers with access to video programming by means of transmission, as authorized by the Video Programming Municipal Tax Authorization Act,[1] under its terms and conditions.

[1]      *Editor's Note: See 72 P.S. § 6171 et seq.*

## § 154-78. Priority of fees established.

The fee structure established in this Part 2 with respect to compensation for use of and disturbance of public property or rights-of-way, with sole application to telecommunications installations, shall supersede and replace any fees set forth in any other Township ordinances or resolutions.

# Article VIII. Conditions of Grant

## § 154-79. Location of facilities.

All facilities shall be constructed, installed and located in accordance with the following terms and conditions, unless otherwise specified in a license or franchise agreement:

A.   A grantee shall install its telecommunications facilities within an existing underground duct or conduit whenever excess capacity exists within such utility facility.

B.   A grantee with permission to install overhead facilities shall install its telecommunications facilities on pole attachments to existing utility poles only, and then only if surplus space is available.

C.   Whenever any existing electric utilities, cable facilities or telecommunications facilities are located underground within a public way of the Township, a grantee with permission to occupy the same public way must also locate its telecommunications facilities underground.

D.   New utility poles shall be permitted only when underground conduit cannot be installed.

E.   Whenever new telecommunications facilities will exhaust the capacity of a public street or utility easement to reasonably accommodate future telecommunications carriers or facilities, the grantee shall provide additional ducts, conduits, manholes and other facilities for nondiscriminatory access to future carriers.

F.   As additionally specified in Articles IV and V of this Part 2.

## § 154-80. Compliance.

A construction in the public ways shall comply with all state and federal safety regulations.

## § 154-81. Construction permits.

All license or franchise grantees are required to obtain construction permits for telecommunications facilities as required in Article IX of this Part 2. However, nothing in this article shall prohibit the Township and a grantee