# EXHIBIT "A"

PART 2 of 2

{00445486;v1}

from agreeing to alternative plan review, permit, and construction procedures in a license or franchise agreement, provided such alternative procedures provide substantially equivalent safeguards for responsible construction practices.

## § 154-82. Interference with public ways.

No license or franchise grantee may locate or maintain its telecommunications facilities so as to unreasonably interfere with the use of the public ways by the Township, by the general public, or by other persons authorized to use or be present in or upon the public ways. All such facilities shall be moved by the grantee, temporarily or permanently, as determined by the Township Engineer.

## § 154-83. Damage to property.

No license or franchise grantee, nor any person acting on a grantee's behalf, shall take any action or permit any action to be done which may impair or damage any Township property, public ways of the Township, other ways or other property located in, on, or adjacent thereto.

## § 154-84. Notice of work.

Unless otherwise provided in a license or franchise agreement, no license or franchise grantee, nor any person acting on the grantee's behalf, shall commence any nonemergency work in or about the public ways of the Township or other ways without 10 working days' advance notice to the Township.

## § 154-85. Repair and emergency work.

In the event of an unexpected repair or emergency, a grantee may commence such repair and emergency response work as required under the circumstances, provided the grantee shall notify the Township as promptly as possible before such repair or emergency work, or as soon thereafter as possible if advance notice is not practicable.

## § 154-86. Maintenance of facilities.

Each license or franchise grantee shall maintain its facilities in good and safe condition and in a manner that complies with all applicable federal, state, and local requirements.

## § 154-87. Relocation or removal of facilities.

Within 30 days following written notice from the Township, a license or franchise grantee shall, at its own expense, temporarily or permanently remove, relocate, change, or alter the position of any telecommunications facilities within the public ways whenever the corporate authorities shall have determined that such removal, relocation, change, or alteration is reasonably necessary for:

A.    The construction, repair, maintenance, or installation of any Township or other public improvement in or upon the public ways.

B.    The operations of the Township or other governmental entity in or upon the public ways.

## § 154-88. Removal of unauthorized facilities.

Within 30 days following written notice from the Township, any grantee, telecommunications carrier, or other person that owns, controls, or maintains any unauthorized telecommunications system, facility, or related appurtenances within the public ways of the Township shall, at its own expense, remove such facilities or appurtenances from the public ways of the Township. A telecommunications system or facility is unauthorized and subject to removal in the following circumstances:

A.   Upon expiration or termination of the grantee's telecommunications license or franchise;

B.   Upon abandonment of a facility within the public ways of the Township;

C.   If the system or facility was constructed or installed without the prior grant of a telecommunications license or franchise;

D.   If the system or facility was constructed or installed without the prior issuance of a required construction permit;

E.   If the system or facility was constructed or installed at a location not permitted by the grantee's telecommunications license or franchise.

## § 154-89. Emergency removal or relocation of facilities.

The Township retains the right and privilege to cut or move any telecommunications facilities located within the public ways of the Township as the Township may determine to be necessary, appropriate, or useful, in response to any public health or safety emergency.

## § 154-90. Damage to grantee's facilities.

Unless directly and proximately caused by the willful, intentional, or malicious acts by the Township, the Township shall not be liable for any damage to or loss of any telecommunications facility within the public ways of the Township as a result of or in connection with any public works, public improvements, construction, excavation, grading, filling, or work of any kind in the public ways or on behalf of Abington Township.

## § 154-91. Restoration of public ways, other ways and Township property.

A.   When a license or franchise grantee, or any person acting on its behalf does any work in or affecting any public ways, other ways or Township property, it shall, at its own expense, promptly remove any obstructions therefrom and restore such ways or property to as good a condition as existed before the work was undertaken, unless otherwise directed by the Township.

B.   If weather or other conditions do not permit the complete restoration required by this section, the grantee shall temporarily restore the affected ways or property. Such temporary restoration shall be at the licensee's sole expense, and the licensee shall promptly undertake and complete the required permanent restoration when the weather or other conditions no longer prevent such permanent restoration.

C.   A grantee or other person acting in its behalf shall use suitable barricades, flags, flagmen, lights, flares, and other measures as required for the safety of all members of the general public to prevent injury or damage to any person, vehicle, or property by reason of such work in or affecting such ways or property.

## § 154-92. Facilities maps.

Each license or franchise grantee shall provide the Township with an accurate map or maps certifying the location of all telecommunications facilities within the public ways. Each grantee shall provide updated maps annually.

# § 154-93. Duty to provide information.

Within 10 days of a written request from the Township Manager, each license or franchise grantee shall furnish the Township with information sufficient to demonstrate:

A.   That the grantee has complied with all requirements of this Part 2;

B.   That all municipal sales, message and/or telecommunications taxes due the Township in connection with the telecommunications services and facilities provided by the grantee have been properly collected and paid by the grantee.

C.   All books, records, maps and other documents maintained by the grantee with respect to its facilities within the public ways shall be made available for inspection by the Township at reasonable times and intervals.

# § 154-94. Leased capacity.

A license or franchise grantee shall have the right, without prior Township approval, to offer or provide capacity or bandwidth to its customers; provided:

A.   The grantee shall furnish the Township with a copy of any such lease or agreement;

B.   The customer or lessee has complied, to the extent applicable, with the requirements of this Part 2.

# § 154-95. Grantee insurance.

Unless otherwise provided in a license or franchise agreement, each grantee shall, as a condition of the grant, secure and maintain the following liability insurance policies insuring both the grantee and the Township, its elected and appointed officers, officials, agents and employees as coinsurers:

A.   Comprehensive general liability insurance with limits not less than:

   (1)   Five million dollars for bodily injury or death to each person;

   (2)   Five million dollars for property damage resulting from any one accident; and

   (3)   Five million dollars for all other types of liability.

B.   Automobile liability for owned, nonowned and hired vehicles with a limit of $3,000,000 for each person and $3,000,000 for each accident;

C.   Workers' compensation within statutory limits and employer's liability insurance with limits of not less than $1,000,000;

D.   Comprehensive insurance for premises operations, explosions and collapse hazard, underground hazard and products completed hazard with limits of not less than $3,000,000;

E.   The liability insurance policies required by this section shall be maintained by the grantee throughout the term of the telecommunications license or franchise, and such other period of time during which the grantee is operating without a franchise or license hereunder, or is engaged in the removal of its telecommunications facilities. Each such insurance policy shall contain the following endorsement:

"It is hereby understood and agreed that this policy may not be canceled nor permitted to lapse until 90 days after receipt by the Township, by registered mail, of a written notice addressed to the Township Manager of such intent to cancel or not to renew."

F.   Within 60 days after receipt by the Township of said notice, and in no event later than 30 days prior to said cancellation or lapse, the grantee shall obtain and furnish to the Township replacement insurance policies meeting the requirements of this section.

## § 154-96. General indemnification.

Each license or franchise agreement shall include, to the extent permitted by law, the grantee's express undertaking to defend, indemnify and hold the Township and its officers, employees, agents, and representatives harmless from and against any and all damages, losses and expenses (including reasonable attorneys' fees and costs of suit or defense), arising out of, resulting from, or alleged to arise out of or result from the negligent, careless, or wrongful acts, omissions, failures to act, or misconduct of the grantee or its affiliates, officers, employees, agents, contractors, or subcontractors in the construction, operation, maintenance, repair or removal of its telecommunications facilities, and in providing or offering telecommunications services over the facilities or network, whether such acts or omissions are authorized, allowed, or prohibited by this Part 2 or by a grant agreement made or entered into pursuant to this Part 2.

## § 154-97. Performance and construction surety.

Before a license or franchise granted pursuant to this Part 2 is effective, and as necessary thereafter, the grantee shall provide and deposit such monies, bonds, letters of credit, or other instruments in form and substance acceptable to the Township as may be required by this Part 2 or by an applicable license or franchise agreement.

## § 154-98. Security fund.

Each grantee shall establish a permanent security fund with the Township by depositing the amount of $50,000 with the Township in cash, an unconditional letter of credit, or other instrument acceptable to the Township, which fund shall be maintained at the sole expense of the grantee so long as any of the grantee's telecommunications facilities are located within the public ways of the Township.

A.   The fund shall serve as security for the full and complete performance of this Part 2, including any costs, expenses, damages or loss that the Township pays or incurs because of any failure attributable to the grantee to comply with the codes, ordinances, rules, regulations, or permits of the Township.

B.   Before any sums are withdrawn from the security fund, the Township shall give written notice to the grantee:

   (1)   Describing the act, default, or failure to be remedied, or the damages, cost, or expenses which the Township has incurred by reason of the grantee's act or default;

   (2)   Providing a reasonable opportunity for the grantee to first remedy the existing or ongoing default or failure, if applicable;

   (3)   Providing a reasonable opportunity for the grantee to pay any monies due the Township before the Township withdraws the amount thereof from the security fund, if applicable;

   (4)   That the grantee will be given an opportunity to review the act, default, or failure described in the notice with the Township Manager or his designee.

C.   Grantees shall replenish the security fund within 14 days after receiving written notice from the Township that there is a deficiency in the amount of the fund.

## § 154-99. Construction and completion bond.

Unless otherwise provided in a license or franchise agreement, a performance bond written by a corporate surety acceptable to the Township equal to at least 100% of the estimated cost of constructing the grantee's telecommunications facilities within the public ways of the Township shall be deposited before construction is commenced.

A.   The construction bond shall remain in force until 60 days after substantial completion of the work, as determined by the Township Engineer, including restoration of public ways and other property affected by the construction.

B.   The construction bond shall guarantee, to the satisfaction of the Township:

   (1)   Timely completion of construction;

   (2)   Construction in compliance with applicable plans, permits, technical codes and standards;

   (3)   Proper location of the facilities as specified by the Township;

   (4)   Restoration of the public ways and other property affected by the construction;

   (5)   The submission of as-built drawings after completion of the work as required by this Part 2;

   (6)   Timely payment and satisfaction of all claims, demands, or liens for labor, material, or services provided in connection with the work.

## § 154-100. Coordination of construction activities.

All grantees are required to cooperate with the Township and with each other.

A.   By February 1 of each year, grantees shall provide the Township with a schedule of their proposed construction activities in or around the public ways, or that may affect the public ways.

B.   Each grantee shall meet with the Township and other grantees and users of the public ways annually, or as determined by the Township, to schedule and coordinate construction in the public ways.

C.   All construction locations, activities, and schedules shall be coordinated, as ordered by the Township Engineer, to minimize public inconvenience, disruption or damages.

## § 154-101. Assignments or transfers of grant.

Ownership or control of a telecommunications system, license, or franchise may not, directly or indirectly, be transferred, assigned or disposed of by sale, lease, merger, consolidation, or other act of the grantee, by operation of law or otherwise, without the prior consent of the Township. Such consent shall not be unreasonably withheld or delayed, as expressed by ordinance. Consent may be delayed only on such reasonable conditions as may be prescribed therein.

A.   No grant shall be assigned or transferred in any manner within 12 months after the initial grant of the license or franchise, unless otherwise provided in a license or franchise agreement.

B.   Absent extraordinary and unforeseeable circumstances, no grant, system, or integral part of a system shall be assigned or transferred before construction of the telecommunications system has been completed.

C.   The grantee and the proposed assignee or transferee of the grant or system shall provide and certify the following information to the Township not less than 150 days prior to the proposed date of transfer:

   (1)

Complete information setting forth the nature, terms and condition of the proposed transfer or assignment;

(2) All information required of a telecommunications license or franchise applicant pursuant to Article IV or V of this Part 2 with respect to the proposed transferee or assignee;

(3) Any other information reasonably required by the Township.

D. No transfer shall be approved unless the assignee or transferee has the legal, technical, financial, and other requisite qualifications to own, hold, and operate the telecommunications system pursuant to this Part 2.

E. Unless otherwise provided in a license or franchise agreement, the grantee shall reimburse the Township for all direct and indirect fees, costs, and expenses reasonably incurred by the Township in considering a request to transfer or assign a telecommunications license or franchise.

F. Any transfer or assignment of a telecommunications grant, system, or integral part of a system without prior approval of the Township under this section or pursuant to a license or franchise agreement shall be void and is cause for revocation of the grant.

## § 154-102. Transactions affecting control of grant.

Any transactions which singularly or collectively result in a change of 10% or more of the ownership or working control of the grantee, of the ownership or working control of a telecommunications license or franchise, of the ownership or working control of affiliated entities having ownership or working control of the grantee or of a telecommunications system, or of control of the capacity or bandwidth of the grantee's telecommunications system, facilities or substantial parts thereof, shall be considered an assignment or transfer requiring Township approval pursuant to § 154-100 hereof. Transactions between affiliated entities are not exempt from Township approval.

## § 154-103. Revocation or termination of grant.

A license or franchise granted by the Township to use or occupy public ways of the Township may be revoked for the following reasons:

A. Construction or operation in the Township or in the public ways of the Township without a license or franchise grant of authorization;

B. Construction or operation at an unauthorized location;

C. Unauthorized substantial transfer of control of the grantee;

D. Unauthorized assignment of a license or franchise;

E. Unauthorized sale, assignment, or transfer of the grantee's franchise or license assets, or substantial interest therein;

F. Misrepresentation or lack of candor by or on behalf of a grantee in any application to the Township;

G. Abandonment of telecommunications facilities in the public ways;

H. Failure to relocate or remove facilities as required in this Part 2;

I. Failure to pay taxes, compensation, fees, or costs when and as due the Township;

J. Insolvency or bankruptcy of the grantee;

K. Violation of material provisions of this Part 2;

L. Violation of the material terms of a license or franchise agreement.

## § 154-104. Notice and duty to cure.

In the event that the Township Manager believes that grounds exist for revocation of a license or franchise, he shall give the grantee written notice of the apparent violation or noncompliance, providing a short and concise statement of the nature and general facts of the violation or noncompliance, and providing the grantee a reasonable period of time not exceeding 30 days to furnish evidence:

A.   That corrective action has been or is being actively and expeditiously pursued to remedy the violation or noncompliance;

B.   That rebuts the alleged violation or noncompliance;

C.   That it would be in the public interest to impose some penalty or sanction less than revocation.

## § 154-105. Hearing.

In the event that a grantee fails to provide evidence reasonably satisfactory to the Township Manager as provided in § 154-104 hereof, the Manager shall refer the apparent violation or noncompliance to the corporate authorities. The corporate authorities shall provide the grantee with notice and a reasonable opportunity to be heard concerning the matter.

## § 154-106. Standards for revocation or lesser sanctions.

If persuaded that the grantee has violated or failed to comply with material provisions of this Part 2, or of a franchise or license agreement, the corporate authorities shall determine whether to revoke the license or franchise, or to establish some lesser sanction and cure, considering the nature, circumstances, extent, and gravity of the violation as reflected by one or more of the following factors:

A.   Whether the misconduct was egregious;

B.   Whether substantial harm resulted;

C.   Whether the violation was intentional;

D.   Whether there is a history of prior violations of the same or other requirements;

E.   Whether there is a history of overall compliance;

F.   Whether the violation was voluntarily disclosed, admitted, or cured.

# Article IX. Construction Standards

## § 154-107. General.

No person shall commence or continue with the construction, installation or operation of telecommunications facilities within the Township except as provided in this article.

