IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ABINGTON TOWNSHIP | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CROWN CASTLE NG EAST LLC | : | NO. 16-5357 |

**MEMORANDUM**

**Padova, J.**                                                                                      **January 4, 2017**

Plaintiff Abington Township (the "Township") commenced this action against Defendant Crown Castle NG East LLC in the Court of Common Pleas of Montgomery County, asking that Defendant be enjoined from installing telecommunications poles, antennas and/or cellular nodes in the Township without first complying with any and all applicable Township Codes, including the Township's Zoning and Telecommunications Codes. Defendant removed the action to this Court, asserting that we have both diversity jurisdiction and federal question jurisdiction over the matter. The Township has filed a Motion to Remand. For the following reasons, we grant the Motion and remand the case to the Court of Common Pleas of Montgomery County.

**I.    BACKGROUND**

The Complaint in Equity alleges that, on July 22, 2016, Defendant sent a letter to the Township, expressing its desire "to 'install, operate, and maintain fiber optic cable and associated equipment, including optical converters and antennas . . . on, over and under the public way in the Township in connection with the provision of telecommunications provided by [the Defendant] as a "carrier's carrier" for its wireless carrier customers.'" (Compl. ¶ 28 (second alteration in original) (quoting Compl. Ex. C at 1).) However, prior to constructing, installing, operating, maintaining and/or locating such equipment in the Township, Defendant must obtain applicable permits, file engineering details and maps, submit evidence of compliance with applicable

engineering standards, and arrange for scheduled inspections of its activities in the Township. (Id. ¶ 41.)  In addition, the Township's Zoning Code requires, inter alia, that Defendant demonstrate that any affected towers or antennas meet certain Township aesthetic, height and light requirements, as well as federal standards and the standards of the Township's Building Code. (Id. ¶ 42.)  Pursuant to the Township's Telecommunications Code, Defendant must also obtain a license, register with the Township, pay registration fees, and demonstrate that the planned activity will not endanger the health, safety, and welfare of Township residents.  (Id. ¶ 43.)

On August 8, 2016, the Township advised Defendant that, prior to engaging in any work, it would need to enter into a lease agreement with the Township and that the lease must be considered and approved by the Township Board of Commissioners.  (Id. ¶¶ 45-46; Compl. Ex. D at 1.)  It further advised Defendant that it would need to either demonstrate that the installations complied with the Zoning Code or obtain variances from the applicable Code requirements. (Compl. ¶¶ 47-49; Compl. Ex. D. at 1.)  The next day, a representative of the Township met with two representatives of Defendant and reiterated the prerequisites to Defendant commencing the requested work.  (Compl. ¶ 50.)  Instead of agreeing to those requirements, however, Defendant's representatives advised the Township that it would begin "constructing, installing, operating, maintaining and/or locating . . . cellular poles, antennas, and/or nodes in the Township" on August 12, 2016, without complying with the stated requirements.  (Id. ¶ 51.)  Thereafter, counsel for both parties engaged in discussions regarding the parties' impasse, and Defendant's counsel agreed to provide the Township with five days' notice before Defendant performed any of the requested activity.  (Id. ¶¶ 53-54.)  However, on October 4, 2016, Defendant's counsel advised the Township that it would not provide such notice after all.  (Id. ¶ 55.)  Furthermore, Defendant made clear that it would commence work in the Township at an unknown date and time.

(Id. ¶ 57.)   By proceeding in this fashion, Defendant has failed to comply with the Township Codes, which deprives the Township of the ability both to oversee Defendant's activity and to alert its residents of any work to be done.   (Id. ¶¶ 58-60.)