## § 154-108. Construction codes.

Telecommunications facilities shall be constructed, installed, operated and maintained in accordance with all applicable federal, state and local codes, rules and regulations, including the National Electrical Safety Code.

## § 154-109. Construction permits.

No person shall construct or install any telecommunications facilities within the Township without first obtaining a construction permit therefor; provided, however:

A. No permit shall be issued for the construction or installation of telecommunications facilities within the Township unless the telecommunications carrier has filed a registration statement with the Township pursuant to Article II of this Part 2;

B. No permit shall be issued for the construction or installation of telecommunications facilities in the public ways unless the telecommunications carrier has applied for and received a license or franchise pursuant to Article IV, V or VI of this Part 2;

C. No permit shall be issued for the construction or installation of telecommunications facilities without payment of the construction permit fee established in § 154-73 of this Part 2.

## § 154-110. Applications.

Applications for permits to construct telecommunications facilities shall be submitted upon forms to be provided by the Township and shall be accompanied by drawings, plans and specifications in sufficient detail to demonstrate:

A. That the facilities will be constructed in accordance with all applicable codes, rules and regulations;

B. The location and route of all facilities to be installed on existing utility poles;

C. The location and route of all facilities to be located under the surface of the ground, including the line and grade proposed for the burial at all points along the route which are within the public ways;

D. The location of all existing underground utilities, conduits, ducts, pipes, mains, and installations which are within the public ways along the underground route proposed by the applicant;

E. The location of all other facilities to be constructed within the Township, but not within the public ways;

F. The construction methods to be employed for protection of existing structures, fixtures, and facilities within or adjacent to the public ways;

G. The location, dimension, and types of all trees within or adjacent to the public ways along the route proposed by the applicant, together with a landscape plan for protecting, trimming, removing, replacing, and restoring any trees or areas to be disturbed during construction.

## § 154-111. Engineer's certification.

All permit applications shall be accompanied by the certification of a registered professional engineer that the drawings, plans, and specifications submitted with the application comply with applicable technical codes, rules, and regulations.

## § 154-112. Traffic control plan.

All permit applications which involve work on, in, under, across, or along any public ways shall be accompanied by a traffic control plan demonstrating the protective measures and devices that will be employed, consistent with the Uniform Manual of Traffic Control Devices, to prevent injury or damage to persons or property and to minimize disruptions to efficient pedestrian and vehicular traffic.

## § 154-113. Issuance of permit.

Within 45 days after submission of all plans and documents required of the applicant, and payment of the permit fees required by this Part 2, the Township Engineer, if satisfied that the applications, plans, and documents comply with all requirements of this Part 2, shall issue a permit authorizing construction of the facilities subject to such further conditions, restrictions, or regulations affecting the time, place and manner of performing the work as he may deem necessary or appropriate.

## § 154-114. Construction schedule.

The permittee shall submit a written construction schedule to the Township Engineer 10 working days before commencing any work in or about the public ways. The permittee shall further notify the Township Engineer not less than two working days in advance of any excavation or work in the public ways.

## § 154-115. Compliance with permit.

All construction practices and activities shall be in accordance with the permit and approved final plans and specifications for the facilities. The Township Engineer and his representatives shall be provided access to the work and such further information as he or she may require to ensure compliance with such requirements.

## § 154-116. Display of permit.

The permittee shall maintain a copy of the construction permit and approved plans at the construction site, which shall be displayed and made available for inspection by the Township Engineer or his representatives at all times when construction work is occurring.

## § 154-117. Survey of underground facilities.

If the construction permit specifies the location of facilities by depth, line, grade, proximity to other facilities, or other standard, the permittee shall cause the location of such facilities to be verified by a registered Pennsylvania land surveyor. The permittee shall relocate any facilities which are not located in compliance with permit requirements.

## § 154-118. Noncomplying work.

Upon order of the Township Engineer, all work which does not comply with the permit, the approved plans and specifications for the work, or the requirements of this Part 2, shall be removed.

## § 154-119. Completion of construction.

The permittee shall promptly complete all construction activities so as to minimize disruption of the Township ways and other public and private property. All construction work authorized by a permit within Township ways, including restoration, must be completed within 120 days of the date of issuance.

## § 154-120. As-built drawings.

Within 60 days after completion of construction, the permittee shall furnish the Township with two complete sets of plans, drawn to scale and certified to the Township as accurately depicting the location of all telecommunications facilities constructed pursuant to the permit.

## § 154-121. Restoration of improvements.

Upon completion of any construction work, the permittee shall promptly repair any and all public ways and provide property improvements, fixtures, structures, and facilities in the public ways or otherwise damaged during the course of construction, restoring the same as nearly as practicable to its condition before the start of construction.

## § 154-122. Landscape restoration.

A.   All trees, landscaping, and grounds removed, damaged, or disturbed as a result of the construction, installation, maintenance, repair, or replacement of telecommunications facilities, whether such work is done pursuant to a franchise, license, or permit, must be replaced or restored as nearly as may be practicable to the condition existing prior to performance of the work.

B.   All restoration work within the public ways shall be done in accordance with landscape plans approved by the Township Engineer.

## § 154-123. Construction surety.

Prior to issuance of a construction permit, the permittee shall provide a performance bond, as provided in § 154-99 of this Part 2.

## § 154-124. Exceptions.

Unless otherwise provided in a license or franchise agreement, all telecommunications carriers are subject to the requirements of this Article IX.

## § 154-125. Responsibility of owner.

The owner of the facilities to be constructed and, if different, the license or franchise grantee, are responsible for performance of and compliance with all provisions of this article.

# Article X. Video Programming Tax

## § 154-126. Authorization for tax.

This article imposes a tax on persons who sell video programming to subscribers in Abington Township by means of transmission, or who provide such subscribers with access to video programming by any means of transmission, and providing penalties, all as authorized by the Video Programming Municipal Tax Authorization Act,[1] and under certain terms and conditions.

[1]     *Editor's Note: See 72 P.S. § 6171 et seq.*

## § 154-127. Definitions applicable for video programming tax.

As used in this article, the following terms shall have the meanings indicated:

**CABLE TELEVISION OPERATOR**

Any person or group of persons who provides cable service over a cable system and who, directly or through one or more affiliates, owns an interest in such cable system, or who otherwise controls or is responsible for, through any arrangement, the management and operation of a cable system. The term does not include a provider of wireless or direct-to-home satellite transmission service.

**DIRECT-TO-HOME SATELLITE TRANSMISSION**

The transmission, distribution, or broadcasting of video programming or services by satellite directly to subscribers' premises without the use of ground receiving or distribution equipment, except at the site of the subscribers' premises or in the uplink process to the satellite.

**GROSS RECEIPTS**

A.   Gross receipts shall include:

  (1)   The amount charged for or received by video programmers from sales of video programming to subscribers with service addresses in the Township, and related charges for bad check and late payment charges, installation, connection, additional outlets, repair services, digital audio services, radio services, programming guides and equipment rental services upon which cable television operators within the Township pay franchise fees; and

  (2)   The amount charged for or received by common carriers from sales of access to video programming to subscribers with service addresses in the Township, and related charges for bad check and late payment charges, installation, connection, additional outlets, repair services, digital audio services, radio services, programming guides, and equipment rental services upon which cable television operators within the Township pay franchise fees; and

  (3)   The amount charged for or received by persons from sales of access to video programming by any means of transmission, other than wireless or direct-to-home satellite transmission, directly to subscribers with service addresses in the municipality.

B.   Gross receipts shall not include:

  (1)   Amounts charged for or received by persons from sales of telephone access or service that entitles the subscriber to the privilege of interactive telephone quality telecommunications, with substantially all persons having telephone or radio telephone stations constituting a part of a particular system or in a specified area;

  (2)   Any revenues received by persons providing access to video programming from video programmers for the transport of video programming to a subscriber's premises or access to the video dial-tone network;

  (3)   The tax imposed under this Part 2 if the tax is shown as a separate line charge to subscribers;

  (4)   Any other taxes, fees, or surcharges on services furnished by persons providing access to video programming or video programmers as imposed on subscribers by the commonwealth cities, incorporated towns, townships, boroughs, counties, or home rule municipalities pursuant to statute, ordinance, resolution or regulation, and which are collected on behalf of the governmental unit by the provider of the services;

  (5)   Any portion of a debt related to the sale of video programming or the sale of access to a video network, the gross charges for which are not otherwise deductible or excludable, that have become worthless or uncollectible as determined under applicable federal income tax standards. If the portion of the debt deemed to be bad is subsequently paid, the video programmer or person shall report and pay the tax imposed under this Part 2 on that portion during the reporting period in which the payment is made;

  (6)

Amounts received from retail sales of tangible personal property that provides access to video programming;

(7) Amounts charged for or received by persons from sales of video programming which is delivered to subscribers through a satellite master antenna television (SMATV) system; or

(8) Amounts received by a common carrier from persons for related charges for bad check and late payment charges, installation, connection, additional outlets, repair services, digital audio services, radio services, programming guides, and equipment rental services that are resold by such persons to the ultimate consumer.

**PERSON**

Any individual, partnership, association, joint stock company, trust, corporation, government entity, limited liability company, or any other entity.

**SUBSCRIBER**

The ultimate consumer of the video programming provided by video programmers over any means of transmission other than wireless or direct-to-home satellite transmission. The term does not include a video programmer that purchases video dial-tone transport service to provide video programming over a video dial-tone system.

**VIDEO DIAL-TONE SERVICE**

A common carrier service for the transport of video programming to subscribers.

**VIDEO PROGRAMMER**

A person that provides video programming to subscribers.

**VIDEO PROGRAMMING**

Video or information programming, whether in digital or analog format, that is provided by a cable operator, or generally considered comparable programming provided by a cable television operator, and upon which such cable television operator pays a franchise fee. The term does not include on-line, interactive information services to the extent that access to such services is accomplished via a dial-up or private telephone line or via wireless or direct-to-home satellite transmission.

**WIRELESS TRANSMISSION**

The distribution of video programming using radio communications, including, but not limited to, terrestrial-based radio systems.

## § 154-128. Imposition of tax.

A.  There is hereby imposed a tax, as authorized by the Video Programming Municipal Tax Authorization Act,[1] on any person who sells video programming to subscribers within the Township by any means of transmission other than wireless or direct-to-home satellite transmission, or who provides such subscribers with access to video programming by any means of transmission and who is not otherwise subject to the five-percent-of-gross-revenues franchise fee imposed by the Township on its cable television franchises.
    [1]  *Editor's Note: See 72 P.S. § 6171 et seq.*

B.  The tax imposed under this Part 2 shall be imposed to the full extent permitted by the Constitution of the United States only upon persons within the Commonwealth of Pennsylvania who:

    (1)  Engage in any commercial activity;

    (2)  Employ capital;

    (3)  Own, lease or utilize property;

    (4)  Maintain an office; or

    (5)   Have employees for all or any part of any calendar year.

## § 154-129. Tax rates, credits and penalties.

A.   The tax imposed by this section shall be at the rate of 5% on the gross receipts from sales of video programming or sales of access to video programming directly to subscribers within the Township.

B.   Any person subject to the tax imposed under this article shall be entitled to the following credits:

    (1)   A credit equal in amount to any similar tax on gross receipts, other than a generally applicable sales tax, use tax, or corporate income tax, that the person has paid to another state or government entity thereof under a lawful requirement of such state or government entity on sales by the person of the same video programming, or sales of access to such video programming to subscribers within the Township; and

    (2)   A credit equal in amount to any fees on gross receipts that the person has paid under any franchise fee or similar fee authorized or permitted by federal, state, or local law or imposed by ordinance in any municipality, or agreed to pursuant to a written franchise agreement between the person and the municipality with respect to any revenues received by a person or video programmer from subscribers with the Township for access to the person's video programming, or from video programmers for the transport of video programming to a subscriber's premises within the Township, or for access to a video network.

C.   A penalty of an amount equal to 10% of the taxes due, including all delinquent taxes due under this article, shall be added to the tax levied under this article for failure to pay the tax by the quarterly due dates set forth herein. This penalty shall be in lieu of other penalty provisions but all other provisions shall apply to the taxes imposed under this article.

## § 154-130. Returns and payments.

A.   A person subject to the tax imposed under this article shall file on forms provided by the Township's finance officer, quarterly returns on or before January 31, April 30, July 31, and October 31 of each year.

B.   Payment of the tax shall accompany each quarterly return, with each quarterly payment calculated upon the gross receipts of the taxpayer during the three months prior to the month of payment.

C.   A return and accompanying payment shall be considered as timely made if received by the Township and postmarked by the United States Postal Service on or prior to the quarterly due date applicable to such return and payment.

## § 154-131. Township required to provide information to video programmers.

The Township's finance officer shall provide video programmers and persons providing access to video programming subscribers within the Township all the information which the Township is required to provide such persons under § 6 of the Video Programming Municipal Tax Authorization Act.[1]

[1]    *Editor's Note: See 72 P.S. § 6171 et seq.*

## § 154-132. When effective.

Section 1 of this Part 2[1] shall take effect on the first day of the first month which begins at least 60 days after this Part 2 becomes law. Section 2 of this Part 2[2] shall take effect immediately.

[1]   Editor's Note: "Section 1 of this Part 2" refers to this Part 2.
[2]   Editor's Note: "Section 2 of this Part 2" refers to Zoning Ordinance amendments not included here. See Ch. 162,
      Zoning.

## § 154-133. Reports and documentation to be provided to Township.

Video programmers shall provide the Township with annual reports, audit reports, and any other documentation
necessary to determine compliance with the provisions of this Part 2.



2016-23932-0000  10 5 2016 2:13 PM  = 10986650
Complaint Civil Action
Rcpt=2016-8-03185  Fee:$270.00  Exhibit C
Mark Levy - MontCo Prothonotary

# EXHIBIT "C"

{00445486;v1}

 **CROWN CASTLE**

**Crown Castle**
131-05 14th Avenue
College Point, NY 11356

July 22, 2016

VIA OVERNIGHT DELIVERY
Michael LeFevre
Township Manager
Abington Township
1176 Old York Road
Abington, PA 19002

RE:   **Proposal for Right-of-Way Use Agreement between Crown Castle NG East LLC and Abington Township, Pennsylvania.**

Dear Mr. LeFevre:

Please accept this request of Crown Castle NG East LLC ("Crown Castle"), for a Right-Of-Way Use Agreement or other appropriate form of authorization from Abington Township, Pennsylvania ("Township") to conduct business as a telecommunications company operating with infrastructure located in the Township's public ways. This information is submitted to the Township in accordance with Section 253 of the Federal Telecommunications Act of 1996 and the relevant Pennsylvania statutes governing the use of the public way by telecommunications carriers for the provision of their services.

Crown Castle (formerly NextG Networks of NY, Inc) has an existing Franchise Agreement with Abington Township effective as of September 11, 2008. A copy of the said Agreement is enclosed.