The Complaint alleges that Defendant's actions endanger the health, safety and welfare of Township residents because, inter alia, the Township has no way of knowing if Defendant's activities are being conducted in a safe manner; there is a risk that telecommunications poles, antennas or nodes will fall due to improper construction or installation; installed equipment could obstruct sight lines at intersections or vehicular thoroughfares; and any emergency caused by the installed equipment would require the involvement of Township law enforcement.   (Id. ¶¶ 61-70.) Thus, to protect the health, safety and welfare of Township residents and to ensure compliance with its Codes, the Complaint requests equitable relief in the form of an order requiring Defendant to "cease and desist from installing cellular nodes on telephone poles or installing telephone poles for the purpose of installing . . . poles, antennas and/or nodes in the Township without first complying with any and all applicable Township code[s]."   (Id. ¶ 76 and Wherefore Clause.)

In conjunction with the Complaint, the Township also filed a Petition for a Preliminary Injunction, seeking the same injunctive relief it sought in the Complaint.   On October 5, 2016, the Montgomery County Court of Common Pleas issued an *ex parte* temporary restraining order, prohibiting Defendant from installing cellular nodes on telephone poles or installing telephone poles for the purpose of installing antennas and/or nodes pending a final hearing.   Eight days later, on October 13, 2016, Defendant removed the action to this Court.

Defendant asserts that we have both diversity and federal question jurisdiction over this case.   The Township argues in its Motion to Remand that we do not have subject matter jurisdiction because the amount in controversy does not exceed the $75,000.00 jurisdictional

threshold necessary for diversity jurisdiction and because there is no basis for federal question jurisdiction.

## II.   LEGAL STANDARD

Generally, a defendant may remove a civil action filed in state court so long as the federal court would have had original jurisdiction over the matter had it been filed in federal court.   28 U.S.C. § 1441(a).   The defendant bears the burden of establishing removal jurisdiction.   Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990);   see also Frederico v. Home Depot, 507 F.3d 188, 193 (3d Cir. 2007) (stating that the removing party "bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court" (citations omitted). Moreover, courts strictly construe the removal statutes and "'all doubts should be resolved in favor of remand.'"   Boyer, 913 F.2d at 111 (quoting Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987)).

## III.   DISCUSSION

### A.   Diversity Jurisdiction

Defendant contends that we have diversity jurisdiction over the case because the parties are diverse and the amount in controversy exceeds the $75,000.00 jurisdictional threshold.   See 28 U.S.C. § 1332(a).   The Township does not dispute that it is diverse from Defendant because the Township is a citizen of Pennsylvania and Defendant is a citizen of Delaware and Texas.   The Township contends, however, that the amount in controversy does not meet the $75,000.00 threshold.

In ascertaining the amount in controversy in a removal case, a court must first look to the complaint.   Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 398 (3d Cir. 2004).   When, however, the complaint does not demand a specific sum, a court may permit removal if it is

established, by a preponderance of the evidence, that the amount in controversy exceeds $75,000.00.   28 U.S.C. § 1446(c)(2)(B); see also Dart Cherokee Basin Operating Co. v. Owens, -- U.S. -- , 135 S. Ct. 547, 554-55 (2014).   Because the burden of establishing jurisdiction always lies with the removing defendant, it is the defendant who must establish the requisite jurisdictional amount.   See Kaufman v. Allstate New Jersey Ins. Co., 561 F.3d 144, 151 (3d Cir. 2009) (citing Frederico, 507 F.3d at 193).

Where the Complaint seeks only injunctive relief, the amount is controversy "is often not readily determinable" and must be determined by the "'value of the object of the litigation,'" which is the "value of the rights which the plaintiff seeks to protect."   Columbia Gas Transmission Corp. v. Tarbuck, 62 F.3d 538, 539, 541 (3d Cir. 1995) (quoting Hunt v. Washington Apple Advert. Comm'n, 432 U.S. 333, 347 (1977)) (additional citation omitted); see also Angus v. Shiley Inc., 989 F.2d 142, 146 (3d Cir. 1993) (stating that the amount in controversy must be based on "a reasonable reading of the value of the rights being litigated" (citations omitted)).   In valuing those rights, the proper measure is the "monetary value of the benefit that would flow to the plaintiff if the injunction were granted."   Cohen v. Office Depot, Inc., 204 F.3d 1069, 1077 (11th Cir. 2000); see also Schuylkill Twp. v. CitySwitch, LLC, Civ. A. No. 08-5681, 2009 WL 2018531, at *4 (E.D. Pa. 2009) ("[T]he value of equitable relief must be determined from the viewpoint of the plaintiff rather than the defendant.'" (quoting Pierson v. Source Perrier, S.A., 848 F. Supp. 1186, 1189 (E.D. Pa. 1994) (additional citation omitted))).   At the same time, "we will not ordinarily consider . . . speculative arguments in determining the amount in controversy." Columbia Gas, 62 F.3d at 543 (citing Kheel v. Port of New York Auth., 457 F.2d 46, 49 (2d Cir. 1972), and Healy v. Ratta, 292 U.S. 263, 267 (1934)).