**Agreement Form and Purpose**

Although an agreement or license is not required for access to the public rights of way unless the requirement is published in your local laws, Crown Castle is nonetheless willing to offer an agreement and for this reason, files this letter with you to request a non-exclusive license agreement, franchise, or other appropriate form of authorization from Township in order to install, operate, and maintain fiber optic cable and associated equipment, including optical converters and antennas (each equipment location is referred to by the industry as a "node"), on, over and under the public way in the Township in connection with the provision of telecommunications provided by Crown Castle as a "carrier's carrier" for its wireless carrier customers. In order to expedite its application and processing, Crown Castle proposes to enter into an agreement with the Township substantially in the form attached hereto that includes an offer of annual compensation to the Township in the form of a percentage of Crown Castle's gross revenues and also rent for attachment rights to any Township-owned infrastructure utilized by Crown Castle.

**Crown Castle's Public Utility Status**

The Foundation for a Wireless World.
CrownCastle.com

Pursuant to the laws of the State of Pennsylvania, Crown Castle is a public utility and, as such, has been granted an Order Granting Authority (equivalent to a Certificate of Public Convenience and Necessity) by the Pennsylvania Public Utilities Commission ("PUC") (Application No. A-311354F0002, April 7, 2005).[1] As a result, Crown Castle must be granted access to the public rights of way in the same manner and on the same terms applicable to other certificated telecommunications providers and utilities.

Crown Castle provides telecommunications services to its customers, specifically, RF transport services. It does so via telecommunications networks installed in the public rights of way that integrate elements including fiber optic cables as well as personal wireless services facilities, such as antennas and related equipment. Crown Castle's networks are sometimes referred to as Small Cell Networks, or more specifically, Distributed Antenna Systems ("DAS").

Photographic examples of Crown Castle's Small Cell equipment are attached to this letter for your reference.

## Proposed Location and Number of Attachments

Crown Castle proposes that its Right-Of-Way Use Agreement authorize the installation and operation of its equipment and network in, under, and over the public ways of the Township on standard-design prefabricated steel poles, wooden distribution poles, newly installed poles and other available structures throughout the Township. Crown Castle would comply with all relevant provisions of the Township's Ordinance as such provisions are applied to the incumbent telecommunications provider (the "ILEC"). Now would be the most appropriate time to engage with Crown Castle on the finalization of the pole and site selection, since it will be difficult to accommodate changes after the initial design is finalized (which will happen in the upcoming months).

At this time Crown Castle is proposing to install approximately twenty-one (21) DAS Node Facilities within the Township. Any additional nodes would be subject to and governed by the terms of the Right-Of-Way Use Agreement.

## Proposed Compensation to Township

For use of the public ways Crown Castle proposes a compensation structure under its right-of-way use agreement of five percent (5%) of Crown Castle's gross revenues from services provided in the Township for each equipment location, regardless of the ownership of the infrastructure (utility poles are typically owned by the telephone or electric provider). In addition, Crown Castle would compensate the Township in the amount of Five Hundred Dollars ($500.00) annual for each Township-owned pole with annual increases. This is the same rate structure that Crown Castle has offered consistently to other municipalities in the region.

---

[1] NextG Networks of NY, Inc. subsequently changed its name to Crown Castle NG East LLC. The PUC Order remains in effect subsequent to the name change. Evidence of the name change can be provided upon request.

*Alternative if no Agreement is Reached*

       If the Township does not wish to enter into an agreement with Crown Castle, we would greatly appreciate your response as soon as possible. Then, in the coming month we will apply directly to Township for permit approval. At that point, the application Crown Castle submits will be subject to federal law and the FCC's rules that require such application be processed without undue delay.

       Thank you for your consideration and attention to this request. If you have any questions, please do not hesitate to call me at (718) 637-3884 or via peter.broy@crowncastle.com. I look forward to setting up a meeting at your convenience to discuss the Township's response to this proposal.

Very truly yours,
CROWN CASTLE NG EAST LLC

Peter Broy
*Government Relations Manager*

cc:  Michael P. Clarke, Esq., Township Solicitor

List of attachments:
1. Photographs of a typical equipment location
2. Copy of Order Granting Authority from Pennsylvania PUC
3. Draft Right-of-Way Use Agreement
4. Declaration of Name Change
5. Copy of the Franchise Agreement

The Foundation for a Wireless World.
CrownCastle.com



proposed antenna

STOP

Proposed



proposed antenna ⎯⎯⎯⎯⎯⎯

Proposed



COMMONWEALTH OF PENNSYLVANIA
PENNSYLVANIA PUBLIC UTILITY COMMISSION
P.O. BOX 3265, HARRISBURG, PA 17105-3265

IN REPLY PLEASE
REFER TO OUR FILE

MAY 2, 2005

A-311354F0002

K.C HALM ESQUIRE
COLE RAYWID & BRAVERMAN LLP
1919 PENNSYLVANIA AVE NW SUITE 200
WASHINGTON DC  20006

Application of NextG Networks of NY Inc., d/b/a NextG Networks East for approval of the right to begin to offer, render, furnish, or supply telecommunication services as a Competitive Access Provider, to the Public, in the Commonwealth of Pennsylvania

To Whom It May Concern:

This is to advise you that the Tariff-Telephone Pa. P.U.C. No.1 has been permitted to become effective on April 14, 2005 in accordance with Pa. Code §§63.114 et.seq.

The application approved at Public Meeting on April 7, 2005 in the above entitled proceeding has now met the Commission's requirements and the Certificate of Public Convenience can be issued.

A copy of this Certificate of Public Convenience is enclosed for your records.

Very truly yours,

James J. McNulty
Secretary

fg
Encls.
Cert.Mail

# PENNSYLVANIA
# PUBLIC UTILITY COMMISSION

IN THE MATTER OF THE APPLICATION OF: A-311354F0002

Application of NextG Networks of NY Inc., d/b/a NextG Networks East for approval of the right to begin to offer, render, furnish, or supply telecommunication services as a Competitive Access Provider, to the Public, in the Commonwealth of Pennsylvania.

The Pennsylvania Public Utility Commission hereby certifies that after an investigation and/or hearing, it has, by its report and order made and entered, found and determined that the granting of the application is necessary or proper for the service, accommodation, convenience and safety of the public and hereby issues to the applicant this CERTIFICATE OF PUBLIC CONVENIENCE evidencing the Commission's approval.

In Witness Whereof, The PENNSYLVANIA PUBLIC UTILITY COMMISSION has caused these presents to be signed and sealed, and duly attested by its secretary at its office in the city of Harrisburg this 7TH day of April 2005.

Secretary

*Township of Abington*

# RIGHT-OF-WAY USE AGREEMENT

T HIS RIGHT-OF-WAY USE AGREEMENT (this "Use Agreement") is dated as of _____, 2016

(the "Effective Date"), and entered into by and between the TOWNSHIP OF ABINGTON, a Pennsylvania municipal corporation (the "Township"), and CROWN CASTLE NG EAST LLC, a Delaware limited liability company ("Crown Castle").

## RECITALS

A.      Crown Castle owns, maintains, operates and controls, in accordance with regulations promulgated by the Federal Communications Commission and the Pennsylvania Public Utility Commission, a fiber-based telecommunications Network or Networks (as defined below) serving Crown Castle's wireless carrier customers and utilizing microcellular optical converter Equipment (as defined below) certified by the Federal Communications Commission.

B.      For purpose of operating the Network, Crown Castle wishes to locate, place, attach, install, operate, control, and maintain upgrade and enhance Equipment in the Public Way (as defined below) on facilities owned by the Township, as well as on facilities owned by third parties therein.

## AGREEMENT

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree to the following covenants, terms, and conditions:

1.   DEFINITIONS. The following definitions shall apply generally to the provisions of this Use Agreement:

   1.1. *Township.*  ("Township") shall mean the Township of Abington, Pennsylvania.

   1.2. *Crown Castle.*  "Crown Castle" shall mean Crown Castle NG East LLC, a Delaware limited liability company and its lawful successors, assigns, and transferees.

   1.3. *Decorative Streetlight Pole.*  "Decorative Streetlight Pole" shall mean any streetlight pole that incorporates artistic design elements not typically found in standard steel or aluminum streetlight poles.

   1.4. *Equipment.*  "Equipment" means the optical converters, DWDM and CWDM multiplexers, antennas, fiber optic cables, wires, and related equipment, whether referred to singly or collectively, to be installed and operated by Crown Castle hereunder.

   1.5. *Fee.*  "Fee" means any assessment, license, charge, fee, imposition, tax, or levy of general application to entities doing business in the Township lawfully imposed by any governmental body (but excluding any utility users' tax, franchise fees, communications tax, or similar tax or fee).

1.6. *Gross Revenue.* "Gross Revenue" shall mean and include all recurring revenues received by Crown Castle for the provision of RF telecommunications transport services, either directly by Crown Castle or indirectly through a reseller, if any, to customers of such services wholly consummated within the Township. Gross Revenue shall not include any revenues received by Crown Castle for the construction of network facilities in the Township. "Adjusted Gross Revenue" shall include offset for: (a) sales, ad valorem, or other types of "add-on" taxes, levies, or fees calculated by gross receipts or gross revenues which might have to be paid to or collected for federal, state, or local government (exclusive of the Right-of-Way Use Fee paid to the Township provided herein); (b) retail discounts or other promotions; (c) non-collectable amounts due Crown Castle or its customers; (d) refunds or rebates; and (e) non-operating revenues such as interest income or gain from the sale of an asset.

1.7. *ILEC.* "ILEC" means the Incumbent Local Exchange Carrier that provides basic telephone services, among other telecommunications services, to the residents of the Township.

1.8. *Installation Date.* "Installation Date" shall mean the date that the first Equipment is installed by Crown Castle pursuant to this Use Agreement.

1.9. *Laws.* "Laws" means any and all statutes, constitutions, ordinances, resolutions, regulations, judicial decisions, rules, tariffs, administrative orders, certificates, orders, or other requirements of the Township or other governmental agency having joint or several jurisdiction over the parties to this Use Agreement.

1.10. *Municipal Facilities.* "Municipal Facilities" means Township owned Streetlight Poles, Decorative Streetlight Poles, lighting fixtures, electroliers, or other Township owned structures located within the Public Way and may refer to such facilities in the singular or plural, as appropriate to the context in which used.

1.11. *Network.* "Network" or collectively "Networks" means one or more of the neutral-host, protocol-agnostic, fiber-based optical converter networks operated by Crown Castle to serve its wireless carrier customers in the Township.

1.12. *Public Way.* "Public Way" means the space in, upon, above, along, across, and over the public streets, roads, highways, lanes, courts, ways, alleys, boulevards, sidewalks, bicycle lanes, and places, including all public utility easements and public service easements as the same now or may hereafter exist, that are under the jurisdiction of the Township. This term shall not include state or federal rights of way or any property owned by any person or entity other than the Township, except as provided by applicable Laws or pursuant to an agreement between the Township and any such person or entity.

1.13. *PUC.* "PUC" means the Pennsylvania Public Utility Commission.

1.14. *Services.* "Services" means the RF transport and other telecommunications services provided through the Network by Crown Castle to its wireless carrier customers pursuant to one or more tariffs filed with and regulated by the BPU.

1.15. *Streetlight Pole.* "Streetlight Pole" shall mean any standard-design concrete, fiberglass, metal, or wooden pole used for street lighting purposes.

2. TERM. This Use Agreement shall be effective as of the Effective Date and shall extend for a term of ten (10) years commencing on the Installation Date, unless it is earlier terminated by either party in accordance with the provisions herein. The term of this Use Agreement shall be renewed automatically for three (3) successive terms of five (5) years each on the same terms and conditions as set forth herein,

unless Crown Castle notifies the Township of its intention not to renew not less than thirty (30) calendar days prior to commencement of the relevant renewal term.

3. SCOPE OF USE AGREEMENT. Any and all rights expressly granted to Crown Castle under this Use Agreement, which shall be exercised at Crown Castle's sole cost and expense, shall be subject to the prior and continuing right of the Township under applicable Laws to use any and all parts of the Public Way exclusively or concurrently with any other person or entity and shall be further subject to all deeds, easements, dedications, conditions, covenants, restrictions, encumbrances, and claims of title of record which may affect the Public Way. Nothing in this Use Agreement shall be deemed to grant, convey, create, or vest in Crown Castle a real property interest in land, including any fee, leasehold interest, or easement. Any work performed pursuant to the rights granted under this Use Agreement shall be subject to the reasonable prior review and approval of the Township except that it is agreed that no zoning or planning board permit, variance, conditional use permit or site plan permit, or their equivalent under the Township's ordinances, codes or laws, shall be required for the installation of Crown Castle's Equipment installed in the Public Way and/or on Municipal Facilities, unless such a process has been required for the placement of all communications facilities and equipment in the Public Way by all other telecommunications providers, including but not limited to the ILEC and local cable provider(s).

3.1. *Attachment to Municipal Facilities.* The Township hereby authorizes and permits Crown Castle to enter upon the Public Way and to locate, place, attach, install, operate, maintain, control, remove, reattach, reinstall, relocate, and replace Equipment in or on Municipal Facilities for the purposes of operating the Network and providing Services. In addition, subject to the provisions of § 4.5 below, Crown Castle shall have the right to draw electricity for the operation of the Equipment from the power source associated with each such attachment to Municipal Facilities.

3.2. *Attachment to Third-Party Property.* Subject to obtaining the permission of the owner(s) of the affected property, the Township hereby authorizes and permits Crown Castle to enter upon the Public Way and to attach, install, operate, maintain, remove, reattach, reinstall, relocate, and replace such number of Equipment in or on poles or other structures owned by public utility companies or other property owners located within the Public Way as may be permitted by the public utility company or property owner, as the case may be. Where third-party property is not available for attachment of Equipment, Crown Castle may install its own utility poles in the Public Way, consistent with the requirements that the Township imposes on similar installations made by other utilities that use and occupy the Public Way.

3.3. *Preference for Municipal Facilities.* In any situation where Crown Castle has a choice of attaching its Equipment to either Municipal Facilities or third-party-owned property in the Public Way, Crown Castle agrees to attach to the Municipal Facilities, provided that (i) such Municipal Facilities are at least equally suitable functionally for the operation of the Network and (ii) the rental fee and installation costs associated with such attachment over the length of the term are equal to or less than the fee or cost to Crown Castle of attaching to the alternative third-party-owned property.

3.4. *No Interference.* Crown Castle in the performance and exercise of its rights and obligations under this Use Agreement shall not interfere in any manner with the existence and operation of any and all public and private rights of way, sanitary sewers, water mains, storm drains, gas mains, poles, aerial and underground electrical and telephone wires, electroliers, cable television, and other telecommunications, utility, or municipal property, without the express written approval of the owner or owners of the affected property or properties, except as permitted by applicable Laws or this Use Agreement. The Township agrees to require the inclusion of the same or a similar prohibition on

interference as that stated above in all agreements and franchises the Township may enter into after the Effective Date with other information or communications providers and carriers.

**3.5.** *Compliance with Laws.* Crown Castle shall comply with all applicable Laws in the exercise and performance of its rights and obligations under this Use Agreement.

4. COMPENSATION; UTILITY CHARGES. Crown Castle shall be solely responsible for the payment of all lawful Fees in connection with Crown Castle's performance under this Use Agreement, including those set forth below.