Here, as noted above, the injunction the Township seeks would prohibit Defendant from

"installing cellular notes on telephone poles or installing telephone poles for the purpose of installing . . . poles, antennas and/or nodes in the Township" unless Defendant complies "with any and all applicable Township code[s]."   (Compl. Wherefore Clause.)   Thus, the right the Township is seeking to protect is the right to enforce its own ordinances.  CitySwitch, 2009 WL 2018531, at *4 (defining object of litigation in which Township sought to prevent construction of communications tower that did not comply with Township ordinances as the "Township's right to have its zoning ordinances enforced").   The Complaint makes plain that the Township's overriding purpose in enforcing the ordinances is to protect the safety, health and welfare of its residents.   (See Compl. ¶¶ 57-70 (detailing how Defendant's failure to comply with Township Codes endangers residents' health, safety, and welfare).)

There can be no question that "[t]he value of enforcing the law evades easy quantification" and does not "easily reduce to a dollar amount."   CitySwitch, 2009 WL 2018531, at *4.  Moreover, "[w]hen an action cannot be quantified as a dollar amount, 'jurisdiction cannot be predicated on 28 U.S.C. § 1332.'"   Id. (quoting Ad Pro, Inc. v. The Journal Register Co., Civ. A. No. 00-3074, 2000 WL 1053847, at *1 (E.D. Pa. Aug. 1, 2000) (additional citation omitted)).

Defendant urges us to quantify the value of Township's right to enforce its Zoning and Telecommunications Codes by referencing the franchise and license fees that the Township may collect if it obtains the requested injunctive relief.  Defendant maintains that such fees would exceed $75,000.00, because (1) the Township's Telecommunication Code provides for annual license or franchise fees of $12,000.00 to $24,000.00 for antennas installed on public property (see Compl. Ex. B at §§ 154-69(B)(5)-(6), (C)((5)-(6)); and (2) Defendant intends to install two co-located node facilities at existing sites, each of which would be subject to a $12,000.00 annual fee, and twenty-one node facilities at new locations, each of which would be subjected to a

$24,000.00 annual fee.   (See Ex. A to Def.'s Br. at ¶¶ 4-7, 9.)

We are not persuaded, however, that the value of the Township's right to enforce its ordinances is properly measured by the registration and franchise fees that the Township might collect if it obtains its requested equitable relief.   Defendant contends that the Complaint "expressly seeks" a ruling that Defendant must pay license, franchise and registration fees, because it alleges that Defendant has violated Township Codes insofar as it has "failed to obtain appropriate franchises," "failed to pay a registration fee," and "failed to obtain a license."   (Def.'s Br. at 2; Compl. ¶¶ 42(f), 43(c)-(d).)   However, the Complaint never mentions the franchise and license fees on which Defendant focuses; the only fee it mentions is a registration fee, which is a mere $100 annually.   (See Compl. ¶ 43(c); Compl. Ex. B at § 154-69(A).)    Thus, contrary to Defendant's contention, the Complaint does not expressly request that Defendant pay such fees to the Township.