**4.1.** *Annual Fee.* In order to compensate the Township for Crown Castle's entry upon and deployment within the Public Way and as compensation for the use of Municipal Facilities, Crown Castle shall pay to the Township an annual fee (the "Annual Fee") in the amount of Five Hundred Dollars ($500.00) for the use of each Municipal Facility, if any, upon which Equipment has been installed pursuant to this Use Agreement. The aggregate Annual Fee with respect to each year of the term shall be an amount equal to the amount of Municipal Facilities upon which Equipment has been installed on during the preceding twelve (12) months multiplied by the Annual Fee, prorated as appropriate, and shall be due and payable not later than forty five (45) days after each anniversary of the Effective Date. The Township represents and covenants that the Township owns all Municipal Facilities for the use of which it is collecting from Crown Castle the Annual Fee pursuant to this § 4.1.

**4.1.1.** *CPI Adjustment.* Effective commencing on the fifth (5th) anniversary of the Installation Date and continuing on each fifth (5th) anniversary thereafter during the term, the Annual Fee with respect to the ensuing five year period shall be adjusted by a percentage amount equal to the percentage change in the U.S. Department of Labor, Bureau of Labor Statistics Consumer Price Index (All Items, All Urban Consumers, 19821984=100) which occurred during the previous five year period for the New York-Northern Pennsylvania-Long Island, NY-NJ-PA Metropolitan Statistical Area (MSA).

**4.2.** *Right-of-Way Use Fee.* In order to compensate the Township for Crown Castle's entry upon and deployment of Equipment within the Public Way, Crown Castle shall pay to the Township, on an annual basis, an amount equal to five percent (5%) of Adjusted Gross Revenues (the "Right-of-Way Fee"). The Right-of-Way Fee shall be payable for the period commencing with the Effective Date and ending on the date of termination of this Use Agreement. Crown Castle shall make any payment of the Right-of-Way Fee that may be due and owing within forty-five (45) days after the first anniversary of the Effective Date and within the same period after each subsequent anniversary of the Effective Date. Within forty five (45) days after the termination of this Use Agreement, the Right-of-Way Fee shall be paid for the period elapsing since the end of the last calendar year for which the Right-of-Way Fee has been paid. Crown Castle shall furnish to the Township with each payment of the Right-of-Way Fee a statement, executed by an authorized officer of Crown Castle or his or her designee, showing the amount of Adjusted Gross Revenues for the period covered by the payment. If Crown Castle discovers any error in the amount of compensation due, the Township shall be paid within thirty (30) days of discovery of the error or determination of the correct amount. Any overpayment to the Township through error or otherwise shall be refunded or offset against the next payment due. Acceptance by the Township of any payment of the Right-of-Way Fee shall not be deemed to be a waiver by the Township of any breach of this Use Agreement occurring prior thereto, nor shall the acceptance by the Township of any such payments preclude the Township from later establishing that a larger amount was actually due or from collecting any balance due to the Township.

**4.3.** *Accounting Matters.* Crown Castle shall keep accurate books of account at its principal office in Canonsburg, PA, or such other location of its choosing for the purpose of determining the amounts due to the Township under §§ 4.1 and 4.2 above. The Township may inspect Crown Castle's books of account relative to the Township at any time during regular business hours on thirty (30) days' prior written notice and may audit the books from time to time at the Township's sole expense, but in each case only to the extent necessary to confirm the accuracy of payments due under § 4.1 above. The Township agrees to hold in confidence any nonpublic information it learns from Crown Castle to the fullest extent permitted by Law.

**4.4.** *Electricity Charges.* Crown Castle shall be solely responsible for the payment of all electrical utility charges to the applicable utility company based upon the Equipment' usage of electricity and applicable tariffs.

5.   CONSTRUCTION. Crown Castle shall comply with all applicable federal, State, and Township codes, specifications, and requirements, if any, related to the construction, installation, operation, maintenance, and control of Crown Castle's Equipment installed in the Public Way and on Municipal Facilities in the Township. Crown Castle shall not attach, install, maintain, or operate any Equipment in or on the Public Way and/or on Municipal Facilities without the prior approval of the Township for each location.

**5.1.** *Obtaining Required Permits.* If the attachment, installation, operation, maintenance, or location of the Equipment in the Public Way shall require any permits, Crown Castle shall, if required under applicable Township ordinances, apply for the appropriate permits and pay any standard and customary permit fees, so long as the permit fees and process that the Township requests of Crown Castle are functionally equivalent to the fees and the process that are applied to the ILEC and/or the cable provider(s). In addition, the Township agrees to process applications, if required, pursuant to the terms of and within the timeframes provided by the FCC's Declaratory Ruling, WT Docket No. 08-165, FCC 09-99, November 18, 2009.

**5.1.1.** *Modifications and Colocations.* The Township agrees to process applications for upgrades, modifications, colocations and other applicable requests, if application is required, pursuant to the terms of Section 6409 of the Middle Class Tax Relief and Job Creation Act of 2012 (the "Spectrum Act") and the terms and timeframes provided by the FCC's Report and Order, WT Docket No. 13-238, FCC 14-153, October 17, 2014, as respectively applicable.

**5.2.** *Relocation and Displacement of Equipment.* Crown Castle understands and acknowledges that the Township may require Crown Castle to relocate one or more of its Equipment installations. Crown Castle shall at the Township's direction relocate such Equipment at Crown Castle's sole cost and expense, whenever the Township reasonably determines that the relocation is needed for any of the following purposes: (a) if required for the construction, completion, repair, relocation, or maintenance of a Township project; (b) because the Equipment is interfering with or adversely affecting proper operation of Township owned light poles, traffic signals, or other Municipal Facilities; or (c) to protect or preserve the public health or safety. In any such case, the Township shall use its best efforts to afford Crown Castle a reasonably equivalent alternate location. If Crown Castle shall fail to relocate any Equipment as requested by the Township within a reasonable time under the circumstances in accordance with the foregoing provision, the Township shall be entitled to relocate the Equipment at Crown Castle's sole cost and expense, without further notice to Crown Castle. To the extent the Township has actual knowledge thereof, the Township will attempt promptly to inform Crown Castle of the displacement or removal of any pole on which any Equipment is located.

**5.3. *Damage to Public Way.*** Whenever the removal or relocation of Equipment is required or permitted under this Use Agreement, and such removal or relocation shall cause the Public Way to be damaged, Crown Castle, at its sole cost and expense, shall promptly repair and return the Public Way in which the Equipment are located to a safe and satisfactory condition in accordance with applicable Laws, normal wear and tear excepted. If Crown Castle does not repair the site as just described, then the Township shall have the option, upon fifteen (15) days' prior written notice to Crown Castle, to perform or cause to be performed such reasonable and necessary work on behalf of Crown Castle and to charge Crown Castle for the proposed costs to be incurred or the actual costs incurred by the Township at the Township's standard rates. Upon the receipt of a demand for payment by the Township, Crown Castle shall promptly reimburse the Township for such costs.

6. INDEMNIFICATION AND WAIVER. Crown Castle agrees to indemnify, defend, protect, and hold harmless the Township, its council members, officers, and employees from and against any and all claims, demands, losses, damages, liabilities, fines, charges, penalties, administrative and judicial proceedings and orders, judgments, and all costs and expenses incurred in connection therewith, including reasonable attorney's fees and costs of defense (collectively, the "Losses") directly or proximately resulting from Crown Castle's activities undertaken pursuant to this Use Agreement, except to the extent arising from or caused by the negligence or willful misconduct of the Township, its council or board members, officers, elected trustees, employees, agents, or contractors.

**6.1. *Waiver of Claims.*** Crown Castle waives any and all claims, demands, causes of action, and rights it may assert against the Township on account of any loss, damage, or injury to any Equipment or any loss or degradation of the Services as a result of any event or occurrence which is beyond the reasonable control of the Township.

**6.2. *Limitation of the Township's Liability.*** Except as provided for above, the Township shall be liable only for the cost of repair to damaged Equipment arising from the negligence or willful misconduct of the Township, its employees, agents, or contractors

**6.3. *Waiver of Punitive and Consequential Damages.*** Both parties hereby waive the right to recover punitive or consequential damages from the other party.

7. INSURANCE. Crown Castle shall obtain and maintain at all times during the term of this Use Agreement Commercial General Liability insurance protecting Crown Castle in an amount not less than One Million Dollars ($1,000,000) per occurrence (combined single limit), including bodily injury and property damage, and in an amount not less than Two Million Dollars ($2,000,000) general annual aggregate and Two Million Dollars ($2,000,000) products-competed operations aggregate and Commercial Automobile Liability insurance in an amount not less than One Million Dollars ($1,000,000) per occurrence (combined single limit), including bodily injury and property damage. The Commercial General Liability insurance policy shall name the Township, its elected officials, officers, and employees as additional insureds as respects any covered liability arising out of Crown Castle's performance of work under this Use Agreement. Coverage shall be in an occurrence form and in accordance with the limits and provisions specified herein. Claims-made policies are not acceptable. Crown Castle shall be responsible for notifying the Township in writing of any cancellation, except for non-payment of premium, or changes in the occurrence or aggregate limits set forth above at least ten (10) days' prior to such change or cancellation.

**7.1. *Filing of Certificates and Endorsements.*** Prior to the commencement of any work pursuant to this Use Agreement, Crown Castle shall file with the Township the required original certificate(s) of insurance with endorsements, which shall state the following:

(a) the policy number; name of insurance company; name and address of the agent or authorized representative; name and address of insured; project name; policy expiration date; and specific coverage amounts;

(b) that Crown Castle's Commercial General Liability insurance policy is primary as respects any other valid or collectible insurance that the Township may possess, including any self insured retentions the Township may have; and any other insurance the Township does possess shall be considered excess insurance only and shall not be required to contribute with this insurance; and

(c) that Crown Castle's Commercial General Liability insurance policy waives any right of recovery the insurance company may have against the Township.

The certificate(s) of insurance with notices shall be mailed to the Township at the address specified in § 8 below.

**7.2.** *Workers' Compensation Insurance.* Crown Castle shall obtain and maintain at all times during the term of this Use Agreement statutory workers' compensation and employer's liability insurance in an amount not less than One Million Dollars ($1,000,000) and shall furnish the Township with a certificate showing proof of such coverage.

**7.3.** *Insurer Criteria.* Any insurance provider of Crown Castle shall be admitted and authorized to do business in the State of Pennsylvania and shall carry a minimum rating assigned by *A.M. Best & Company's Key Rating Guide* of "A" Overall and a Financial Size Category of "X" (*i.e.,* a size of $500,000,000 to $750,000,000 based on capital, surplus, and conditional reserves). Insurance policies and certificates issued by non-admitted insurance companies are not acceptable.

**7.4.** *Severability of Interest.* Any self-insured retentions must be stated on the certificate(s) of insurance, which shall be sent to and approved by the Township. "Severability of interest" or "separation of insureds" clauses shall be made a part of the Commercial General Liability and Commercial Automobile Liability policies.

8. NOTICES. All notices which shall or may be given pursuant to this Use Agreement shall be in writing and delivered personally or transmitted (a) through the United States mail, by registered or certified mail, postage prepaid; (b) by means of prepaid overnight delivery service; or (c) by facsimile or email transmission, if a hard copy of the same is followed by delivery through the U. S. mail or by overnight delivery service as just described, addressed as follows:

*if to the Township:*

TOWNSHIP OF ABINGTON
Township Manager
Township of Abington
*1176 Old York Road, Abington PA 19001*

*if to Crown Castle:*

CROWN CASTLE NG EAST LLC
c/o Crown Castle USA Inc.
2000 Corporate Drive
Canonsburg, PA 15317-8564
Attn: General Counsel, Legal Department

*with a copy which shall not constitute legal notice to:*

CROWN CASTLE NG EAST LLC
2000 Corporate Drive
Canonsburg, PA 15317-8564
Attn: SCN Contracts Management

8.1. *Date of Notices; Changing Notice Address.* Notices shall be deemed given upon receipt in the case of personal delivery, three (3) days after deposit in the mail, or the next business day in the case of facsimile, email, or overnight delivery. Either party may from time to time designate any other address for this purpose by written notice to the other party delivered in the manner set forth above.

9. TERMINATION. This Use Agreement may be terminated by either party upon forty five (45) days' prior written notice to the other party upon a default of any material covenant or term hereof by the other party, which default is not cured within forty five (45) days of receipt of written notice of default (or, if such default is not curable within forty five (45) days, if the defaulting party fails to commence such cure within forty five (45) days or fails thereafter diligently to prosecute such cure to completion), provided that the grace period for any monetary default shall be ten (10) days from receipt of notice. Except as expressly provided herein, the rights granted under this Use Agreement are irrevocable during the term.

10. ASSIGNMENT. This Use Agreement shall not be assigned by Crown Castle without the express written consent of the Township, which consent shall not be unreasonably withheld, conditioned, or delayed. Notwithstanding the foregoing, the transfer of the rights and obligations of Crown Castle to a parent, subsidiary, or other affiliate of Crown Castle or to any successor in interest or entity acquiring fifty-one percent (51%) or more of Crown Castle's stock or assets (collectively "Exempted Transfers") shall not be deemed an assignment for the purposes of this Use Agreement and therefore shall not require the consent of the Township, provided that Crown Castle reasonably demonstrates to the Township's lawfully empowered designee the following criteria (collectively the "Exempted Transfer Criteria"): (i) such transferee will have a financial strength after the proposed transfer at least equal to that of Crown Castle immediately prior to the transfer; (ii) any such transferee assumes all of Crown Castle's obligations hereunder; and (iii) the experience and technical qualifications of the proposed transferee, either alone or together with Crown Castle's management team, in the provision of telecommunications or similar services, evidences an ability to operate the Network. Crown Castle shall give at least thirty (30) days' prior written notice (the "Exempted Transfer Notice") to the Township of any such proposed Exempted Transfer and shall set forth with specificity in such Exempted Transfer Notice the reasons why Crown Castle believes the Exempted Transfer Criteria have been satisfied. The Township shall have a period of thirty (30) days (the "Exempted Transfer Evaluation Period") from the date that Crown Castle gives the Township its Exempted Transfer Notice to object in writing to the adequacy of the evidence contained therein. Notwithstanding the foregoing, the Exempted Transfer Evaluation Period shall not be deemed to have commenced until the Township

has received from Crown Castle any and all additional information the Township may reasonably require in connection with its evaluation of the Exempted Transfer Criteria as set forth in the Exempted Transfer Notice, so long as the Township gives Crown Castle notice in writing of the additional information the Township requires within fifteen (15) days after the Township's receipt of the original Exempted Transfer Notice. If the Township fails to act upon Crown Castle's Exempted Transfer Notice within the Exempted Transfer Evaluation Period (as the same may be extended in accordance with the foregoing provisions), such failure shall be deemed an affirmation by the Township that Crown Castle has in fact established compliance with the Exempted Transfer Criteria to the Township's satisfaction.

11. MISCELLANEOUS PROVISIONS. The provisions which follow shall apply generally to the obligations of the parties under this Use Agreement.

   11.1.   *Environmental Review.*   agrees to comply with any applicable rules pertaining to environmental quality review promulgated by the Pennsylvania Department of Environmental Protection and to submit any required environmental forms for the Township's review and approval, so long as the review that the Township requires is the same that the Township requires of all other telecommunications providers, including but not limited to the ILEC and the cable provider(s), for their installation of any facilities or equipment in the Public Way.