The Complaint does, of course, request that Defendant be required to comply with "any and all applicable Township code[s]" if it continues to pursue its plans to install telecommunications equipment in the Township, and the Township Codes include provisions for the payment of registration and license fees. (Compl. Wherefore Clause; Compl. Ex. B at § 154-69.)   However, an injunction prohibiting Defendant from conducting work in the Township without complying with any and all applicable Township Codes will not necessarily result in the payment of the significant fees at issue, because the collection of such fees is contingent upon Defendant first obtaining the Township's permission to install telecommunications equipment in the Township.   As set forth above, in order to obtain approval for installations, Defendant must first meet numerous other Code requirements, including permitting, aesthetic, and safety requirements, and if it fails to meet those requirements, it will not be permitted to engage in work

in the Township and will not be subject to any registration or franchise fees.   Accordingly,

Defendant's contention that the object of this action is the payment of license and registration fees

is too speculative, and we will not consider those fees in determining the amount in controversy.

See Columbia Gas, 62 F.3d at 543 ("[W]e we will not ordinarily consider . . . speculative

arguments in determining the amount in controversy." (citations omitted)); CitySwitch, 2009 WL

2018531, at *4 ("[S]peculative concerns are not relevant to the jurisdictional calculation.")

    We also reject Defendant's assertion that we should measure the value of the Township's

claim based on these fees because we view such fees as more reflective of the potential cost of

Defendant's compliance with the requested injunction than the value of the Township's claim.

The cost of a defendant's compliance with an injunction is not the appropriate measure of the

amount in controversy.   See CitySwitch, 2009 WL 2018531, at *4 ("Because the Third Circuit

dictates that the Plaintiff's viewpoint is determinative, [defendant's] costs . . . are irrelevant."); see

also Columbia Gas, 62 F.3d at 539 ("The Supreme Court's decision in Glenwood Light Co. v.

Mutual Light Co., 239 U.S. 121 (1915), . . . settled that in diversity suits for injunctions the cost of

compliance is not the definitive measure of the amount in controversy").   Here, the Township's

Telecommunications Code makes clear that it requires telecommunications providers to pay such

fees in order to reimburse the Township for "all direct and indirect costs and expenses of the

Township related to the enforcement and administration of [franchises and licenses]."   (Compl.

Ex. B at § 154-68.)   As such, on this record, we consider any such fees collected as Defendant's

costs of doing business in the Township, not as a value imparted to the Township.

    For all of these reasons, we reject Defendant's request that we value the rights the

Township is seeking to protect by the fees Defendant may be required to pay if it is ultimately

permitted to install new antennas, poles and nodes in the Township.   Furthermore, because

Defendant relies entirely on these fees in arguing that the jurisdictional minimum is met, we conclude that Defendant has failed to establish, by a preponderance of the evidence, that the amount in controversy is $75,000.00 or more. See 28 U.S.C. § 1446(c)(2)(B). Accordingly, Defendant has failed to demonstrate that we have diversity jurisdiction over this matter.

### B.       Federal Question Jurisdiction

Defendant alternatively contends that we have federal question jurisdiction over this case. See 28 U.S.C. § 1331 (stating that federal district courts have original jurisdiction over civil cases "arising under the Constitution, laws or treaties of the United States"). Federal question jurisdiction is typically invoked in cases in which the plaintiff "pleads a cause of action created by federal law." Manning v. Merrill Lynch Pierce Fenner & Smith, Inc., 772 F.3d 158, 163 (3d Cir. 2014) (citing Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005)) (additional citations omitted)). "However, [state law] causes of action . . . may nonetheless 'arise under' federal law for purposes of [federal question jurisdiction] if the four-pronged Grable test is met." Id. The Grable test provides that a court will have federal jurisdiction over a state law claim "'if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.'" Id. (quoting Gunn v. Minton, — U.S. —, 133 S. Ct. 1059, 1065 (2013)). Notably, "[o]nly a 'slim category' of cases satisfy the Grable test." Id. (quoting Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 701 (2006)).