   11.2.   *Nonexclusive Use.*   Crown Castle understands that this Use Agreement does not provide Crown Castle with exclusive use of the Public Way or any Municipal Facility and that the Township shall have the right to permit other providers of communications services to install equipment or devices in the Public Way and on Municipal Facilities. The Township agrees promptly to notify Crown Castle of the receipt of a proposal for the installation of communications equipment or devices in the Public Way or on Municipal Facilities. In addition, the Township agrees to advise other providers of communications services of the presence or planned deployment of the Equipment in the Public Way and/or on Municipal Facilities.

   11.3.   *Waiver of Breach.*   The waiver by either party of any breach or violation of any provision of this Use Agreement shall not be deemed to be a waiver or a continuing waiver of any subsequent breach or violation of the same or any other provision of this Use Agreement.

   11.4.   *Severability of Provisions.*   If any one or more of the provisions of this Use Agreement shall be held by court of competent jurisdiction in a final judicial action to be void, voidable, or unenforceable, such provision(s) shall be deemed severable from the remaining provisions of this Use Agreement and shall not affect the legality, validity, or constitutionality of the remaining portions of this Use Agreement. Each party hereby declares that it would have entered into this Use Agreement and each provision hereof regardless of whether any one or more provisions may be declared illegal, invalid, or unconstitutional.

   11.5.   *Contacting Crown Castle.*   Crown Castle shall be available to the staff employees of any Township department having jurisdiction over Crown Castle's activities twenty four (24) hours a day, seven (7) days a week, regarding problems or complaints resulting from the attachment, installation, operation, maintenance, or removal of the Equipment. The Township may contact by telephone the network control center operator at telephone number 888-632-0931 regarding such problems or complaints.

   11.6.   *Governing Law; Jurisdiction.*   This Use Agreement shall be governed and construed by and in accordance with the laws of the Commonwealth of Pennsylvania, without reference to its conflicts of law principles. If suit is brought by a party to this Use Agreement, the parties agree that trial of

such action shall be vested exclusively in the state courts of Pennsylvania, in the Township where the Township is incorporated or in the United States District Court for the District of Pennsylvania.

**11.7.** *Attorneys' Fees.* Should any dispute arising out of this Use Agreement lead to litigation, the prevailing party shall be entitled to recover its costs of suit, including (without limitation) reasonable attorneys' fees.

**11.8.** *Consent Criteria.* In any case where the approval or consent of one party hereto is required, requested or otherwise to be given under this Use Agreement, such party shall not unreasonably delay, condition, or withhold its approval or consent.

**11.9.** *Representations and Warranties.* Each of the parties to this Use Agreement represents and warrants that it has the full right, power, legal capacity, and authority to enter into and perform the parties' respective obligations hereunder and that such obligations shall be binding upon such party without the requirement of the approval or consent of any other person or entity in connection herewith, except as provided in § 3.2 above.

**11.10.** *Amendment of Use Agreement.* This Use Agreement may not be amended except pursuant to a written instrument signed by both parties.

**11.11.** *Entire Agreement.* This Use Agreement contains the entire understanding between the parties with respect to the subject matter herein. There are no representations, agreements, or understandings (whether oral or written) between or among the parties relating to the subject matter of this Use Agreement which are not fully expressed herein.

In witness whereof, and in order to bind themselves legally to the terms and conditions of this Use Agreement, the duly authorized representatives of the parties have executed this Use Agreement as of the Effective Date.

*Township:*          **TOWNSHIP OF Abington**, a Pennsylvania municipal corporation

By: _____

Michael LeFevre
Its:     Township Manager

Date: _____, 2016

*Crown Castle:*          **CROWN CASTLE NG EAST LLC**, a Delaware limited liability company

By: _____

Lewis Kessler
Its:     Vice President – DAS and Small Cell Networks

Date: _____, 2016

# Delaware

PAGE  1

### The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT
COPY OF THE CERTIFICATE OF AMENDMENT OF "NEXTG NETWORKS OF NY,
INC.", CHANGING ITS NAME FROM "NEXTG NETWORKS OF NY, INC." TO
"CROWN CASTLE NG EAST INC.", FILED IN THIS OFFICE ON THE THIRD
DAY OF MAY, A.D. 2012, AT 7:27 O'CLOCK P.M.

A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE
NEW CASTLE COUNTY RECORDER OF DEEDS.

Jeffrey W. Bullock, Secretary of State

AUTHENTICATION: 9549758

DATE: 05-04-12

3587157  8100

120509186

You may verify this certificate online
at corp.delaware.gov/authver.shtml

State of Delaware
Secretary of State
Division of Corporations
Delivered 07:34 PM 05/03/2012
FILED 07:27 PM 05/03/2012
SRV 120509186 - 3587157 FILE

CERTIFICATE OF AMENDMENT

OF

CERTIFICATE OF INCORPORATION

OF

NEXTG NETWORKS OF NY, INC.

NextG Networks of NY, Inc., a corporation organized and existing under and by virtue of the General Corporation Law of the State of Delaware (the "Company") DOES HEREBY CERTIFY:

FIRST: That the Board of Directors of said Corporation by Unanimous Written Consent has adopted a resolution that the Corporation amend Article 1 of its Certificate of Incorporation as on file with the Secretary of State of Delaware to read in its entirety as set forth below:

    1. This corporation's name is Crown Castle NG East Inc. (the "Company").

SECOND: That the amendment has been consented to and authorized by all the holders of the issued and outstanding capital stock of the Corporation by written consent given in accordance with the provisions of section 228 of the General Corporation Law of the State of Delaware.

THIRD: That the aforesaid amendment was duly adopted in accordance with the applicable provisions of Section 242 of the General Corporation Law of the State of Delaware.

    IN WITNESS WHEREOF, said NextG Networks of NY, Inc. has caused this Certificate to be signed this 3rd day of May, 2012.

NextG Networks of NY, Inc.

By _____

E. Blake Hawk
Executive Vice President

# Delaware

PAGE 1

## The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE DO HEREBY CERTIFY THAT THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF CONVERSION OF A DELAWARE CORPORATION UNDER THE NAME OF "CROWN CASTLE NG EAST INC." TO A DELAWARE LIMITED LIABILITY COMPANY, CHANGING ITS NAME FROM "CROWN CASTLE NG EAST INC." TO "CROWN CASTLE NG EAST LLC", FILED IN THIS OFFICE ON THE TWENTY-FOURTH DAY OF DECEMBER, A.D. 2013, AT 1:43 O'CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE EFFECTIVE DATE OF THE AFORESAID CERTIFICATE OF CONVERSION IS THE THIRTY-FIRST DAY OF DECEMBER, A.D. 2013, AT 11:59 O'CLOCK P.M.

Jeffrey W. Bullock, Secretary of State

3587157   8100V

131473409

AUTHENTICATION: 1021797

DATE: 12-30-13

You may verify this certificate online at corp.delaware.gov/authver.shtml

State of Delaware
Secretary of State
Division of Corporations
Delivered 01:43 PM 12/24/2013
FILED 01:43 PM 12/24/2013
SRV 131473409 - 3587157 FILE

Certificate of Conversion
of
Crown Castle NG East Inc.
to
Crown Castle NG East LLC

Pursuant to Section 18-214 of the Limited Liability Company Act

Crown Castle NG East Inc., a Delaware corporation ("Company"), does hereby certify that:

1. **Name of Corporation to be Converted.** The name of the Company immediately prior to conversion is Crown Castle NG East Inc., and the name under which the Company was originally formed was NextG Networks of NY, Inc.

2. **Original Date and Jurisdiction of Incorporation.** The original certificate of incorporation of the Company was filed on November 4, 2002 with the Secretary of State of the State of Delaware.

3. **Name of Limited Liability Company.** The name of the limited liability company into which the Company will be converted is Crown Castle NG East LLC.

4. **Approval of Conversion.** This conversion has been approved by the board of directors and sole stockholder of the Company.

5. **Effective Time.** The conversion of the Company to a limited liability company shall be effective at 11:59 p.m. on December 31, 2013.

IN WITNESS WHEREOF, the undersigned has executed this Certificate of Conversion as of December 19, 2013.

Crown Castle NG East Inc.

By: _____

E. Blake Hawk
Executive Vice President   19 Dec 2013

# Delaware

PAGE   2

## The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE DO HEREBY CERTIFY THAT THE ATTACHED IS A TRUE AND CORRECT COPY OF CERTIFICATE OF FORMATION OF "CROWN CASTLE NG EAST LLC" FILED IN THIS OFFICE ON THE TWENTY-FOURTH DAY OF DECEMBER, A.D. 2013, AT 1:43 O'CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE EFFECTIVE DATE OF THE AFORESAID CERTIFICATE OF FORMATION IS THE THIRTY-FIRST DAY OF DECEMBER, A.D. 2013, AT 11:59 O'CLOCK P.M.

Jeffrey W. Bullock, Secretary of State

AUTHENTICATION: 1021797

DATE: 12-30-13

3587157   8100V

131473409

You may verify this certificate online
at corp.delaware.gov/authver.shtml

State of Delaware
Secretary of State
Division of Corporations
Delivered 01:43 PM 12/24/2013
FILED 01:43 PM 12/24/2013
SRV 131473409 - 3587157 FILE

Certificate of Formation

of

Crown Castle NG East LLC

This Certificate of Formation of Crown Castle NG East LLC ("LLC"), dated as of December 19, 2013, has been duly executed and is being filed by E. Blake Hawk, as an authorized person, to form a limited liability company under the Delaware Limited Liability Company Act (6 Del.C. §18-101, et seq.)

1. The name of the limited liability company is Crown Castle NG East LLC.

2. The address of the registered office of the LLC in the State of Delaware is c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, in the City of Wilmington, County of New Castle.

3. The name and address of the registered agent for service of process of the LLC in the State of Delaware is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, in the City of Wilmington, County of New Castle, Delaware.

4. This Certificate of Formation shall be effective at 11:59 p.m. on December 31, 2013.

IN WITNESS WHEREOF, the undersigned has executed this Certificate of Formation of Crown Castle NG East LLC as of the date first written above.

E. Blake Hawk, Authorized Person
19 Dec 2013

[[NYCORP:5234732v2:3636W:12/07/10-10:26 a]]

**Franchise Agreement**

1.   **Purpose and Intent**

THIS FRANCHISE AGREEMENT is made and entered into as of the effective date of _September 11_, 2008, by and between the **Township of Abington**, a Township duly organized under the applicable laws of the State of Pennsylvania, (hereinafter referred to as "Issuing Authority") and **NextG Networks of NY, Inc.**, d/b/a NextG Networks East, (hereinafter referred to as "Franchisee"); and

WHEREAS, the Issuing Authority, pursuant to federal law, state statutes, and local ordinances, is authorized to grant one or more non-exclusive franchises to construct, operate, and maintain a telecommunications system within the municipal boundaries of the Issuing Authority ("Franchise Area"); and,

WHEREAS, the Issuing Authority has considered and analyzed the plans of the Franchisee for the construction and operation of a telecommunication system and found the same to be adequate, feasible, and in the public interest; and,

WHEREAS, the Issuing Authority and the Franchisee have agreed to be bound by the conditions hereinafter set forth;

NOW, THEREFORE, in consideration of the foregoing and the mutual promises contained herein, the parties agree as follows:

2.   **Grant of Authority**

a.   There is hereby granted by the Issuing Authority, which represents and warrants that it has the requisite power and authority to do so, to the Franchisee, for a period of ten (10) years from and after the effective date of this Agreement (the "Term"), the non-exclusive right and franchise to construct, use, operate, own, and maintain a telecommunication system subject to applicable local law. The term of this Franchise shall be renewed automatically for three (3) successive terms of five (5) years each on the same terms and conditions as set forth herein, unless Franchisee notifies the Issuing Authority of its intention not to renew not less than thirty (30) calendar days prior to commencement of the relevant renewal term.

b.   Without reducing its police powers to adopt and enforce ordinances necessary to the health, safety, and welfare of the public, the Issuing Authority hereby grants to Franchisee authority to use Issuing Authority's public utility easements and rights-of-way for the purposes of this Agreement, and this franchise shall be construed to authorize the construction of a telecommunications system over or under such rights-of-way and easements in accordance with applicable federal and state law.

3.   **Authority not Exclusive:** This Franchise and the grant of authority conferred in Section 2 above are not exclusive, pursuant to the Telecommunications Ordinance. The Franchisee shall respect the rights and property of the Issuing Authority and other authorized users of easements and rights-of-way. Except as otherwise required by applicable law, disputes between Franchisee and parties other than the Issuing Authority

over the use, pursuant to this Agreement, of the easements and rights-of-ways shall be submitted to the Issuing Authority for resolution.

4     **Amendment of Franchise Agreement:**   It is the intent of the parties that this Agreement may be amended from time to time, but only upon mutual agreement Each party agrees to bargain in good faith with the other party upon the initiation of such proposed amendments

5.    **Fees and Compensation:**   As provided in Article 6, Section 7, of Township Ordinance #1771, the Issuing Authority agrees to accept an annual franchise fee of two hundred fifty dollars ($250.00), since the Issuing Authority is not expected to incur significant cost "in connection with reviewing, inspecting, and supervising the use and occupancy of the public ways" given the nature and minimal impact of Franchise's installations on the public ways. Notwithstanding any provision of the Telecommunications Ordinance to the contrary, including Article 6, Section 2(c)7, no other recurring fee shall apply.

6.    **Construction of the Telecommunications System**

   a.    Permits Required: Franchisee shall not construct, reconstruct, or relocate the telecommunication system (or parts thereof) within the public ways or on public property unless permits have been obtained in accordance with the Telecommunications Ordinance.

   b     Plan Review: Franchisee shall not commence construction unless maps and other engineering details are provided, in accordance with the Telecommunications Ordinance

   c.    Construction Standards: Franchisee shall comply with construction standards as stipulated in the Telecommunications Ordinance. In addition, any employee, contractor, vendor or agent assigned to work on the installation, maintenance, or repair of system equipment must be properly licensed under the Commonwealth of Pennsylvania laws and all local ordinances.

   d     Inspections: The Franchisee shall permit the Issuing Authority to conduct inspections of construction or installation being performed in accordance with the Telecommunications Ordinance.

   e.    Scheduling: The Franchisee shall provide the Issuing Authority advance notice before beginning construction or installation, pursuant to the Telecommunications Ordinance.

   f.    Restoration of Property: At its own cost and expense, Franchisee shall restore any Public Way disturbed by Franchisee's activities, pursuant to the Telecommunications Ordinance.

   g.    Maintenance of Facilities: The Franchisee shall maintain its facilities pursuant to the Telecommunications Ordinance.

   h.    Removal of Facilities: The Franchisee shall remove property and facilities under conditions specified in the Telecommunications Ordinance.

    i.     Mapping: The Franchisee shall keep maps and records pursuant to the Telecommunications Ordinance.