Here, the Township does not assert a federal cause of action in the Complaint, but Defendant contends that the Complaint raises a federal issue that meets the four prongs of the Grable test – namely, whether the zoning rules and regulations that the Township seeks to enforce are preserved and permitted by the federal Communications Act. In this regard, Defendant notes

9

that the Telecommunications Act places certain limitations on local zoning authority insofar as it states that: (1) local regulation of local wire service facilities may not "unreasonably discriminate among providers of functionally equivalent services," or "have the effect of prohibiting the provision of personal wireless services," (2) the local government must act on requests "for authorization to place, construct or modify personal wireless service facilities within a reasonable period of time," (3) any decision to deny such a request must "be in writing and supported by substantial evidence," and (4) the local government may not regulate "personal wireless service on the basis of the environmental effects of radio frequency emissions" otherwise in compliance with the Federal Communication Commission's standards.   47 U.S.C. § 332(c)(7)(B).   However, although Defendant states that the Township's right to relief depends on whether any of these limitations prohibits the Township from enforcing its regulations, Defendant fails to identify which, if any, of these limitations is actually at issue in the instant case.   In the absence of any identifiable, genuinely disputed issue with regard to these limitations, we conclude that the limitations do not give rise to an "actually disputed" federal issue that supports our exercise of federal jurisdiction in this case.   Gunn, 133 S. Ct. at 1065.

Defendant also appears to argue that the Township's state law claim gives rise to a jurisdiction-supporting federal issue concerning the federal Spectrum Act, a recent amendment to the Telecommunications Act that limits the Township's zoning authority by requiring local governments to approve "a modification of an existing wireless tower or base station that does not substantially change the physical dimensions" of the tower base.   47 U.S.C. § 1455(a)(1). However, again, Defendant fails to explain the manner in which the Spectrum Act applies in this case.   Defendant merely asserts in a general fashion that the Spectrum Act is implicated by

10

Defendant's two modification requests to co-locate nodes on existing sites.[1]  We therefore conclude that Defendant has not established that there is any "actually disputed" federal issue involving the Spectrum Act that supports our exercise of federal question jurisdiction over the parties' local zoning dispute.

We also conclude that Defendant has failed to establish that this case is "capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Gunn, 133 S. Ct. at 1065.   The federal Telecommunications Act explicitly states that "nothing in this Act shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities."  47 U.S.C. § 332(7)(A).  As Defendant has failed to identify any specific federal interest in the dispute at hand, we will not disrupt the federal-state balance by asserting jurisdiction over the parties' local zoning dispute.

In sum, Defendant has failed to meet at least two of the four prongs of the Grable test and, thus, has failed to show that the Township's state law claim "arises under" federal law for purposes of establishing federal question jurisdiction.   Defendant has therefore failed to meet its burden of

---

[1]  Defendant appears to suggest that the Spectrum Act strips the Township of all authority to review modifications to existing wireless towers or base stations that do not substantially change the physical dimensions of the tower base.  (Def.'s Br. at 10 (asserting that the Spectrum Act "preempt[s] all local zoning ordinances."))  However, we reject this suggestion, because the federal regulations implementing the Act make clear that an applicant seeking to make such a modification (a "covered-facility modification") must "assert[] in writing that [its] request for modification is covered by [the Spectrum Act, and] a . . . local government may require the applicant to provide documentation or information . . . to the extent reasonably related to determining whether the request meets the requirements."  47 C.F.R. § 1.40001(c)(1). Moreover, while a covered-facility modification request will ordinarily be deemed granted under federal law if the local government fails to act on the request within 60 days, the instant record does not reflect that the procedures by which such a request will be deemed granted have occurred in this case.  See id. § 1.40001(c)(2)-(3).  Accordingly, we reject any suggestion that the Township has no authority to monitor and place restrictions on Defendant's requested activities to modify existing wireless facilities in the Township.

establishing that we have federal question jurisdiction over this action.

## IV.   CONCLUSION

For the foregoing reasons, we conclude that Defendant has failed to demonstrate that we have subject matter jurisdiction over this case.  Consequently, we grant Plaintiff's Motion to Remand and remand this case to the Court of Common Pleas of Montgomery County.

An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.

_____

John R. Padova, J.