7.    **Tree Trimming:**  Upon the express written permission of the Issuing Authority, the Franchisee may trim trees or other vegetation owned by the Issuing Authority or encroaching upon the public right-of-way to prevent their branches or leaves from touching or otherwise interfering with its wires. All trimming or pruning shall be at the sole cost of the Franchisee and under the supervision of the Issuing Authority

8.    **Reports**

    a.    Within thirty (30) days of receipt, the Franchisee shall submit to the Issuing Authority copies of all decisions, correspondence and actions by any federal, state, and local courts, regulatory agencies, and other government bodies relating to its telecommunications operations within the Franchise area. This subsection will also apply to legal actions initiated by the Franchisee. The Issuing Authority shall submit similar information to the Franchisee.

    b.    The Franchisee shall make available to the Issuing Authority such other information or reports pertinent to enforcing the terms of the Franchise as the Issuing Authority reasonably may request upon reasonable advance written notice.

    c.    The Franchisee shall allow the Issuing Authority to make inspections of any of the Franchisee's facilities and equipment at any time, upon not less than three (3) days written notice, except in the case of emergency.

9.    **Indemnity and Insurance:**  The Franchisee shall comply with applicable sections of the Telecommunications Ordinance governing indemnity and insurance. However, the Franchisee reserves the right to object to the enforcement or application of the applicable sections of the Telecommunications Ordinance governing indemnity and insurance in any and all cases, if any, in which the Issuing Authority seeks to enforce or apply the indemnity or insurance provisions of the Telecommunications Ordinance.

10.    **Franchise Default and Remedies**

    a.    If Franchisee fails to materially comply with the Agreement or Telecommunications Ordinance, Franchisee will be subject to penalties as stipulated in the Telecommunications Ordinance.

    b.    In the event of any dispute between the Franchisee and Issuing Authority regarding compliance with or any other aspect of this Agreement, both parties agree to cooperate with one another in good faith to assure as much as possible the smooth, continuous operation of the telecommunication system and the provision of service of the highest possible quality to subscribers

11.    **Compliance with Ordinance; Other Laws; Severability**

    a.    Notwithstanding any other provisions of this Agreement to the contrary, the Franchisee shall at all times comply with all lawful applicable laws and regulations of the federal, state, county, and Township governments and all

administrative agencies thereof, including but not limited to judicial orders; provided, however, that if any such federal, state, Township, or county law or other applicable regulation shall require the Franchisee to perform any service, or shall prohibit the Franchisee from performing any service, in conflict with the terms of this Agreement or of any law or regulation of the Issuing Authority, then as soon as possible following knowledge thereof, the Franchisee shall notify the Issuing Authority of the point of conflict believed to exist between such regulation or law and the laws or regulations of the Issuing Authority of this Agreement, and the Franchisee and Issuing Authority shall negotiate a reasonable accommodation to such change.

b.   If any provision of this Agreement or any related agreement is held by any court or by any federal, state, or county agency of competent jurisdiction to be invalid as conflicting with any federal, state or county law, rule or regulation now or hereinafter in effect, or is held by such court or agency to be modified in any way in order to conform to the requirements of any such law, rule or regulation, said provision shall be considered as a separate, distinct, and independent part of this or such other Agreement, and such holding shall not affect the validity and enforceability of all other provisions hereof or thereof. In the event that such law, rule, or regulation is subsequently repealed, rescinded, amended or otherwise changed so that the provision hereof or thereof which has been held invalid or modified is no longer in conflict with the law, rules, and regulations then in effect, said provision shall thereupon return to full force and effect and shall thereafter be binding on the parties hereto, provided that the Issuing Authority shall give the Franchisee sixty (60) days' written notice of such change before requiring compliance with said provision.

c.   If the Issuing Authority determines that a material provision of this Agreement or any related agreement is affected by such action of a court or of the federal, state, or county government, the Issuing Authority and Franchisee shall have the right to modify, upon mutual consent, any of the provisions hereof or in such related agreements to such reasonable extent as may be necessary to carry out the full intent and purpose of this Agreement and all related agreements.

d.   Franchisee reserves its right to object to the enforcement of any provision of the Telecommunications Ordinance, as it now exists or as it may be amended in the future.

12.   **Taxes:**   Nothing contained in this Agreement shall be construed to exempt the Franchisee from any tax levy or assessment which is or may be hereafter lawfully imposed on all entities engaged in the same business as the Franchisee.

13.   **Sale or Transfer of Franchise:**   Notwithstanding Article 7, Section 23, "Assignments or Transfers of Grant", of Township Ordinance #1771, this Agreement shall not be assigned by Franchisee without the express written consent of the Issuing Authority, which consent shall not be unreasonably withheld, conditioned, or delayed. Notwithstanding the foregoing, the transfer of the rights and obligations of Franchisee to a parent, subsidiary, or other affiliate of Franchisee or to any successor in interest or entity acquiring fifty-one percent (51%) or more of Franchisee's stock or assets (collectively "Exempted Transfers") shall not be deemed an assignment for the purposes of this Agreement and therefore shall not require the consent of the Issuing Authority.

However, Franchisee shall give the Issuing Authority prior written notice that an Exempted Transfer will be taking place. The Issuing Authority shall consent to any Transfer other than an Exempted Transfer provided that Franchisee reasonably demonstrates to the Issuing Authority's lawfully empowered designee the following criteria (collectively the "Transfer Criteria"): (i) such transferee will have a financial strength after the proposed transfer at least equal to that of Franchisee immediately prior to the transfer; (ii) any such transferee assumes all of Franchisee's obligations hereunder; and (iii) the experience and technical qualifications of the proposed transferee in the provision of telecommunications or similar services, evidences an ability to operate the Network. Franchisee shall give at least thirty (30) days' prior written notice (the "Transfer Notice") to the Issuing Authority of any proposed Transfer other than Exempted Transfers and shall set forth with specificity in such Transfer Notice the reasons why Franchisee believes the Transfer Criteria have been satisfied. The Board of Commissioners of the Issuing Authority shall have a period of thirty (30) days (the "Transfer Evaluation Period") from the date that Franchisee gives the Issuing Authority its Transfer Notice to object in writing to the adequacy of the evidence contained therein. If the Board of Commissioners of the Issuing Authority fails to act upon Franchisee's Transfer Notice within the Transfer Evaluation Period (as the same may be extended in accordance with the foregoing provisions), such failure shall be deemed an affirmation by the Board of Commissioners of the Issuing Authority that Franchisee has in fact established compliance with the Transfer Criteria to the Issuing Authority's satisfaction.

14.     **Service of Notice**

    a.     All notices required or permitted to be given to either party by the other party under any provisions of this Agreement shall be in writing and shall be deemed served:

        1.     when delivered by hand or by Federal Express or similar service to that party's address set forth below during normal business hours; or,

        2     when mailed to any other person designated by that party in writing herein to receive such notice, via certified mail, return receipt requested.

    b.     Notice shall be given to the following:

        1.     If to Issuing Authority:
            Township of Abington
            Attention: Township Manager
            1176 Old York Road
            Abington, PA 19001

        2.     If to Franchisee:
            NextG Networks of NY, Inc.
            c/o NextG Networks, Inc.
            Attention: Contracts Administration
            2216 O'Toole Avenue
            San Jose, CA 95131

15.     **Force Majeure:** Any delay, preemption, or other failure to perform caused by factors beyond the parties' reasonable control, such as an act of God, labor dispute, non-delivery

by suppliers, war, riot, technical breakdown, or government administrative or judicial order or regulation, shall not result in a default of the Agreement. Each party shall exercise its reasonable efforts to cure any such delays and the cause thereof, and performance under the terms of this Agreement shall be excused for the period of time during which such factor continues.

16    **Acknowledgment that Terms are Understood:**   The franchisee acknowledges that is has read and fully understood the terms of this agreement and agrees to be bound by the same.

17.   **Additional Provisions**

a.    **Attorneys Fees.**   Should any dispute arising out of this Agreement lead to litigation, the prevailing party shall be entitled to recover its costs of suit, including (without limitation) reasonable attorneys' fees.

b.    **Consent Criteria.**   In any case where the approval or consent of one party hereto is required, requested or otherwise to be given under this Agreement, such party shall not unreasonably delay, condition, or withhold its approval or consent.

c.    **Representations and Warranties.**   Each of the parties to this Agreement represents and warrants that it has the full right, power, legal capacity, and authority to enter into and perform the parties' respective obligations hereunder and that such obligations shall be binding upon such party without the requirement of the approval or consent of any other person or entity in connection herewith

IN WITNESS THEREOF, the parties have signed below, effective as of the Effective Date, by their duly authorized representatives.

**Township of Abington**                          **NextG Networks of NY, Inc., d/b/a NextG Networks East**

By:  _Susan W Mat, _____            By:  _____

Its:  _____            Its:  Chief Financial Officer

Attest:  _____            Attest:  _____
                                                    NETWORK REAL ESTATE SPECIALIST



2016-23932-0000   10 5 2016 2:13 PM   = 10986651
Complaint Civil Action
Rept=2016-8-03185  Fee:$270.00  Exhibit D
Mark Levy - MontCo Prothonotary

# EXHIBIT "D"

{00445486;v1}



Wayne C. Luker, President
Steven N. Kline, Vice President
Michael LeFevre, Manager
Jay W. Blumenthal, Treasurer

1176 Old York Road    Abington PA 19001-3713   Telephone: 267-536-1000

Ms. Janet Colleran
Crown Castle
3200 Horizon Drive/Suite 150
King of Prussia, Pa. 19406

August 8, 2016

Re:    Installation of equipment within the public right-of-way of in front of 1748 Pine Road,
Abington Township, Montgomery County, Pa.

Dear Ms. Colleran,

Your e-mail has been forwarded to me for a response.  Please be aware that the Code Enforcement Department of the Township of Abington does not issue permits for the installation of cellular and/or digital equipment within the public right-of-ways under the control of the Township of Abington.  However, no equipment or structures may be placed in the public right-of-way unless and until all items identified in this correspondence are satisfied.

Installations of this type of equipment on existing utility poles, located within a right-of-way under the control of the Township of Abington are addressed by way of lease agreements, entered into by both the applicant and the Township of Abington.  Abington Township Code, §154. It does appear that your predecessor in interest maintains an existing lease agreement with the Township of Abington. It is required to be amended to include the desired pole before the pole can be placed.   Lease agreements must be considered and approved by the Board of Commissioners of the Township of Abington.

Additionally, each utility pole must comply with all Abington Township Codes, including its Zoning Code.  See 47 U.S.C. 332(c)(7)(C)(ii).  The proposed use constitutes an Antenna System, which is an A5 Accessory Use.  Abington Township Code at §706.  This use is not permitted in the R-2 Residential Zoning District as proposed and will therefore require a use variance.  In addition, please note that because you propose to locate these utility poles in a residential district, or add equipment to existing poles in a residential district, the height limitations of the specific zoning district are applicable to the poles and equipment.  Kindly provide proof of compliance with this restriction, identifying the specific location of the proposed pole along with the height of the pole and any equipment, or you may seek a variance from this requirement.

The structures and equipment must also be in full compliance with Ordinance #1800, a copy of which is enclosed for your reference.  Kindly provide all information required therein along with your Zoning Hearing Board Application.

As referenced above, a lease agreement will need to be approved by the Board of Commissioners.  It is my understanding that you have submitted a draft lease agreement, which is being



reviewed by the Township Solicitor's office.  Upon completion of the review, it will be placed on an agenda for consideration by the Board of Commissioners.

If there are any questions that you may have, I can be reached at 267-536-1017.

Sincerely,

Mark A. Penecale
Planning & Zoning Officer
Township of Abington

cc:    Michael LeFevre, Abington Township Manager
       Tara Wehmeyer, Abington Township Assistant Manager
       Lawrence T. Matteo, Jr.; Director of Planning & Code Enforcement
       File Copy (2)



2016-23932-0000   10 5 2016 2:13 PM   = 10986652
Complaint Civil Action
Rcpt#2016-8-03185  Fee:$270.00  Exhibit E
Mark Levy - MontCo Prothonotary

# EXHIBIT "E"

{00445486;v1}

**Toni Lister**

| | |
|---|---|
| **From:** | Lauren Gallagher |
| **Sent:** | Wednesday, August 10, 2016 10:36 AM |
| **To:** | peter.broy@crowncastle.com; john.shive@crowncastle.com |
| **Cc:** | Michael LeFevre; Tara Wehmeyer; Larry Matteo; Mark Penecale; Michael Clarke; Noah Marlier |
| **Subject:** | RE: Pine Road Installation |
| **Attachments:** | Penecale to Colleran (00506813xC305A).pdf |

Mr. Broy and Mr. Shive,

As Mr. Penecale indicated below, this Firm serves as the Solicitor to Abington Township. In that regard, I have reviewed the information that you supplied to Mr. Penecale yesterday. For your reference, I am attaching a copy of Mr. Penecale's letter to Ms. Colleran regarding this matter. In speaking with Mr. Penecale, I understand that there may be some confusion as to the applicability of the Township's Ordinances to Crown Castle. As outlined in the letter, the Federal Telecommunications Act clearly states that providers such as Crown Castle are subject to local ordinances, including the Township's Zoning Ordinance as well as the Township's Telecommunications Ordinance. If you have additional authority that states otherwise, I would be happy to review same.

However, at this time, no equipment may be placed at the proposed location unless and until the proper permits are issued and all zoning issues have been resolved. Given the confusion, I would respectfully ask that you please confirm as soon as possible that you intend to comply with the items identified in Mr. Penecale's correspondence prior to the installation of any equipment at this or any other proposed location.

I would be happy to discuss this further, and I am in the office all day if you or your attorney would like to give me a call at 215-633-1890. Thank you for your attention.

Lauren A. Gallagher
Rudolph Clarke, LLC
Seven Neshaminy Interplex
Suite 200
Trevose, PA 19053
office: 215-633-1890
facsimile: 215-633-1830

350 Sentry Parkway East
Building 630, Suite 110-A
Blue Bell, PA 19422
Office: (484) 368-3808

www.rudolphclarke.com

This E-mail contains PRIVILEGED AND CONFIDENTIAL INFORMATION intended only for the use of the Individual(s) named above. If you are not the intended recipient of this E-mail, or the employee or agent responsible for delivering this to the intended recipient, you are hereby notified that any dissemination or copying of this E-mail is strictly prohibited. If you have received this E-mail in error, please immediately notify us by telephone at 215.633.1890 or notify us by E-mail at lgallagher@rudolphclarke.com. Also, please mail a hardcopy of the E-mail to Rudolph Clarke, LLC, Seven Neshaminy Interplex, Suite 200, Trevose, PA 19053 via the U.S. Postal Service. Thank you.

**From:** Mark Penecale [mailto:mpenecale@abington.org]
**Sent:** Tuesday, August 09, 2016 9:25 AM
**To:** Lauren Gallagher
**Cc:** Michael LeFevre; Tara Wehmeyer; Larry Matteo; peter.broy@crowncastle.com; john.shive@crowncastle.com
**Subject:** Pine Road Installation

Dear Lauren,

Tara & I met this morning with Peter Broy & John Shive from Crown Castle. They are moving forward with the installation of equipment on the PECO pole on Pine Road. Attached you will find a copy of the Franchise Agreement, an un-number section of what I believe is from the Federal Telecommunication Act and copy of the plans for the Pine Road installation. They believe they are exempt from the requirements within the Zoning Ordinance. Please review the attached and forward any comment and/or directive to me. I have cc:ed both Mr. Broy & Mr. Shive on this email, for the sole purpose of them letting them know we are moving this forward today. Please delete them from the e-mail train on any reply you send out.

Sincerely,
MAPenecale

RUDOLPH CLARKE, LLC
BY:  Michael P. Clarke, Esquire
Attorney I.D. No. 63378
BY:  Noah Marlier, Esquire
Attorney I.D. No. 308985
Seven Neshaminy Interplex
Suite 200
Trevose, PA-19053                         **ATTORNEYS FOR ABINGTON TOWNSHIP**
(215) 633-1890

---

| ABINGTON TOWNSHIP | : | |
| --- | --- | --- |
| Plaintiff, | : | **COURT OF COMMON PLEAS** |
| | : | **MONTGOMERY COUNTY, PA** |
| v. | : | **CIVIL ACTION IN EQUITY** |
| CROWN CASTLE NG EAST LLC | : | NO. *16-23932* |
| Defendant. | : | |

---

### PETITION FOR PRELIMINARY INJUNCTION

Plaintiff, the Township of Abington, Montgomery County, Pennsylvania ("Township"),

by and through its attorneys Michael P. Clarke, Esquire and Noah Marlier, Esquire of Rudolph

Clarke, LLC,  petitions this Honorable Court for a preliminary injunction pursuant to Pa.R.C.P.

1531 and sets forth the following in support thereof:

1.  The Township is a duly organized township of the first class, with principal offices

located at 1176 Old York Road, Abington, PA 19001.

2.  The Township has filed a verified Complaint in Equity, attached hereto without exhibits,

incorporated herein, and labeled Exhibit "A."

{00507154;v1}

3.   The Complaint alleges, among other things, that the Defendant is seeking to construct, install, operate, maintain and/or locate poles, antennas, and/or "nodes"[2] in the Township.

4.   The Complaint further alleges, among other things that the Defendant is acting in the above-referenced manner without complying with applicable Township codes.

5.   Specifically, the Defendant is acting in violation of the Township's Zoning Code.

6.   Specifically, the Defendant is acting in violation of the Township's Code Chapter 154 Telecommunications.

7.   Furthermore, the Township has given the Defendant ample notice that the actions the Defendant is threatening to take are not in compliance with the relevant Township codes.

8.   Nevertheless, the Defendant has made it clear that they are commencing the constructing, installing, operating, maintaining and/or locating of cellular poles, antennas, and/or "nodes" in the Township at an unknown time and date despite the clear directives by the Township not to do so.

9.   The Township has no ability to oversee the constructing, installing, operating, maintaining and/or locating of cellular poles, antennas, and/or "nodes" in the Township.

10. The Defendant has not complied with any of the applicable Township codes.

11. Since the Defendant has not followed the proper procedural process, the Township residents have absolutely no notice of the Defendant entering their property for the purpose of constructing, installing, operating, maintaining and/or locating of cellular poles, antennas, and/or "nodes" in the Township.

12. Township residents will have no knowledge as to who is entering their property.

---

[2] In correspondence referenced and attached in the Complaint as Exhibit "C", the Defendant defines "nodes" as "fiber optic cable and associated equipment, including optical converters and antennas."

{00507154;v1}

13. Township residents will have no knowledge as to why the Defendant is entering their property.

14. Township residents will have no knowledge as to whether the Defendant is entering their property lawfully, and, indeed, the Defendant would not be entering lawfully.

15. Since the Defendants have not followed the proper procedures, there is absolutely no way of knowing if the Defendant is the constructing, installing, operating, maintaining and/or locating of cellular polls, antennas, and/or "nodes" in a safe manner.

16. The poles being constructed, installed, operated, maintained and/or located pose a danger to residents if those poles fall due to improper construction, installation, operating, maintenance and/or location.

17. The antennas and/or nodes being constructed, installed, operated, maintained and/or located pose a danger to residents if those antennas fall due to improper construction, installation, operating, maintenance and/or location.

18. The poles, antennas, and/or "nodes" being constructed, installed, operated, maintained and/or located pose a danger to residents if said poles, antennas, and/or "nodes" cause sight obstruction at intersections or along vehicular thoroughfares in the Township.

19. The above-referenced site obstruction could lead to vehicular accidents within the Township.

20. The poles, antennas, and/or "nodes" above-referenced pose a danger to Township law enforcement and emergency personnel who would have to be dispatched to any emergency caused by the improper construction, installation, operating, maintenance and/or location of the same.

{00507154;v1}

21. Any emergency caused by the above-referenced poles, antennas, and/or "nodes" would draw Township law enforcement emergency personnel away from other emergencies to which they would have attended.

22. In relation to the forgoing, immediate and irreparable injury will be sustained by the Township before a hearing can be held on the Township's Petition for Preliminary Injunction as the construction, installation, operation, maintenance, and/or location of unlawful poles, antennas, and/or "nodes" in the Township will put the safety and health of the residents of the Township and the Township's law enforcement emergency personnel in jeopardy for the reasons listed above.

23. Violation of an ordinance is per se irreparable harm. Township of Little Britain v. Lancaster County Turf Products; Inc., 604 A.2d 1225 (Pa. Commw. Ct. 1992); Gateway Metals, Inc. v. Municipality of Monroeville, 525 A.2d 478 (Pa. Commw. Ct. 1987) (en banc).

24. A greater injury will occur from refusing the injunction than from granting it because if the injunction is not granted, the safety and health of the residents of the Township and the Township's law enforcement and emergency personnel would be in jeopardy for the reasons listed above.

25. The injunction will restore the parties to the status quo as the Defendant will be required to act in compliance with the applicable Township codes.

26. The wrong committed by the Defendant is manifest as the Defendant has willfully and purposely continued to ignore the Township's notices that the Defendant must first comply with all applicable Township codes before constructing, installing, operating, maintaining, and/or locating poles, antennas, and/or "nodes" in the Township.

{00507154;v1}

27. The Township's right to relief is clear as the Township has an affirmative duty to protect the health and safety of its residents and emergency personnel and to ensure that all commercial entities seeking to do business in the Township comply with all applicable Township codes, and the Township is likely to win on the merits at a permanent injunction hearing.

**WHEREFORE**, for the foregoing reasons, the Township respectfully requests that this Honorable Court grant its Complaint for a Preliminary Injunction requiring the Defendant to cease and desist from installing cellular nodes on telephone poles or installing telephone polls for the purpose of installing the above-referenced polls, antennas, and/or nodes in the Township without first complying with any and all applicable Township code relative to the same.

RUDOLPH CLARKE, LLC

By: _M. M._ _____
Michael P. Clarke, Esquire
Noah Marlier, Esquire
Attorneys for Abington Township

Date: _October 5, 2016_

| | | |
|---|---|---|
| **ABINGTON TOWNSHIP** | : | |
| | : | **COURT OF COMMON PLEAS** |
| Plaintiff, | : | |
| | : | **MONTGOMERY COUNTY, PA** |
| v. | : | |
| | : | **CIVIL ACTION IN EQUITY** |
| **CROWN CASTLE NG EAST LLC** | : | |
| | : | **NO.** *16-23932* |
| Defendant. | : | |

## ORDER FOR HEARING/CONFERENCE DATE

**AND NOW**, this _____ day of _____, 2016, upon consideration of Abington Township's Complaint and Petition for Preliminary Injunction it is **ORDERED** that pursuant to Pa.R.C.P. 1531(d), a hearing/conference pertaining to the Petition for Preliminary Injunction will be held on the _____ day of _____, 2016, at _____, ___. m., in Courtroom _____ of the Montgomery County Courthouse.

BY THE COURT:

_____

                                                                                J.

{00507154;v1}

| | |
|---|---|
| ABINGTON TOWNSHIP | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| CROWN CASTLE NG EAST LLC | : |
| Defendant. | : |

COURT OF COMMON PLEAS

MONTGOMERY COUNTY, PA

CIVIL ACTION IN EQUITY

NO. *(C-23932*

## ORDER

**AND NOW**, this ____ day of _____, 2016, upon consideration of Abington Township's ("Township") Complaint and Petition for Preliminary Injunction and it appearing to the Court that immediate irreparable harm will be sustained by the Township before a hearing can be held on the Township's Petition for Preliminary Injunction, the Township's request for a preliminary injunction is **GRANTED**, and it is further **ORDERED** that:

1. The Defendant shall cease and desist any and all constructing, installing, operating, maintaining and/or locating in the Township of cellular poles, antennas, and/or "nodes" as defined in the Township's Complaint;

2. Prior to any such constructing, installing, operating, maintaining and/or locating of cellular poles, antennas, and/or "nodes" in the Township, the Defendant shall comply with all applicable Township code;

3. The following additional relief:

_____

_____

{00507154;v1}

BY THE COURT:

_____ J.

RUDOLPH CLARKE, LLC
BY:  Michael P. Clarke, Esquire
Attorney I.D. No. 63378
BY:  Noah Marlier, Esquire
Attorney I.D. No. 308985
Seven Neshaminy Interplex
Suite 200
Trevose, PA  19053                    ATTORNEYS FOR ABINGTON TOWNSHIP
(215) 633-1890

| | | |
|---|---|---|
| ABINGTON  TOWNSHIP | : | **COURT OF COMMON PLEAS** |
| Plaintiff, | : | **MONTGOMERY COUNTY, PA** |
| v. | : | **CIVIL ACTION IN EQUITY** |
| CROWN CASTLE NG EAST LLC | : | NO. *16 - 23932* |
| Defendant. | : | |

### CERTIFICATE OF SERVICE

I, Noah Marlier, hereby certify that a true and correct copy of the relevant Complaint and Petition for Preliminary Injunction was served upon the following person(s) via hand-delivery by courier on October 6, 2016.

**Crown Castle NG East LLC**
**c/o Peter Broy, Government Relations Manager**
**131-05 14th Avenue**
**College Point, NY 11356**

I understand that false statements herein are made subject to the penalties of 18 Pa.C.S. §4904, relating to unsworn falsification to authorities.

RUDOLPH CLARKE, LLC

By: *M-M-*

Michael P. Clarke, Esquire
Noah Marlier, Esquire
Attorneys for Abington Township

Date: October 5, 2016



2016-23933-0002   10.5 2016 2:17 PM   - 10986665
Petition
Rcpt=2016-8-03185  Fee:$0.00  Exhibit A
Mark Levy - MontCo Prothonotary

# EXHIBIT "A"

{00445486;v1}

**RUDOLPH CLARKE, LLC**
BY:  **Michael P. Clarke, Esquire**
Attorney I.D. No. 63378
BY:  **Noah Marlier, Esquire**
Attorney I.D. No. 308985
Seven Neshaminy Interplex
Suite 200
Trevose, PA  19053                                         **ATTORNEYS FOR ABINGTON TOWNSHIP**
(215) 633-1890

---

| | | |
|---|---|---|
| **ABINGTON  TOWNSHIP** | : | |
| | : | **COURT OF COMMON PLEAS** |
| **Plaintiff,** | : | |
| | : | **MONTGOMERY COUNTY, PA** |
| **v.** | : | |
| | : | **CIVIL ACTION IN EQUITY** |
| **CROWN CASTLE NG EAST LLC** | : | |
| | : | **NO.** |
| **Defendant.** | : | |

---

## NOTICE

    You have been sued in Court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so, the case may proceed without you and judgment may be entered against you be the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you.

## AMERICANS WITH DISABILITIES ACT OF 1990

    The Court of Common Pleas of Montgomery County is required, by law, to comply with the Americans with Disabilities Act of 1990.  For information about accessible facilities and reasonable accommodations available to disabled individuals having business before the Court, please contact our office.  All arrangements must be made at least 72 hours prior to any hearing or business before the Court.  You must attend the scheduled conference or hearing.

    YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

{00507154;v1}

MONTGOMERY COUNTY BAR ASSOCIATION
100 West Airy Street
Norristown, Pennsylvania 19401
(610) 279-9660

{00507154;v1}

**RUDOLPH CLARKE, LLC**
BY:  Michael P. Clarke, Esquire
Attorney I.D. No. 63378
BY:  Noah Marlier, Esquire
Attorney I.D. No. 308985
Seven Neshaminy Interplex
Suite 200
Trevose, PA  19053                     **ATTORNEYS FOR ABINGTON TOWNSHIP**
(215) 633-1890

---

| | |
|---|---|
| **ABINGTON  TOWNSHIP** : | **COURT OF COMMON PLEAS** |
| Plaintiff, : | **MONTGOMERY COUNTY, PA** |
| v. : | **CIVIL ACTION IN EQUITY** |
| **CROWN CASTLE NG EAST LLC** : | **NO.** |
| Defendant. : | |

---

### COMPLAINT IN EQUITY

Plaintiff, by and through its attorneys Michael P. Clarke, Esquire and Noah Marlier,

Esquire of Rudolph Clarke, LLC, hereby avers as follows:

1.  Plaintiff is the Township of Abington, Montgomery County, Pennsylvania ("Township"),

a duly organized township of the first class, with principal offices located at 1176 Old York

Road, Abington, PA 19001.

2.  Crown Castle NG East LLC ("Defendant") is, upon information and belief, a commercial

entity licensed in and doing business in Pennsylvania.

3.  Upon information and belief, the Defendant's principal place of business is 131-05 14th

Avenue, College Point, NY 11356.

{00507154;v1}

4.   Upon information and belief, the Defendant has plans to imminently construct, install, operate, maintain, and/or locate cellular poles, cellular antennas, and/or cellular "nodes"[1] in the Township.

**The Township's Zoning Code on Telecommunication Facilities/Antennas**

5.   The Federal Telecommunications Act of 1996 states, in part, that local zoning ordinances are preserved, stating, "Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless services facilities." 47 U.S. Code § 332(7)(A).

6.   The constructing, installing, operating, maintaining, and/or locating of the above-referenced poles, antennas, and/or "nodes" would be in violation of the Township's Zoning Code ("Zoning Code").

7.   Specifically, the Zoning Code Ordinance 1800 Section 4(c) states that prior to the constructing, installing, operating, maintaining, and/or locating of these types of poles, antennas, and/or "nodes," the relevant commercial entity must apply to the Township for the same and provide an inventory of existing sites. A true and correct copy of the Zoning Code Ordinance 1800 is attached hereto, incorporated herein, and marked Exhibit "A."

8.   Specifically, the Zoning Code Ordinance 1800 Section 4(d) states that any towers or antennas shall meet certain aesthetic requirements. Exhibit "A."

9.   Specifically, the Zoning Code Ordinance 1800 Section 4(e) states that any towers or antennas shall meet certain lighting requirements. Exhibit "A."

---

[1] In correspondence referenced and attached below as Exhibit "C", the Defendant defines "nodes" as "fiber optic cable and associated equipment, including optical converters and antennas."

{00507154;v1}

10. Specifically, the Zoning Code Ordinance 1800 Section 4(f) states, among other things, that any towers or antennas shall "meet or exceed current standards and regulations of the FAA, the FCC, and any other agency of the state or federal government with authority to regulate towers and antennas." Exhibit "A."

11. Specifically, the Zoning Code Ordinance 1800 Section 4(g) states, among other things, "To ensure the structural integrity of towers, the owner of a tower shall ensure that it is maintained in compliance with standards contained in applicable state or local building codes[.]" Exhibit "A."

12. Specifically, the Zoning Code Ordinance 1800 Section 4(j) states, "Owners and/or operators of towers or antennas shall certify that all franchises required by law for the construction and/or operation of a wireless communication system in the Township have been obtained[.]" Exhibit "A."

13. Specifically, the Zoning Code Ordinance 1800 Section 5(a)(i-iii) sets forth height requirements as well as requirements to comply with FCC, FAA, and building code requirements. Exhibit "A."

14. Specifically, the Zoning Code Ordinance 1800 Section 7(b) sets forth guidelines of antennas mounted on utility poles or light poles. Exhibit "A."

15. Specifically, the Zoning Code Ordinance 1800 Section 7(b) sets forth requirements regarding the location of these types of antennas. Exhibit "A."

16. Specifically, the Zoning Code § 706 states that the telecommunication poles to which the "nodes" in question would be attached are an Accessory Use that would not be permitted in the R-2 Residential Zoning District.

{00507154;v1}

17. Also, the specific zoning districts to which the Defendant, upon information and belief, seeks to erect poles to which the "nodes" in question would be attached each have their own "height limitations" for said poles.

**The Township's Code of Ordinances on Telecommunication Facilities/Antennas**

18. The constructing, installing, operating, maintaining, and/or locating of the above-referenced poles, antennas, and "nodes" would be in violation of the Township's Code Chapter 154 Telecommunications ("Telecommunications Code"). A true and correct copy of the Telecommunications Code is attached hereto, incorporated herein, and labeled Exhibit "B."

19. The Telecommunications Code § 154.21 states its purpose to be, among other things, to "[a]ssure that the Township can continue to fairly and responsibly protect the health, safety, and welfare" of its residents. Exhibit "B."

20. Specifically, the Telecommunications Code § 154.23 requires, in part, the following: "[A]ll telecommunications carriers and providers engaged in the business of transmitting, supplying, or furnishing of telecommunications originating or terminating in the Township shall register with the Township [...]"Exhibit "B."

21. Specifically, the Telecommunications Code § 154.31 requires, in part, the following: "All telecommunications carriers and providers that offer or provide any telecommunications service for a fee, directly to the public, either within the Township or outside the corporate limits from telecommunications facilities within the Township, shall register with the Township pursuant to this article on forms to be provided by the Township [.]"Exhibit "B."

22. Specifically, the Telecommunications Code §154-33 and §154-34 states that the Township may collect a registration fee from the telecommunications carrier and do so to, among other things, "[a]ssist the Township in enforcement of this Part 2 [of the

{00507154;v1}

Telecommunications Code]" and "[a]ssist the Township in monitoring compliance with local, state and federal laws." Exhibit "B."

23. Specifically, the Telecommunications Code § 154-35 states, "Any person who desires a telecommunications license pursuant to this article shall file an application with the Township [...]" Exhibit "B."

24. Specifically, the Telecommunications Code § 154-36 states that the Township, subsequent to receiving the above-referenced application, "shall issue a written determination" based, in part, on the "effect, if any, on public health, safety, and welfare if the license is granted." Exhibit "B."

25. Specifically, the Telecommunications Code § 154-42 sets forth Township guidelines for the location of telecommunication facilities. Exhibit "B."

26. Telecommunications Code § 154-42 makes clear that when a wireless telecommunications antenna system "does not meet zoning criteria [...] a license and construction permit shall only be issued following a grant of variance or special exception approval from the Township Zoning Hearing Board." Exhibit "B."

27. Specifically, Telecommunications Code § 154-109 sets forth guidelines for obtaining a construction permit to construct, install, operate, maintain, and/or locate a telecommunication facility.

**The Defendant's Failure to Follow the Township Codes**

28. On or about July 22, 2016, the Defendant sent correspondence to the Township regarding its desire to "install, operate, and maintain fiber optic cable and associated equipment, including optical converters and antennas (each equipment location is referred to by the industry as a 'node'), on, over and under the public way in the Township in connection with the provision of

{00507154;v1}

telecommunications provided by [the Defendant] as a 'carrier's carrier' for its wireless carrier customers." A true and correct copy of the above-referenced correspondence is attached hereto, incorporated herein, and marked as Exhibit "C."

29. The Defendant attached a "Franchise Agreement" it claimed the Township and the Defendant's predecessor in interest had entered into on September 11, 2008. Exhibit "C."

30. The Franchise Agreement states, "Permits Required: Franchisee shall not construct, reconstruct, or relocate the telecommunication system (or parts thereof) within the public ways or on public property unless permits have been obtained in accordance with the Telecommunication Ordinance." Exhibit "C."

31. The Franchise Agreement also states that construction of telecommunication systems shall not commence unless maps and engineering details are provided. Exhibit "C."

32. The Franchise Agreement also states that the construction standards as stipulated in the "Telecommunication Ordinance" must be followed. Exhibit "C."

33. The Franchise Agreement also states that the Township shall perform inspections of telecommunication construction or installation. Exhibit "C."

34. The Franchise Agreement also states that "*the Franchisee shall at all times comply with all lawful applicable laws and regulations of the federal, state, county, and Township governments[.]*"(emphasis added). Exhibit "C."

35. The Franchise Agreement also states that "this Agreement shall not be assigned by Franchisee without the express written consent of the Issuing Authority." Exhibit "C."

36. In the above-referenced correspondence, the Defendant claimed that a new franchise agreement between the Defendant and the Township was not required, but the Defendant, nonetheless, offered to sign a new franchise agreement with the Township. Exhibit "C."

{00507154;v1}

37. The Franchise Agreement attached to the above-referenced correspondence is clearly not applicable, as the plain language of the Franchise Agreement itself makes it clear that the Township did not enter into the Franchise Agreement with the Defendant but rather another commercial entity.

38. The Franchise Agreement attached to the above-referenced correspondence is further not applicable, as the plain language of the Franchise Agreement itself makes it clear that the Franchise Agreement could not be assigned without the Township's approval, and, thus, the Defendant is not a party to the Franchise Agreement. See Exhibit "C."

39. The Defendant confirms as much by the fact that it requested in the above-referenced correspondence that the Township enter into a new franchise agreement. See Exhibit "C."

40. Even if the Franchise Agreement has full force and effect, the Franchise Agreement makes it clear that the Defendant, prior to constructing, installing, operating, maintaining and/or locating of telecommunication poles, antennas, or "nodes" must follow the procedure set forth in the Franchise Agreement.

41. If it is found that the Franchise Agreement does apply to the Defendant, the Defendant has failed to perform, among other things, the following as required in the Franchise Agreement:

    a.  The Defendant has not obtained applicable permits from the Township;

    b.  The Defendant has failed to filed engineering details or maps with the Township;

    c.  The Defendant has failed to file any evidence of its compliance with applicable engineering standards with the Township;

    d.  The Defendant has failed to schedule any inspections of the relevant constructing, installing, operating, maintaining and/or locating of telecommunication poles, antennas, and/or "nodes," and;

   e.   Significantly, the Defendant has utterly failed to comply with the Zoning Code
        and/or Telecommunication Code.

42. Furthermore, the Defendant has failed to perform, among other things, the following as
required by the Zoning Code:

   a.   The Defendant has failed to make proper application for the relevant constructing,
        installing, operating, maintaining and/or locating of telecommunication towers or
        antennas;

   b.   The Defendant has failed to demonstrate how the relevant towers or antennas
        shall meet certain aesthetic requirements;

   c.   The Defendant has failed to demonstrate how the relevant towers or antennas
        shall meet certain lighting requirements;

   d.   The Defendant has failed to demonstrate how the relevant towers or antennas
        shall meet current standards of the FAA, FCC, and any other agency of the state
        or federal government with authority;

   e.   The Defendant has failed to demonstrate how the relevant towers or antennas
        shall meet building code standards;

   f.   The Defendant has failed to obtain appropriate franchises required;

   g.   The Defendant has failed to demonstrate that the relevant antennas comply with
        appropriate height requirements;

   h.   The Defendant has failed to demonstrate that the relevant antennas are located
        lawfully in relation to other structures, including homes;

   i.   The Defendant has failed to demonstrate that the relevant antennas are located
        lawfully in relation to the zoning district to which they would be located;

{00507154;v1}

43. Furthermore, the Defendant has failed to perform, among other things, the following as required by the Telecommunication Code:

      a.  The Defendant has failed to demonstrate that the constructing, installing, operating, maintaining and/or locating of cellular poles, antennas, and/or "nodes" in the Township would not endanger the health, safety, and welfare of the residents of the Township;

      b.  The Defendant has failed to appropriately register with the Township;

      c.  The Defendant has failed to pay a registration fee to the Township;

      d.  The Defendant has failed to obtain a license from the Township;

      e.  The Defendant has failed to perform the above-referenced requirements, and, therefore, the Township has not been able to issue a written determination relative to the Defendant's constructing, installing, operating, maintaining and/or locating of cellular poles, antennas, and/or "nodes" in the Township, and ;

      f.  The Defendant has failed to obtain proper zoning relief.

**The Township Provided Notice to the Defendant**

44. The Defendant failed to follow the above Zoning Code and/or Telecommunication Code despite the Township putting the Defendant on notice of said failure.

45. On or about August 8, 2016, Township Planning & Zoning Officer Mark A. Penecale ("Mr. Penecale") wrote the Defendant regarding the relevant matter. A true and correct copy of this August 8, 2016 correspondence is attached hereto, incorporated herein, and marked as Exhibit "D."

46. Mr. Penecale stated that the Defendant must enter into an agreement with the Township to perform the relevant work. Exhibit "D."

{00507154;v1}

47. Furthermore, Mr. Penecale also put the Defendant on notice that the Defendant's constructing, installing, operating, maintaining and/or locating of cellular poles, antennas, and/or "nodes" in the Township must comply with the Zoning Code. Exhibit "D."

48. Specifically, Mr. Penecale reminded the Defendant that the utility poles the Defendant proposes constitute an Antenna System, an accessory use that is not permitted in the residential district to which the Defendant has indicated they were installing said poles. Exhibit "D."

49. Specifically, Mr. Penecale reminded the Defendant that the utility poles with antennas the Defendant proposes must conform to the height limitations within the specific residential zoning district to which the poles with antennas would be erected. Exhibit "D."

50. On or about August 9, 2016, Mr. Penecale met with two of the Defendant's representatives, Peter Broy and John Shive, and Mr. Penecale reiterated what was required of the Defendant before they began the constructing, installing, operating, maintaining and/or locating of cellular poles, antennas, and/or "nodes" in the Township.

51. At the above referenced meeting, despite once again being put on notice of the above-referenced requirements, the Defendant confirmed that they would be commencing constructing, installing, operating, maintaining and/or locating of cellular poles, antennas, and/or "nodes" in the Township on Friday, August 12, 2016.

52. On or about August 10, 2016, Lauren A. Gallagher of the undersigned attorney's law firm, Rudolph Clarke, LLC, the solicitor for the Township, wrote the Defendant again reiterating the requirements of the Defendant before the Defendant could commence constructing, installing, operating, maintaining and/or locating of cellular poles, antennas, and/or "nodes" in the Township. A true and accurate copy of this email correspondence is attached hereto, incorporated herein, and marked as Exhibit "E."

{00507154;v1}

53. Subsequent to Ms. Gallagher sending this correspondence and throughout August and September 2016, Ms. Gallagher and the undersigned had discussions with counsel for the Defendant regarding the instant issue.

54. During the discussion described above, Counsel for the Defendant agreed that it would provide the Township at least five days' notice before it would perform any constructing, installing, operating, maintaining and/or locating of cellular poles, antennas, and/or "nodes" in the Township.

55. However, on October 4, 2016, counsel for the Defendant stated unequivocally that the Defendant would no longer provide this notice to the Township.

56. Thus, the Defendant is once again taking the position that it can construct, install, operate, maintain and/or locate cellular poles, antennas, and/or "nodes" in the Township without any notice to the Township and without allowing any oversight whatsoever by the Township.

**The Defendant is Endangering the Health, Safety, and Welfare of the Township Residents**

57. The Defendant has made it clear that they are commencing the constructing, installing, operating, maintaining and/or locating of cellular poles, antennas, and/or "nodes" in the Township at an unknown time and date despite the clear directives by the Township not to do so.

58. The Township has no ability to oversee the constructing, installing, operating, maintaining and/or locating of cellular poles, antennas, and/or "nodes" in the Township.

59. The Defendant has not complied with any of the applicable Township codes.

60. Since the Defendant has not followed the proper procedural process, the Township residents have absolutely no notice of the Defendant entering their property for the purpose of constructing, installing, operating, maintaining and/or locating of cellular poles, antennas, and/or "nodes" in the Township.

{00507154;v1}

61. Township residents will have no knowledge as to who is entering their property.

62. Township residents will have no knowledge as to why the Defendant is entering their property.

63. Township residents will have no knowledge as to whether the Defendant is entering their property lawfully, and, indeed, the Defendant would not be entering lawfully.

64. Since the Defendants have not followed the proper procedures, there is absolutely no way of knowing if the Defendant is the constructing, installing, operating, maintaining and/or locating of cellular polls, antennas, and/or "nodes" in a safe manner.

65. The poles being constructed, installed, operated, maintained and/or located pose a danger to residents if those poles fall due to improper construction, installation, operating, maintenance and/or location.

66. The antennas and/or nodes being constructed, installed, operated, maintained and/or located pose a danger to residents if those antennas fall due to improper construction, installation, operating, maintenance and/or location.

67. The poles, antennas, and/or "nodes" being constructed, installed, operated, maintained and/or located pose a danger to residents if said poles, antennas, and/or "nodes" cause sight obstruction at intersections or along vehicular thoroughfares in the Township.

68. The above-referenced site obstruction could lead to vehicular accidents within the Township.

69. The poles, antennas, and/or "nodes" above-referenced pose a danger to Township law enforcement and emergency personnel who would have to be dispatched to any emergency caused by the improper construction, installation, operating, maintenance and/or location of the same.

70. Any emergency caused by the above-referenced poles, antennas, and/or "nodes" would draw Township law enforcement emergency personnel away from other emergencies to which they would have attended.

**The Township has Met the Requirements of Obtaining an Injunction**

71. In relation to the forgoing, immediate and irreparable injury will be sustained by the Township before a hearing can be held on the Township's Petition for Preliminary Injunction as the construction, installation, operation, maintenance, and/or location of unlawful poles, antennas, and/or "nodes" in the Township will put the safety and health of the residents of the Township and the Township's law enforcement emergency personnel in jeopardy for the reasons listed above.

72. Violation of an ordinance is per se irreparable harm. Township of Little Britain v. Lancaster County Turf Products, Inc., 604 A.2d 1225 (Pa. Commw. Ct. 1992); Gateway Metals, Inc. v. Municipality of Monroeville, 525 A.2d 478 (Pa. Commw. Ct. 1987) (en banc).

73. A greater injury will occur from refusing the injunction than from granting it because if the injunction is not granted, the safety and health of the residents of the Township and the Township's law enforcement and emergency personnel would be in jeopardy for the reasons listed above.

74. The injunction will restore the parties to the status quo as the Defendant will be required to act in compliance with the applicable Township codes.

75. The wrong committed by the Defendant is manifest as the Defendant has willfully and purposely continued to ignore the Township's notices that the Defendant must first comply with all applicable Township codes before constructing, installing, operating, maintaining, and/or locating poles, antennas, and/or "nodes" in the Township.